Case 3:01-cv-01737-MRK   Document 52-24   Filed 10/16/2003   Page 1 of 15

2003 U.S. Dist. LEXIS 4186; 30 Employee Benefits Cas. (BNA) 1874

LISA BONA, et al., Plaintiffs, -against- GEORGE BARASCH, et al., Defendants.

01 Civ. 2289 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 4186; 30 Employee Benefits Cas. (BNA) 1874

March 20, 2003, Filed

**SUBSEQUENT HISTORY:** Partial summary judgment denied by *Bona v. Barasch, 2003 U.S. Dist. LEXIS 8760 (S.D.N.Y., May 22, 2003)*

**DISPOSITION:** *1 Defendants' motion to dismiss granted in part and denied in part. Defendants' motion to strike plaintiffs' jury demand on ERISA causes of action denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a fund beneficiaries and a fiduciary, sued defendants, fund trustees, management and investment service providers, a related private foundation, and the persons who controlled these entities, for breaches of fiduciary duty and self-dealing under Employee Retirement Income Security Act of 1974 (ERISA) and violations of the Racketeer Influenced and Corrupt Organizations Act ( RICO). Defendants moved to dismiss on numerous grounds.

**OVERVIEW:** Plaintiffs claimed defendants manipulated investment services contracts with employee benefit funds to reap inflated fees and enrich themselves, and failed to manage the funds prudently. As a result, benefits to union members allegedly were depleted and dues wasted. The court held that the individual plaintiffs' claim for monetary relief a claim for money damages as compensation for losses and not equitable relief as required under ERISA. Thus, they were barred from recovering monetary damages on their own behalf. In addition, Because two proposed class representatives had no standing, the representatives and the class of employees unvested in the pension plan, whom they purported to represent, had no ERISA standing. However, if the facts alleged in the complaint could be proved, defendants' fiduciary duty was violated each time they renewed imprudent contracts with fund administrators, so the statute of limitations did not bar the remainder of the action to the extent that it was based upon those renewals. The individual plaintiffs lacked standing to prosecute their RICO claims. But the court did grant leave to file the Labor Management Reporting Disclosure Act (LMRDA) claim.

**OUTCOME:** The court granted in part and denied in part the motions to dismiss the ERISA claims, granted the motion to dismiss the RICO claims in their entirety, and granted permission to proceed on the LM-RDA claim.

**CORE TERMS:** fiduciary, breach of fiduciary duty, jury trial, equitable, beneficiary, equitable relief, entity, restitution, monetary relief, statute of limitations, actual knowledge, employee benefit, duty, trip, breaches of fiduciary duty, non-trustee, imprudent, venue, derivative, motion to dismiss, long-term, reasonable time, eligibility, labor organization, standing to bring, administered, provider, lack of standing, lack standing, knowingly

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
HN1A motion to dismiss under Fed. Rules Civ. P. 12(b)(6) may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
HN2On a motion to dismiss the court may consider documents attached to the complaint and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Civil Procedure > Justiciability > Standing*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
HN3The question of standing implicates the court's subject-matter jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
HN4If a complaint is dismissed for lack of subject matter jurisdiction, other defenses become moot.

*Labor & Employment Law > Employee Retirement*

*Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN5The Employee Retirement Income Security Act of 1974 (ERISA) assigns fiduciaries specific duties, including the duties specified in §§ 404, 405, and 406 of the Act. Section 409(a), 29 U.S.C.S. § 1109(a), of ERISA makes fiduciaries liable for breach of those duties. Under § 409(a), a fiduciary is personally liable for damages, for restitution, and for such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary. Section 502(a)(2), 29 U.S.C.S. § 1132(a)(2) of ERISA -- the second of ERISA's six civil enforcement provisions -- allows the Secretary of Labor or any plan beneficiary, participant, or fiduciary to bring a civil action for appropriate relief under 29 U.S.C.S. § 1109.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN6Unlike the Employee Retirement Income Security Act of 1974's (ERISA) other enforcement provisions, § 502(a)(2) of ERISA authorizes relief for the benefit of a plan only. Thus, individual plaintiffs cannot recover damages on their own behalf under § 502(a)(2). However, a fiduciary, can recover on behalf of the plan. Likewise, individual plaintiffs, who are suing on behalf of a class of plan participants, also can recover on behalf of the plan if they represent a class made up of all plan participants. Section 502(a)(2)of ERISA, therefore, gives individual plaintiffs standing to seek monetary relief on behalf of the plan, but not on their own behalf.

*Civil Procedure > Remedies > Damages*

HN7Although a plaintiff can seek restitution at law where he can show just grounds for recovering money to pay for some benefit the defendant had received from him, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. Almost invariably, suits seeking to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN8The term "equitable relief" under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 includes a compensatory award for breach of fiduciary duty.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN9An alleged breach of fiduciary duty always has been within the exclusive jurisdiction of equity. However, the broad language in Great-West suggests otherwise. In Great-West, the United States Supreme Court declined to hold that the special equity-court powers applicable to trusts define the reach of § 502(a)(3) of the Employee Retirement Income Security Act of 1974. The phrase "equitable relief," as Congress used it in § 502, refers only to those categories of relief that are typically available in equity and not to any relief that conceivably could be granted by an equity court. Thus, in determining whether monetary relief in a particular case can be classified as equitable restitution, the crucial question under Great-West is whether a suit seeks to restore to the plaintiff particular funds or property in the defendant's possession.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

HN10According to Great-West, restitution is appropriate as an equitable remedy only where the specific property being sought is identifiable and in the hands of the defendant.

*Contracts Law > Remedies > Reformation*

HN11Reformation is available in cases of fraud and mutual mistake.

*Civil Procedure > Justiciability > Standing*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

HN12To have standing to sue under § 502(a) of the Employee Retirement Income Security Act of 1974 a plaintiff must be a participant, beneficiary, or fiduciary of a plan. 29 U.S.C.S. § 1132(a).

*Civil Procedure > Justiciability > Standing*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Reme-*

Page 14

dies
HN13See *29 U.S.C.S. § 1002(7)*.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN14In order to establish that he or she is eligible or may become eligible for Employee Retirement Income Security Act of 1974 benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN15Under § 502(a) of the Employee Retirement Income Security Act of 1974, a plaintiff must already be a plan participant in order to sue.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
HN16Dismissal for failure to state a claim based on a statute of limitations is appropriate only if a complaint clearly shows that a claim is not timely.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN17See *29 U.S.C.S. § 1113*.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN18A claim alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 must be brought within either six years of the date of the last action which constituted part of the breach or three years after the earliest date on which the plaintiff had actual knowledge of the breach, whichever is earlier.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN19To trigger the three-year statute of limitations in the Employee Retirement Income Security Act of 1974, a plaintiff must have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm. It is not enough that a plaintiff suspects something is awry; rather, the plaintiff must have specific knowledge of the actual breach on which he sues. However, the plaintiff need not have knowledge of the law or exacting factual details in order to have actual knowledge.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN20For Employee Retirement Income Security Act of 1974 statute of limitations purposes, the relevant question is when a current trustee, and not the plan itself through any of its previous agents, had actual knowledge of a breach of fiduciary duty.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
HN21A defendant who is on notice that conduct violates a fiduciary duty is chargeable with constructive knowledge of the breach if a reasonably diligent investigation would have revealed the breach.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN22Under § 413(1) of the Employee Retirement Income Security Act of 1974 (ERISA), an ERISA suit must be initiated within six years of the last action which constituted a part of the breach.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
HN23Unlike the disbursement of benefits subsequent to a calculation of how much a participant is owed, the renewal of a contract clearly implicates an Employee Retirement Income Security Act of 1974 plan trustee's duty to review plan investments and eliminate imprudent ones.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
HN24Employee Retirement Income Security Act of 1974 fund fiduciaries are under a continuing obligation to advise the fund to divest itself of unlawful or

imprudent investments.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Governments > Legislation > Statutes of Limitations > Time Limitations*

HN25Once the renewal of an Employee Retirement Income Security Act of 1974 contract is deemed to be a separate transaction, § 413(1) of the Act directly bars only suits arising out of the original contract, or renewals, entered into more than six years before the complaint was filed.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN26See 29 U.S.C.S. § 1002(21)(A).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN27The Employee Retirement Income Security Act of 1974 makes the existence of discretion a sine qua non of fiduciary duty.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN28Employee Retirement Income Security Act of 1974 regulations provide that persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures and thus perform purely ministerial functions are not fiduciaries. 29 C.F.R. § 2509.75-8. The regulations further explain that the performance of ministerial functions includes, among other things, the application of rules determining eligibility for participation or benefits, the maintenance of service and employment records, the calculation of benefits, and the processing of claims.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN29Whether or not a person is an Employee Retirement Income Security Act of 1974 fiduciary is determined by the functions performed by that person, not by his or her title.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN30The functions of directing an Employee Retirement Income Security Act of 1974 funds' investments, selecting the trustees, and making final decisions about eligibility are not ministerial. Third-party administrators are fiduciaries if they have the authority to make ultimate decisions regarding benefits eligibility. A party is a fiduciary to a fund where he in effect, exercises discretionary authority and control over assets of the fund because the trustees accept every recommendation he makes.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

HN31The role of a district court in reviewing a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. The court cannot grant a defendant's motion to dismiss simply because the defendant denies the allegations in the complaint and offer plausible grounds on which to discount the allegations.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN32Under § 404 of the Employee Retirement Income Security Act of 1974, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN33Under § 405 of the Employee Retirement Income Security Act of 1974, in addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach, if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN34Under § 406 of the Employee Retirement Income Security Act of 1974, a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect-- sale or exchange, or

leasing, of any property between the plan and a party in interest, furnishing of goods, services, or facilities between the plan and a party in interest, transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
HN35Dismissal is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN36The Racketeering Influenced and Corrupt Organizations Act renders criminally and civilly liable any person (a) who uses or invests income derived from a pattern of racketeering activity to acquire an interest in or to operate an enterprise engaged in interstate commerce, *18 U.S.C.S. § 1962*(a); (b) who acquires or maintains an interest in or control of such an enterprise through a pattern of racketeering activity, § 1962(b); (c) who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a pattern of racketeering activity, § 1962(c), or, finally, (d) who conspires to violate any of the first three subsections of *18 U.S.C.S. § 1962*, § 1962(d).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN37See *18 U.S.C.S. § 1964*(c).

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN38According to the United States Supreme Court, the "by reason of" language in *18 U.S.C.S. § 1964*(c) requires a showing by the plaintiff that his or her injuries are proximately caused by the defendant's actionable conduct. In determining whether a plaintiff's injuries have been proximately caused by a defendant's violations of *18 U.S.C.S. § 1962*, the crucial question is whether there is a direct connection between the injury asserted and the injurious conduct alleged. Absent such a direct connection, a plaintiff has no standing to bring a Racketeering Influenced and Corrupt Organizations Act suit.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN39Only the targets, competitors and intended victims of the racketeering enterprise have standing to bring civil Racketeering Influenced and Corrupt Organizations Act claims.

*Civil Procedure > Justiciability > Standing*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN40Where damages to a plaintiff derive from an injury to a third party, the plaintiff lacks standing to bring a Racketeering Influenced and Corrupt Organizations Act action.

*Civil Procedure > Justiciability > Standing*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN41Courts have consistently found that shareholders, creditors, and employees of a corporation lack standing to sue under the Racketeering Influenced and Corrupt Organizations Act where their injuries derive from direct injuries to the corporation itself.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN42A plaintiff cannot bring a civil suit under the Racketeering Influenced and Corrupt Organizations Act, in a personal capacity, where the injury he alleges has been incurred by a union of which he is a member and any derivative injury to him is no different from that sustained by similarly situated members of the same union.

*Civil Procedure > Justiciability > Standing*

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*
HN43Where the directly injured parties have adequate remedies outside Racketeering Influenced and Corrupt Organizations Act (RICO), the third Holmes policy factor actually weighs against RICO standing.

*Civil Procedure > Justiciability > Standing*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN44The threshold question in analyzing Racketeering Influenced and Corrupt Organizations Act standing is whether the damages a plaintiff sustains are derivative of an injury to a third party.

*Civil Procedure > Justiciability > Standing*

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
HN45Parties with derivative injuries cannot claim Racketeering Influenced and Corrupt Organizations Act standing just because those parties serve as a close proxy for the directly injured parties.

*Labor & Employment Law > Collective Bargaining*

*& Labor Relations > Fair Representation*
HN46See *29 U.S.C.S. § 501*(a).

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
HN47See *29 U.S.C.S. § 501*(b).

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
HN48A demand for action to sue or recover damages for breaches of fiduciary duty itself is not sufficient to confer rights upon a putative plaintiff under the Labor Management Reporting Disclosure Act against a union, as the union must also refuse to take remedial action or to initiate suit within a reasonable period of time.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
HN49To establish "good cause" to sue under the Labor Management Reporting Disclosure Act, individual plaintiffs must show a reasonable likelihood of success and, with regard to any material facts alleged, must have a reasonable ground for belief in their existence.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
HN50The Labor Management Reporting Disclosure Act does not authorize courts to intervene in the day-to-day activities of labor unions. Thus, as a general rule, union officers are not in violation of *29 U.S.C.S. § 501* unless they act beyond their authority. However, even authorized conduct may violate § 501 if (a) the officer personally benefitted from the expenditure and (b) the expenditure was 'manifestly unreasonable. Thus, a union officer who acts in accordance with the union's constitution and by-laws can violate § 501 if he engages in deliberate self-dealing.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
HN51According to the United State Court of Appeals for the Second Circuit, the factual showing to institute a suit under the Labor Management Reporting Disclosure Act should be no more demanding than that required to defend it against a motion for summary judgment; indeed, it should be somewhat less, since at the earlier stage a plaintiff has not yet had a chance for discovery and a defendant will still have the later protection of a summary judgment motion.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
HN52The movant for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying which materials demonstrate the absence of genuine issues of material fact.

*Constitutional Law > Trial by Jury in Civil Actions*
HN53The right to trial by jury in civil cases is protected by the Seventh Amendment. This right can be waived knowingly and intentionally, but its waiver is not lightly inferred.

*Constitutional Law > Trial by Jury in Civil Actions*
HN54See U.S. Const. amend. VII.

*Constitutional Law > Trial by Jury in Civil Actions*
HN55In determining whether a particular action will involve a determination of legal rights, a court conducting a Seventh Amendment analysis must examine both the nature of the issues involved and the remedy sought, with the second inquiry being the more important. The United States Supreme Court has intimated that the inquiry into whether legal rights are at issue for Seventh Amendment purposes is similar to the inquiry into whether a party is seeking "other equitable relief" under the Employee Retirement Income Security Act of 1974, specifically *29 U.S.C.S. § 1132*(a)(3).

*Constitutional Law > Trial by Jury in Civil Actions*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN56According to the United State Court of Appeals for the Second Circuit, there is no jury trial available where plaintiffs seek equitable relief under Employee Retirement Income Security Act of 1974.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
HN57An Employee Retirement Income Security Act of 1974 (ERISA) fiduciary suing on behalf of an employee benefit funds, under § 409(a) of ERISA, specifically *29 U.S.C.S. § 1109*(a), by way of § 502(a)(2) of ERISA, specifically *29 U.S.C.S. § 1132*(a)(2), entitles him to sue the trustees for damages or equitable relief arising from the alleged breach of fiduciary duty. Likewise, where individual plaintiffs represent a class of participants in the employee benefit fund suing on behalf of the fund, § 409(a) of ERISA, specifically *29 U.S.C.S. § 1109*(a), by way of § 502(a)(2) of ERISA, specifically *29 U.S.C.S. § 1132*(a)(2), entitles them to sue the trustees for damages or equitable relief arising from the alleged breach of fiduciary duty.

*Constitutional Law > Trial by Jury in Civil Actions*
HN58The United States Supreme Court has indicated that for Seventh Amendment purposes, the equitable clean-up doctrine does not apply; thus, if a case involves requests for both injunctive and legal relief, a court may not deny the right to jury trial on the legal claim by stating that the legal remedy is incidental to

Page 18

Case 3:01-cv-01737-MRK   Document 52-24   Filed 10/16/2003   Page 7 of 15

2003 U.S. Dist. LEXIS 4186; 30 Employee Benefits Cas. (BNA) 1874

the request for an injunction.

*Constitutional Law > Trial by Jury in Civil Actions*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

HN59Where they seek money damages rather than an equitable remedy, Employee Retirement Income Security Act of 1974 (ERISA) plaintiffs are entitled to a jury trial on their ERISA claims.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

HN60All relief available for breach of trust could be obtained from a court of equity.

**COUNSEL:** THOMAS M. KENNEDY, ESQ., SUSAN M. JENNIK, ESQ., Kennedy, Schwartz & Cure, New York, NY, for Individual Plaintiffs.

ROLAND R. ACEVEDO, ESQ., J. BRUCE MAFFEO, ESQ., Seiff, Kretz & Maffeo, New York, New York, for George Miranda, Plaintiff.

MICHAEL B. HIMMEL, ESQ., ROBERT J. KIPNEES, ESQ., Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, Iselin, NJ, for George Barasch, Linda Barasch Glazer, Richard Glazer, Financial Administrators, Inc., and Barton, Babcock & Blair, Inc., Defendants.

WILLIAM K. WOLF, ESQ., Friedman Wolf & Grisi, New York, NY, for Allied Trades Council and Jack Siebel, Reginald Rosado, and James Crowley, Defendants.

KATHERINE H. PARKER, ESQ., MYRON D. RUMELD, ESQ., NEAL SCHELBERG, ESQ., Proskauer Rose LLP, New York, NY, for Trustees of the Union Mutual Medical Fund; Trustees of the Allied Welfare Fund; and Trustees of the Vacation Fringe Benefit Fund, Defendants.

PETER ALTIERI, ESQ., JOHN HARRIS, ESQ., J. WILLIAM COOK, ESQ., Epstein, Becker & Green, New York, NY, for Trustees of the Allied Educational Foundation and Union Mutual Fund Pension Plan, Defendants.

DANIEL *2 RIESEL, ESQ., STEVEN RUSSO, ESQ., HILARY SEMEL, ESQ., Sive, Paget & Reisel, New York, NY, for Stephen Barasch and Churchill Administrators, Inc., Defendants.

**JUDGES:** MICHAEL B. MUKASEY, U.S.D.J.

**OPINIONBY:** MICHAEL B. MUKASEY

**OPINION:** OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiffs in this case are current or former participants in employee benefit funds open to members of the Allied Trades Council ("ATC"), a union. Defendants are trustees of those funds, companies and persons who provide management and investment services to those funds, a related private foundation, and persons who control those entities. Plaintiffs claim that various groups of defendants have long manipulated investment services contracts with the employee benefit funds so as to reap inflated fees and otherwise enrich themselves, and have failed to manage the funds prudently. As a result, plaintiffs claim, benefits to union members have been depleted and dues wasted.

Based on these allegations, as explained more fully below, plaintiffs have brought two claims in their own behalf and as representatives of a class of persons similarly situated, for breaches of fiduciary duty and self-dealing, pursuant to the *Employee Retirement Income Act of 1974*, *3 known as ERISA. In addition, they have alleged that certain defendants constitute a racketeering enterprise within the meaning of the *Racketeer Influenced and Corrupt Organizations Act*, known as RICO, and that their activities constitute a pattern of racketeering activity within the meaning of that statute. Finally, plaintiffs seek permission, as they must, to file a claim pursuant to the *Labor Management Reporting Disclosure Act* (the "LMRDA") against certain defendants for breach of fiduciary duties to the union.

The case is now before the court on defendants' motions to dismiss these claims on various grounds, including lack of standing and the bar of the statute of limitations. In addition, defendants move to strike plaintiffs' jury demand as to the ERISA claims, and for dismissal based on improper venue. For the reasons explained below, plaintiffs lack standing to bring the RICO claims and certain of the ERISA claims, and those are dismissed. Moreover, certain of the ERISA claims are time-barred to the extent they arise directly from contracts entered into or renewed six years or more before the filing of the initial complaint in this case. Other *4 ERISA claims survive, and the motion to strike plaintiffs' jury demand is denied. The LMRDA claim may proceed. Finally, the motion to dismiss the action for improper venue is denied. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Plaintiffs have also moved for partial summary judgment. I have reviewed the parties' submissions related to that motion, which will be resolved in a subsequent opinion.

Page 19

Case 3:01-cv-01737-MRK    Document 52-24    Filed 10/16/2003    Page 8 of 15

2003 U.S. Dist. LEXIS 4186; 30 Employee Benefits Cas. (BNA) 1874

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

## I.

The facts alleged in the complaint, accepted as true for the purposes of the motions to dismiss, are as follows:

### A. Parties

Plaintiffs Lisa Bona, Elaine N. Cogdell, Jose Martinez, Haywantie Singh, and Jovan Agnew Thomas ("Individual Plaintiffs") are present or former members of ATC and participants in related employee benefit funds, including the Allied Welfare Fund, the Vacation Fringe Benefit Fund ("Vacation Fund"), the Union Mutual Fund Pension Plan, and the Union Mutual Medical Fund (collectively "the Employee Benefit Funds"). (Compl. PP 1, 4) Plaintiff George Miranda is the principal officer of International Brotherhood of Teamsters, Local Union *5 815, a labor organization ("Local 815").) (Id. P 5) From January, 2000 to the present, Miranda has been designated by Local 815 as a trustee of the Union Mutual Fund Pension Plan, the Allied Welfare Fund, and the Vacation Fund. (Id.)

George Barasch, his children Stephen Barasch and Linda Barasch Glazer, and his son-in-law Richard Glazer ("the Barasch Family" or "non-trustee defendants"), the trustees of the Employer Benefit Funds, and the officers of ATC have created an organization ("the Barasch Enterprise") in order to amass wealth through their control over ATC and the Employee Benefit Funds. (Id. PP 1, 7) The Barasch Enterprise has been operating for decades and was a principal focus of the McClellan Committee of the United States Senate's hearings in the 1960's that led to adoption of ERISA. (Id. P 25) On June 30, 1966, the McClellan Committee issued a report detailing the Barasch Family's practices of utilizing labor unions, corporations, not-for-profit organizations, and employee benefit plans to enrich themselves. (Id. P 26) The activities of the Barasch Family have not changed materially since the 1960's. (Id. P 27)

John Morro is president, and Jack *6 Siebel, Reginald Rosado, and James Crowley (collectively "ATC Defendants") are officers of ATC, which exists for the purpose of representing employees in collective bargaining with employers. (Id. P 6)

The Union Mutual Medical Fund, the Allied Welfare Fund, the Vacation Fund, and the Union Mutual Fund Pension Plan are multi-employer collectively bargained employee benefit plans that provide health and related benefits to plan participants and their beneficiaries. (Id. PP 8-11) The Union Mutual Medical Fund is administered by a Board of Trustees consisting of defendants Arthur Fishbein, Eustace Bowen, and Sol Laskey and is controlled by the Barasch Enterprise. (Id. P 8) The Allied Welfare Fund is administered by a Board of Trustees consisting of defendants Gerald Herskowitz, Louis Kaplan, Stephen Camadeco, Rudolph Pascucci, Bruce Rogers, and Anthony Gugliano and is controlled by the Barasch Enterprise. (Id. P 9) The Vacation Fund is administered by a Board of Trustees consisting of defendants Harvey Rosen, Bruce Rogers, Gerald Herskovitz, Herman Wolfson, Stephen Camadeco, and James Crowley and is controlled by the Barasch Enterprise. n2 (Id. P 10) The Union Mutual *7 Fund Pension Plan is administered by a Board of Trustees consisting of defendants Irving Hans, Irving Kook, Donald Merino, Harold Banner, and Bertram Gelfand and is controlled by the Barasch Enterprise. n3 (Id. P 11)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 The trustees of the Allied Welfare Fund, the trustees of the Vacation Fringe Benefit Fund, and the trustees of the Union Mutual Medical Fund, who are represented by the same counsel, are collectively referred to as "Benefit Fund Trustees."

n3 The trustees of the Union Mutual Fund Pension Plan are referred to as "UMF Trustees."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Churchill Administrators, Inc. ("Churchill"), Financial Administrators, Inc. ("Financial Administrators"), and Barton, Babcock & Blair, Inc. ("BBB") are New Jersey corporations with their principal places of business in Englewood Cliffs, New Jersey. n4 (Id. PP 12-14) Churchill is administered by Stephen Barasch and is controlled by Stephen Barasch, George Barasch, Linda Barasch Glazer, and Richard Glazer. (Id. P 12) Financial Administrators is administered *8 by Linda Barasch Glazer and Richard Glazer and is controlled by them, Stephen Barasch, and George Barasch. (Id. P 13) BBB is controlled by George Barasch, Linda Barasch Glazer, Richard Glazer, and Stephen Barasch. (Id. P 14)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 Churchill, Financial Administrators, and BBB are referred to as "service provider defendants."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The Allied Educational Foundation holds itself out as a private foundation under the Internal Revenue Code and a trust established under New Jersey law. It is administered by a board of trustees that includes Irving Hans, Gerald Herskowitz, Herbert Pobiner, Charles Sachs, and Bertram Gelfand and is controlled by the Barasch Enterprise. (Id. P 15)

B. Class Action Allegations

Individual Plaintiffs bring five claims on behalf of two classes. "Class One" is made up of all members of the ATC and consists of approximately 3000 persons (Id. P 28) The individuals in Class One suffered monetary damages because the diversion of funds from the treasury of ATC to Barasch-controlled entities *9 reduced ATC's assets and required the ATC class members to pay increased dues. (Id. P 22) "Class Two" is made up of all participants and beneficiaries in the Employee Benefit Plans and consists of approximately 13,000 persons. n5 (Id. P 28) The individuals in Class Two were the primary and intended victims of the schemes to obtain monies from the Employee Benefit Funds by failing to maintain and increase health, welfare, and pension benefits to the levels warranted based upon plan funding due to an interest in protecting the large administrative fees paid to Barasch-controlled entities. (Id. P 24) The claims of the representative parties are typical of the claims of each class. (Id. P 28)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n5 Individual Plaintiffs appear to include Lisa Bona and Jovan Agnes Thomas in Class Two, despite the fact that they worked an insufficient amount of time to qualify for a vested benefit from the Union Mutual Fund Pension Plan. According to the complaint, these two plaintiffs "represent a class of more than 6,000 similarly situated participants who were denied any benefit despite contributions having been made on their behalf, because the Defendants ... failed and refused to structure plan benefits to recognize the high level of employee turnover among the employees of participating employers." (Id. P 23) Bona and Thomas's standing to bring suit under ERISA will be addressed below.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*10

C. Allegations Relevant to All Claims

On January 1, 1947, George Barasch formed ATC and has dominated its affairs since then. (Id. P 29) On September 27, 1949, ATC created the Allied Trades Council Welfare Fund. (Id. P 30) On September 12, 1958, Barasch formed Churchill for the purpose of entering into administrative service contracts with ATC and its related Welfare Fund. Since that date, George Barasch or other members of the Barasch Family have been party to long-term minimum-fee management contracts under which tens of millions of dollars have been diverted to the Barasch Family from ATC, the Foundation, and the Employee Benefit Funds. (Id. P 31)

The Vacation Fund, the Union Mutual Medical Fund, and the Allied Welfare Fund have paid administrative fees to Churchill from 1995 to the present. n6 (Id. P 32) On or about November 18, 1990, Churchill entered into a ten-year contract with the Vacation Fund that was not competitively bid and that set fees bearing no relationship to the work performed by Churchill. This contract has a series of provisions that are so favorable to Churchill that the contract could result only from overwhelming control over the Fund by *11 the Barasch Enterprise. The provisions are identical or substantially similar to the provisions of the Union Mutual Fund Pension Plan's contract with Financial Administrators set forth below. On or about May 4, 1998, Churchill and the Vacation Fund renewed their agreement for two successive five-year terms at the option of Churchill. (Id. P 33)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n6 The fees paid to Churchill from 1995 to 1998 are listed in the complaint. (Id. P 32) Typically, the Vacation Fund paid around $ 450,000 per year to Churchill, the Union Mutual Medical Fund paid around $ 190,00 per year to Churchill, and the Allied Welfare Fund paid over $ 800,000 per year to Churchill. (Id.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Churchill has an exclusive five-year administrative services contract with the Allied Welfare Fund terminating on December 31, 2004, which is renewable by Churchill for two additional five-year periods. The contract for administrative services between Churchill and Allied Welfare Fund has a per capita formula with a cost of living arrangement included *12 in which administrative fees are subject to annual increases. (Id.)

Churchill also has a long-term administrative services contract with the Union Mutual Medical Fund. The

fees paid to Churchill by all three Funds were the result of dominance by the Barasch Family over these entities and were not proportional to the services rendered to these entities by Churchill. (Id.)

Financial Administrators has a long-term administrative services contract with the Union Mutual Fund Pension Plan that is similar to the Churchill contracts. (Id. P 35) That contract has a series of one-sided provisions, including: (1) Financial Administrators is authorized to manage all operationas of the Plan, including the right to hire accountants, actuaries, attorneys, and other professionals; (2) Financial Administrators is authorized to provide legal advice to the Plan regarding all legal and professional matters and to represent the Plan's trustees in matters before government agencies and civil courts; (3) Financial Administrators is allowed to provide services similar to trust funds, without any adjustment of the compensation paid by the Plan to reflect economies of scale; (4) Financial Administrators *13 is compensated on a sliding scale on all income of the Plan except interest, dividends, and capital gains that accrue to the Plan's trustees, and also receives a cost of living increase in the fees paid to it if the Consumer Price Index increases by four percent; (5) Financial Administrators is paid based on a minimum compensation scale of at least $ 470,000 n7 and a guarantee that the compensation paid to it will be deemed to be at least at the midpoint of the "sliding scale"; (6) the contract remains in force for a minimum of ten years and either party has an option to renew for years through July, 2011; (7) although either party has the right to reopen the agreement to renegotiate the fee arrangement, Financial Administrators can force the Plan to a binding arbitration on the question of "the amount of compensation to be paid Financial" ... and "the arbitrator shall be bound to have the Trust Fund pay to Financial an amount sufficient to fully compensate for the services rendered by Financial under this agreement"; (8) the Plan's inability to assign the agreement is not a reason for lower compensation to be paid under the agreement; (9) Financial Administrators may assign its rights *14 under the agreement in whole or in part. (Id. PP 36-44)

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - -

n7 The minimum was later increased to $ 580,000. (Id. P 45)

- - - - - - - - - - - End Footnotes- - - - - -
- - - - - - -

These provisions in the contract between the Union Mutual Fund Pension Plan and Financial Administrators, along with the excessive fees paid under the contract, resulted from the Barasch Family's dominance of the Employee Benefit Funds and were not proportional to the services rendered to these entities. As a result of these excessive fees, Financial Administrators was used to pay salaries to defendants Linda Glazer Barasch and Richard Glazer. In 2000, these defendants were paid salaries of $ 371,536. (Id. P 46)

The fees received by BBB from ATC and the Foundation also were excessive. (Id. PP 47-48) These fees, which amounted to almost $ 190,000 per year from 1996 through 1998, resulted from the Barasch Family's dominance of ATC and the Foundation and were not proportional to the services rendered to these entities by BBB. (Id. P 48)

In 1999, ATC had gross revenues of $ 478,353 *15 from the dues of its members and contributed $ 500,000 to the Allied Educational Foundation. (Id. P 49) In 1997, ATC had gross revenues of $ 335,430 from the dues of its members and contributed $ 250,000 to the Foundation. (Id. P 50) In 1996, ATC had gross revenues of $ 318,456 from the dues of its members and donated $ 250,000 to the Foundation. (Id. P 51) There was no legitimate union purpose for these expenditures. (Id. PP 49-51)

Until late in 1999, Churchill, Stephen Barasch, the trustees of the Allied Welfare Fund, and the trustees of the Vacation Fund did not diversify the investments of the funds so as to capitalize on the opportunities available to the Allied Welfare Fund and the Vacation Fund. Financial Administrators, George Barasch, Linda Barasch Glazer, Richard Glazer and the trustees of the Union Mutual Fund Pension Plan similarly failed to diversify the investments of the Union Mutual Fund Pension Plan. (Id. P 52) As a result of the imprudent investment policies pursued by the Employee Benefits Funds, the benefits offered to participants were unduly restricted. (Id. P 53)

The Barasch Enterprise has offered many things of value to the trustees *16 of the Employee Benefit Funds, including trips to France, Italy, and Israel on "cultural studies tours," designed in whole or part to allow the Barasch Family to profit from the unions, foundations, and funds that it controls. In return, George Barasch, Stephen Barasch, Linda Barasch Glazer, Richard Glazer and the entities they control have received more than $ 10 million from ATC, its affiliated foundations, and the Employee Benefit Funds since 1995. (Id. P 54)

George Barasch, Stephen Barasch, Linda Barasch Glazer, and Richard Glazer have exercised a substantial degree of control over the Employee Benefit Funds themselves. The Barasch Family members (1) selected the trustees of the Funds; (2) directed the Funds' drafting of plan documents; (3) advised the trustees on tax and

Page 22

insurance issues, plan changes and costs, and all other issues of plan management; (4) recommended particular investments, and, prior to 1999, made all of the Employee Benefit Funds' investment decisions; (5) arranged commercially unreasonable and imprudent contracts between the Funds and companies owned by the Barasch Family; (6) hired, fired, and otherwise supervised all employees who acted on behalf of *17 the Funds; and (7) effectively determined appeals of benefit claims and otherwise interpreted the terms of the Plans. (Id. P 55)

D. Allegations Relevant to the RICO Action

The Barasch Enterprise is an organization with formal and informal institutional arrangements. It consists of the following entities: BBB, Churchill, Financial Administrators, ATC, the Employee Benefit Funds, and the Foundation. (Id. P 62)

The offices for ATC, all of the Employee Benefit Funds, the trustees of those Funds, BBB, Financial Administrators, and Churchill are located in the same two office buildings on Sylvan Avenue, Englewood Cliffs, New Jersey. (Id. P 62(b)) The same attorney, Henry Hamburger, represented ATC and the Employee Benefit Funds for many years. (Id.) The same attorney, Jules Levine, represented the Employee Benefit Funds and the Foundation for many years. (Id.) The same accountants, Newman & Cohen, provided accounting services to ATC and all the Funds from 1997 to the present. Prior to 1997 the same accountant served all the defendant entities. (Id.) The Barasch Enterprise promulgated a manual for organizations on Sylvan Avenue providing instructions for the administration *18 of the affiliated entities. (Id. P 62(c)) Several defendants served as officers or trustees of more than one of the defendant entities. (Id. P 62(d))

Churchill Benefit Services, Inc. was an additional for-profit entity utilized by the Barasch Family to provide administrative services to entities outside the Barasch Enterprise. On April 4, 1997, the Barasch Family caused the creation of a sham contract between Local 815 and Churchill Benefit Services, Inc. to allow Churchill to receive subsidized health care coverage for its employees. On November 19, 1999 that contract was cancelled by the parties to impede an investigation into the affairs of Local 815. (Id. P 62(g)) Churchill, BBB, and Financial Administrators established a single pension plan, known as the Allied Security Fund, for their employees along with the employees of Local 815. Barasch Family members are each entitled to receive substantial payment from this Fund. (Id. P 62(h))

George Barasch, Linda Barasch Glazer, Richard Glazer, and Stephen Barasch directly and indirectly offered, gave, and promised to offer and give the trustees of the Employee Benefit Funds various things of value in order to influence *19 the trustees. (Id. P 68) Specifically, in September 1999, Allied Welfare Plan paid all costs of a weekend trip to Kutsher's Country Club. (Id. P 69) Also, the trustees received free and heavily subsidized trips for themselves and their spouses to France, Italy, and Israel from the Foundation. The trip to France in 1998 cost the Foundation $ 254,307 and was for the purpose of "providing a broad picture of the economy, literary and cultural aspects of France." The trips to Italy and Israel were similarly without legitimate purpose. (Id. P 70) The trustees also received monies from the Employee Benefit Funds from 1994 through 1998 to secure their cooperation. Each trustee received between $ 42,000 and $ 45,000 during this period. (Id. P 71)

The officers of ATC, including Jon Morro, James Crowley, Jack Siebel, and Reginald Rosado, caused or permitted ATC to give to the Foundation $ 250,000 in 1996 and $ 500,000 in 1999. The officers knew that the money was not spent for legitimate union purposes. (Id. P 73) Morro, Crowley, Siebel, and Rosado dealt with and on behalf of the Barasch Enterprise for their own financial benefit. Crowley, in addition to money he received *20 from ATC, received $ 8500 each year from 1995 through 1998 and thereafter as payment for his services to the Barasch Enterprise and as a trustee of the Vacation Fund. (Id. P 74)

Morro, Crowley, Siebel, and Rosado have caused ATC to enter into a long-term lease with National Management Corporation, owned by George Barasch, and a long-term administrative services contract with BBB, through which money was diverted to the Barasch Family. (Id. P 75)

E. Allegations Relevant to the Proposed LMRDA Action

Between 1995 and 1999, according to the LM-2 Reports it filed with the Department of Labor, ATC paid $ 1 million out of its treasury to the Foundation and $ 232,247 to BBB. The Foundation, in turn, according to IRS Form 990, paid $ 506,781 to BBB. (Id. P 82) There was no legitimate union purpose for these expenditures. (Id. P 83)

The activities of the Foundation included a "Workshop Project Abroad." In 1998, the Project provided a trip to France for 100 persons, at a cost of $ 254,307. In 1999, the Project provided a trip to Italy for 72 persons, at a cost of $ 214,636. The ATC officers participated in these trips. Defendant Crowley, moreover, with the knowledge of the *21 other officers, received from the Project a trip to England valued at $ 2250. (Id. P 84)

The activities of the Foundation also included a "Health

and Welfare Conference" held at locations such as Kutsher's Resort. In 1999, the conference cost $ 169,557. In 1998, the conference cost $ 166,027. In 1997, the conference cost $ 181,376. In 1996, the conference cost $ 226,771. In 1995, the conference cost $ 211,341. The ATC defendants participated in these conferences. Morro, Rosado, and Crowley received a trip to Kutsher's Resort for which they paid significantly less than market value. Siebel knew about the trip. (Id. P 85)

Morro, Siebel, Rosado, and Crowley had a pecuniary and/or personal interest in BBB and the Foundation. (Id. P 86) The payments made by ATC to BBB were the result of the Barasch Family's dominance of the ATC officers and were not proportional to the services rendered by BBB. (Id. P 87) Neither the payments made by ATC to the Foundation nor the payments to BBB were made for the benefit of ATC and its members. (Id. PP 87-88)

On March 2, 2001, Individual Plaintiffs requested that Morro, Siebel, Rosado, and Crowley sue or otherwise recover damages *22 for the breaches of fiduciary duty in making the payments to BBB and the Foundation. (Id. P 89) By letter dated April 6, 2001, Morro responded that the ATC Executive Board had investigated their charges and had "not found any evidence of wrongdoing." (Id. P 90)

II.

Individual Plaintiffs bring five claims for relief. Miranda joins in the first and second claims. In their first claim, plaintiffs allege that the Benefit Fund Trustees and the UMF Trustees, along with the non-trustee defendants, breached their fiduciary duties to the Employee Benefit Funds under *ERISA §§ 404 and 405* by, inter alia, directing the Employee Benefit Funds to enter imprudent contracts with administrators, failing to diversify the investments of the plans, and participating knowingly in the trustees' breaches of fiduciary duty. In their second claim, plaintiffs allege that the trustees, in violation of *ERISA § 406*, caused the Employee Benefit Funds to conduct business with parties in interest and that the non-trustee defendants, in violation of *ERISA § 406*, dealt with the assets of the Employee Benefit Funds to further their own interests rather than the interest of the Funds' participants. *23

In their third cause of action, Individual Plaintiffs allege that the individuals and entities comprising the Barasch Enterprise committed multiple acts of racketeering activity, including violations of *29 U.S.C. § 501*, which imposes fiduciary duties on union officers, *18 U.S.C. § 664*, which prohibits the willful conversion of an employee benefit fund's property for personal use, and *18 U.S.C. § 1954*, which prohibits the acceptance of payments intended to influence the operations of employee benefit plans. According to the complaint, these acts constituted a "pattern of racketeering activity" as defined in *18 U.S.C. § 1961(5)*. In their fourth claim, Individual Plaintiffs allege that the individuals and entities comprising the Barasch Enterprise, through the aforesaid activities, violated *18 U.S.C. § 1962(b), (c), and (d)*.

In their fifth claim, Individual Plaintiffs allege that the officers of ATC breached their fiduciary duties to the union under *section 501(a) of the LMRDA* by failing to hold the money and property of ATC solely for the benefit of ATC and its members *24 and to refrain from dealing with ATC as an adverse party or on behalf of an adverse party.

Individual Plaintiffs bring the third, fourth, and fifth claims on behalf of a class made up of all members of the Allied Trades Council. Individual Plaintiffs bring the first and second claims on behalf of a class made up of all participants in and beneficiaries of the Employee Benefit Funds. Plaintiffs seek an array of remedies, including injunctive relief, monetary damages and, as to their RICO claims, treble damages. Notably, to remedy the abuses underlying the first and second claims, plaintiffs request relief from defendant trustees and fiduciaries, but not from non-fiduciaries.

Defendants now move to dismiss the complaint in whole or in part on numerous grounds. HN1A motion to dismiss under *Rule 12(b)(6)* may be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994)*. *25

Plaintiffs have attached several documents to their complaint. Also, along with their motion papers, some defendants have submitted affidavits, declarations, and exhibits. In deciding the motions to dismiss, besides the documents attached to the complaint, the court will consider those documents in plaintiffs' possession and those documents relied on by plaintiffs in bringing suit. See *Brass v. American Film Technologies, 987 F.2d 142, 150 (2d Cir. 1987)* HN2(on a motion to dismiss the court may consider "documents attached to the complaint" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit").

III.

A. Plaintiffs' Standing to Seek Monetary Relief

The trustees move to dismiss the ERISA claims against

Page 24

Case 3:01-cv-01737-MRK    Document 52-24    Filed 10/16/2003    Page 13 of 15

2003 U.S. Dist. LEXIS 4186; 30 Employee Benefits Cas. (BNA) 1874

them on the ground that Individual Plaintiffs lack standing to sue the trustees for monetary relief. Insofar as defendants challenge plaintiffs' standing to sue for damages, their motion arises under *Rule 12(b)(1) of the Federal Rules of Civil Procedure*, because HN3the question of standing implicates the court's subject-matter jurisdiction. *Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999)*. *26 HN4If a complaint is dismissed for lack of subject matter jurisdiction, other defenses become moot. Therefore, before addressing the other potential grounds for dismissal, I must determine whether, and to what extent, Individual Plaintiffs have standing to bring their claims against the trustees under *ERISA § 502(a)(2)* or *ERISA § 502(a)(3)*. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Individual Plaintiffs do not purport to bring this action under *ERISA § 502(a)(1)*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

1. *Section 502(a)(2)*

HN5ERISA assigns fiduciaries specific duties, including the duties specified in *sections 404, 405, and 406* of the statute. Section 409(a), *29 U.S.C. § 1109(a) (2000)*, makes fiduciaries liable for breach of those duties. Under *section 409(a)*, a fiduciary is personally liable for damages, for restitution, and for "such other equitable or remedial relief as the court may deem appropriate," including removal of the fiduciary. Section 502(a)(2), *29 U.S.C. § 1132(a)(2) (2000)* -- the second of ERISA's six civil enforcement provisions *27 -- allows the Secretary of Labor or any plan beneficiary, participant, or fiduciary to bring a civil action "for appropriate relief under *section 1109* of this title."

HN6Unlike ERISA's other enforcement provisions, *Section 502(a)(2)* authorizes relief for the benefit of a plan only. *Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140-44, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985)*. Thus, Individual Plaintiffs cannot recover damages on their own behalf under *Section 502(a)(2)*. See *Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993)* ("Russell ... bars plaintiffs from suing under § *502(a)(2)* because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."). However, Miranda, a fiduciary, can recover on behalf of the Employee Benefit Funds. Likewise, Individual Plaintiffs, who are suing on behalf of a class of plan participants, also can recover on behalf of the Funds if they represent a class made up of all Fund participants. See *Gruby v. Brady, 838 F. Supp. 820, 827 (S.D.N.Y. 1993)* ("As any recovery under section 502(a)(2), *29 U.S.C. § 1132(a)(2)*, goes to the Fund as a whole, and as Fund *28 participants may bring an action only in a representative capacity on behalf of the entire Fund, the proposed class must include all participants, including retired and active members."); *Diduck v. Kaszycki & Sons Contractors, Inc., 737 F. Supp. 792, 799 (S.D.N.Y. 1990)* ("Plaintiff has individual standing to pursue a *section 409* claim and may bring suit as a class representative if the requirements of *Fed. R. Civ. P. 23* are met"), aff'd in part, rev'd in part on other grounds, *974 F.2d 270 (2d Cir. 1992)*; see also *Montgomery v. Aetna Plywood, Inc., 1996 U.S. Dist. LEXIS 4869, 1996 WL 189347, at *3 (N.D. Ill. Apr. 16, 1996)* (concluding that a *section 502(a)(2)* action by a beneficiary "should be pursued as either a class action or derivative action, in order to avoid inconsistent rulings and to ensure the interests of the beneficiaries are adequately represented"). *Section 502(a)(2)*, therefore, gives Individual Plaintiffs standing to seek monetary relief on behalf of the respective Employee Benefit Funds, but not on their own behalf.

2. *Section 502(a)(3)*

Individual Plaintiffs claim that they can seek monetary relief on their own behalf under *ERISA § 502(a)(3)*. *29 That section permits a participant, beneficiary, or fiduciary to sue "(A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ERISA or the terms of the plan ...." *29 U.S.C. 1132(a)(3) (2000)*. Because *section 502(a)(3)* provides for "appropriate equitable relief" only, Individual Plaintiffs cannot seek traditional damages under that section. See *Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993)* (refusing to permit a suit for monetary damages to go forward under *section 502(a)(3)*). However, they can obtain "appropriate equitable relief." The relevant question then in determining whether Individual Plaintiffs can obtain monetary relief on their own behalf is whether such relief, under the present circumstances, can be properly characterized "appropriate equitable relief." For reasons explained below, I conclude that the relief sought by Individual Plaintiffs in this case is not "equitable relief" under *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 151 L. Ed. 2d 635, 122 S. Ct. 708 (2002)*, *30 and therefore Individual Plaintiffs lack standing to seek monetary relief on their own behalf for defendants' alleged breaches of fiduciary duty.

Great-West involved an ERISA-covered health plan, under which the defendant, Janet Knudson, was a beneficiary. The plan contained a subrogation clause conditioning the payment of benefits upon the plan receiving from each beneficiary a lien on any recovery from

Page 25

a third part. The plan contracted for health insurance with Great-West, and then assigned its rights under the subrogation clause to Great-West. After Knudson recovered from a third-party tortfeasor, Great-West sought injunctive relief to enforce restitution of the plan's expenses. *Id. at 207-208.*

The issue presented in Great-West was whether reimbursement to the health plan from payments made to a beneficiary by a third party constitutes "equitable relief" authorized by *section 502(a)(3) of ERISA.* The Court held that because the insurance company was seeking to impose personal liability on the plan beneficiary for a contractual obligation to pay money, the relief it sought was legal, rather than equitable, and therefore was not available under *section 502(a)(3).* *31 First, the Court rejected the notion that Great-West sought injunctive relief. *Id. at 210-11* ("An injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity."). Second, the Court concluded that, although Great-West sought restitution of the plan's expenses, it did not seek equitable restitution. The Court reasoned that, HN7although a plaintiff could seek restitution at law where he could "show just grounds for recovering money to pay for some benefit the defendant had received from him," *id. at 213*, "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* The Court concluded that, because the funds to which Great-West claimed an entitlement were not in Knudson's possession, Great-West could not seek equitable restitution. In reaching this conclusion, the Court stated: "'Almost invariably ... suits seeking . *32 .. to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'" *Id.* (quoting *Bowen v. Massachusetts, 487 U.S. 879, 918-919, 101 L. Ed. 2d 749, 108 S. Ct. 2722 (1988)* (Scalia, J., dissenting)).

To support their claim for monetary relief, Individual Plaintiffs rely on *Strom v. Goldman Sachs, 202 F.3d 138 (2d Cir. 1999)*, which held that HN8the term "equitable relief" under *section 502(a)(3)* includes a compensatory award for breach of fiduciary duty. Because Strom's holding cannot be reconciled with Great-West, I conclude that *Strom* does not control the present case; rather, *Great-West* controls, and Great-West bars Individual Plaintiffs' request for monetary relief from the trustees.

On the surface, Strom might be distinguished from Great-West because Strom involved HN9an alleged breach of fiduciary duty, and "an alleged breach of fiduciary duty always has been within the exclusive jurisdiction of equity." *Strom, 202 F.3d at 145.* *33 However, the broad language in Great-West suggests otherwise. See *Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 444-45 (S.D.N.Y. 2002)* (concluding that Great-West repudiated Strom and its reasoning). In Great-West, the Court declined to hold that the special equity-court powers applicable to trusts define the reach of § *502(a)(3). Great-West, 534 U.S. at 219-20* (citing *Mertens, 508 U.S. at 257-58* (rejecting a reading of ERISA extending the relief obtainable under § *502(a)(3)* to whatever relief a court of equity would be empowered to provide in a particular case because such a reading would not limit in any way the relief available and thus would render the modifier "equitable" superfluous)). The Court explained that the phrase "equitable relief," as Congress used it in *section 502*, refers only to "'those categories of relief that were typically available in equity.'" *Id. at 210* (quoting *Mertens, 508 U.S. at 256*) (emphasis in original), and not to any relief that conceivably could be granted by an equity court. n9 Thus, in determining whether monetary relief in a particular case *34 can be classified as equitable restitution, the crucial question under Great-West is whether a suit seeks to "restore to the plaintiff particular funds or property in the defendant's possession." *Id. at 214.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 John Langbein, a leading scholar of ERISA, has stated that "typically equitable" relief after Great-West is limited to injunctive relief and restitution for cases that might have been brought as constructive trust actions before the fusion of law and equity. See John H. Langbein, What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great West 85 (Yale Law & Economics Research Paper No. 269, 2003), http://www.ssrn.com. Although Langbein has strongly criticized the Supreme Court's interpretation of *ERISA § 502(a)(3)*, this court is bound by that interpretation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The Second Circuit has not yet considered the impact of Great-West on suits for breach of fiduciary duty under ERISA. However, notwithstanding *Strom,* this court has applied *35 *Great-West* to actions for breach

of fiduciary duty. See *Kishter, 186 F. Supp. 2d at 445-46* (granting summary judgment on a breach of fiduciary claim brought under § *1132(a)(3)* where the executor an ERISA beneficiary's estate sought to recover money that the beneficiary would have received if not for defendants' alleged failure to provide information about a life insurance policy); *Augienello v. Coast to Coast Fin. Corp., 2002 U.S. Dist. LEXIS 14584, 2002 WL 1822926,* at *5-6 (S.D.N.Y. Aug. 7, 2002) (dismissing an ERISA breach of fiduciary duty claim under § *1132(a)(3)* where the plaintiffs sought deferred compensation funds). n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 Courts outside this district have also applied *Great-West* to suits for breach of fiduciary duty. E.g., *Rego v. Westvaco Corp., 319 F.3d 140, 145 (4th Cir. 2003)* (rejecting the argument that "any remedy, when sought for breach of fiduciary duty, is always an equitable remedy"); *Santasania v. Union Trowel Trades Benefit Funds, 2003 U.S. Dist. LEXIS 1503,* at *9-10 (M.D. Pa. Feb. 4, 2003) (dismissing a § *1132(a)(3)* claim for reimbursement of monthly COBRA payments where the plaintiff claimed that he would not have made the payments if not for the defendants' breach of fiduciary duty); *Sampson v. Rubin, 2002 U.S. Dist. LEXIS 20877,* at *14 (D. Mass. Oct. 29, 2002) (concluding, based on Great-West, that a plaintiff "may not use the equitable enforcement mechanisms of § *1132(a)(3)* to secure compensatory relief for an alleged breach of fiduciary duty by the defendants").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*36

In this case, as in *Kishter* and Augienello, Individual Plaintiffs have not asked for equitable restitution, even though they have sued defendants for breach of fiduciary duty. HN10According to Great-West, restitution is appropriate as an equitable remedy only where the specific property being sought is identifiable and in the hands of the defendant. *Great-West, 534 U.S. at 213*. Individual Plaintiffs have not alleged that the property they seek is either identifiable or in the hands of the trustees, from whom plaintiffs seek monetary relief.

Individual Plaintiffs' request for monetary relief is also not premised on an equitable claim for reformation of a written instrument. First, although the complaint's prayer for relief includes a demand for injunctive relief, the complaint does not demand reformation of the employee benefit plans. Second, even if the catch-all provision of the prayer for relief were interpreted to encompass a demand for reformation of the plans, the complaint contains no allegations that would support a claim for reformation. HN11"Reformation is available in cases of fraud and mutual mistake." *AMEX Assurance Co. v. Caripides, 316 F.3d 154, 161 (2nd Cir. 2003)*; *37 see also 3 E. Allan Farnsworth, Farnsworth on Contracts § 7.5 (2d ed. 1998) (explaining that the equitable remedy of reformation is available in cases of mutual mistake or "when only one party is mistaken as to the contents or effect of a writing if that mistake was induced by the other party's fraudulent misrepresentation"). Here, plaintiffs have not alleged that the written terms of the employee benefit plans resulted either from fraudulent misrepresentation or from a mutual mistake.

Ultimately, Individual Plaintiffs' claim for monetary relief is nothing more than a claim for money damages as compensation for losses. Because Individual Plaintiffs do not seek "equitable relief" under *section 502(a)(3)*, they are barred from recovering monetary damages on their own behalf. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n11 Because I find that the monetary relief sought by Individual Plaintiffs under *section 502(a)(3)* is not equitable relief, it is not necessary to reach the question of whether it is "appropriate" equitable relief under *Varity Corp. v. Howe, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996)*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*38

B. Bona and Thomas

Defendants argue also that plaintiffs Bona and Thomas, as well as the class of workers whom they purport to represent, lack standing to assert ERISA claims under *section 502(a)*. I agree.

HN12To have standing to sue under *ERISA § 502(a)*, a plaintiff must be a "a participant, beneficiary, or fiduciary" of a plan. *29 U.S.C. § 1132(a) (2000)*. Individual Plaintiffs allege that Bona and Thomas were "participants" in one of the Employee Benefit Funds. (Compl. P 4) HN13A "participant" is defined by ERISA as "any employee or former employee of an employer ... who is or may become eligible to receive

Page 27