damages remedy for even direct personal injuries (such as those suffered by the individual smokers) actually weighs heavily against RICO standing for parties (such as the Funds) alleging harms that are purely contingent on personal injuries suffered by others.*Id. at 241* (citations omitted).

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n17 I decline also to embrace Individual Plaintiffs' more radical proposal that suits by union members, as a general rule, be exempted from the RICO standing scheme because an injury to a union is inevitably an injury to its members. Harms to unions, like harms to other organizations, indirectly affect the individuals who make up the union. Such indirect injury implicates the concerns raised by the *Holmes* Court regarding damage calculation and multiple recoveries.

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

The Second Circuit's reasoning is directly relevant to this case *85 for at least three reasons. First, and perhaps most important, the Court indicated that HN43where the directly injured parties have adequate remedies outside RICO, the third policy factor actually weighs against RICO standing. Here, Miranda and Individual Plaintiffs have pursued ERISA remedies on behalf of the Employee Benefit Funds. Moreover, Individual Plaintiffs have filed a claim against ATC officers under *LMRDA § 501*, which permits union members to recover on behalf of unions. Thus, denying RICO standing to Individual Plaintiffs will not prevent the injured parties in this case from undoing the direct harm done by defendants' alleged misconduct.

Second, the Court indicated that HN44the threshold question in analyzing RICO standing is "whether the damages a plaintiff sustains are derivative of an injury to a third party." *Id. at 238-39*. The three policy factors "buttress the principle that plaintiffs with indirect injuries lack standing," *id. at 239*, but satisfying those policy considerations is not an independent prerequisite to RICO standing.

Finally, Laborers Local 17 suggests that HN45parties with derivative injuries cannot claim RICO standing *86 just because those parties serve as a close proxy for the directly injured parties. For RICO standing purposes, the Laborers Local 17 Court did not allow funds to serve as a proxy for their participants. Here, Individual Plaintiffs ask this court to reverse the equa-

tion, and allow participants in Employee Benefit Funds and members of unions to serve as proxies for the organizations they comprise. For all of the reasons stated above, this outcome is inconsistent with *Holmes* and its progeny.

Because I find that Individual Plaintiffs lack standing to prosecute their RICO claims, I need not decide whether the RICO claims are time-barred. Moreover, I need not address the myriad other grounds on which various defendants have moved to dismiss the RICO claims. Plaintiffs' third and fourth claims for relief are dismissed.

VIII.

Individual Plaintiffs have applied for leave to file a claim for breach of fiduciary duty against defendants John Morro, Jack Siebel, Reginald Rosado, and James Crowley under *Section 501 of the LMRDA*. For the reasons stated below, leave to file an LMRDA claim is granted.

*Section 501(a)* provides, in pertinent part:HN46The officers, agents, shop stewards, *87 and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members ...*29 U.S.C. § 501(a) (2000). Section 501(b)* states:HN47When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the *88 court obtained upon verified application and for good cause shown ...Id. § 501(b)*. Individual Plaintiffs argue that they should be granted leave to pursue a breach of fiduciary duty action under *section 501(a)* because they have satisfied the requirements contained in *section 501(b)*. ATC Defendants respond that Individual Plaintiffs' request is premature and that Individual Plaintiffs lack good cause to sue under the LMRDA. n18

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n18 The ATC Defendants do not dispute that Individual Plaintiffs have submitted a "verified application" to this court.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

According to ATC Defendants, Individual Plaintiffs' request for leave is premature because Individual Plaintiffs have failed to show that ATC or its governing board "refused or failed to sue or recover damages ... or other appropriate relief within a reasonable time." Id.

The facts bearing on Individual Plaintiffs' application are as follows: On March 2, 2001, Individual Plaintiffs sent a letter to John Morro, president of the ATC, requesting that the *89 ATC take action to sue or recover damages for breaches of fiduciary duty in violation of *Section 501(a)*, including the payments made to the Foundation and to BBB. (Compl. Ex. A) On April 6, 2001, Morro responded that "we have conducted a preliminary investigation of your allegations and have not found any evidence of wrongdoing." (Wolf Decl. Ex. A) Morro stated also that ATC would "investigate each of the issues you raised" and asked Individual Plaintiffs to provide ATC with evidence of wrongdoing. (Id.) In an April 18, 2001 letter, Individual Plaintiffs restated the allegations against ATC officers in stronger terms and demanded that Morro call a meeting of the union membership to elect a committee to hear the charges. (Wolf Decl. Ex. B) In a May 10, 2001 letter, Morro declared that the allegations in the April 18 letter were false and accused Individual Plaintiffs' counsel of using the named plaintiffs to pursue a campaign on behalf of a rival union to take members away from the ATC. Morro also reiterated that "we are committed to and shall continue to investigate these charges and resolve all issues in compliance with the ATC Constitution and By Laws." Finally, Morro requested *90 that any evidence of wrongdoing be turned over to the union and informed Individual Plaintiffs that copies of the charges in their March 2 letter and a copy of the April 18 letter had been given to the individuals named in the March 2 letter. (Wolf Decl. Ex. C)

ATC Defendants argue that Individual Plaintiffs are not eligible for leave to file suit because, when the suit was filed, ATC's officers were acting to address the Individual Plaintiffs' complaints. In support of their contention that Individual Plaintiffs' lawsuit is premature, ATC Defendants cite *Commer v. McEntee, 145 F. Supp. 2d 333, 339 (S.D.N.Y. 2001)* HN48("The demand itself is not sufficient to confer rights upon the putative plaintiff under the statute, as the union must also refuse to take remedial action or to initiate suit within a reasonable period of time ..."), vacated in part on other grounds, *34 Fed. App. 802 (2d Cir. 2002)*, and *Hastings v. Green, 1999 U.S. Dist. LEXIS 21149, 1999 WL 1495423*, at *7-8 (E.D.N.Y. Dec. 30, 1999) (finding that the union "did not refuse a request by plaintiffs to sue or to secure other appropriate relief, which is a prerequisite for bringing an action").

However, *91 in Commer and Hastings, the plaintiffs did not demand that the defendants take legal action. *Commer, 145 F. Supp. 2d at 339* ("At the most, Commer in his correspondence with McEntee sought an investigation without demanding legal action against particular officers."); *Hastings, 1999 U.S. Dist. LEXIS 21149, 1999 WL 1495423*, at *7 ("Plaintiff made no request for the commencement of legal proceedings."). Here, on the other hand, Individual Plaintiffs specifically requested that the Executive Board of the ATC "take action to sue or recover damages" from ATC Defendants. Yet, six months after receiving the request, the Board had neither sued nor recovered damages from ATC Defendants. The union had "a reasonable time" to respond to Individual Plaintiffs' complaints, but failed to take any action. See *Purcell v Keane, 406 F.2d 1195 (3d Cir. 1969)* (holding that a one month period was a sufficient length of time under *section 501(b)* between the demand to sue and the plaintiff's filing of the suit, where the union investigative subcommittee did nothing during this time); *Bentivegna v. Bevona, 1998 U.S. Dist. LEXIS 1958*, at *7 (S.D.N.Y. Feb. 24, 1998) *92 (finding that three months and ten days constituted "reasonable time"); *Carroll v. Bd. of Trs., Ohio Highway Drivers Welfare Trust, 573 F. Supp. 935, 937 (S.D. Ohio 1983)* ("Plaintiffs sued in this Court about one month after Plaintiffs' counsel initially wrote opposing counsel. This would seem to be a 'reasonable time' in which to wait to bring suit ...."); *Richardson v Tyler, 309 F. Supp. 1020 (N.D. Ill. 1970)* (holding that 5 months between the time a request to sue was made and a complaint was served was a "reasonable time" where the union had failed to take any affirmative action).

The content of Morro's letters is also relevant. Morro did not simply say that the allegations would be investigated and that the matter would be resolved in due time. Rather, in the course of his two letters, Morro stated that a preliminary investigation had uncovered no wrongdoing, denied plaintiffs' allegations, and accused plaintiffs' counsel of using the named plaintiffs to pursue a campaign on behalf of a rival union. After all these statements, defendants cannot avoid liability under *section 501* simply by asserting that the final investigation *93 is still in progress. See *Carroll, 573 F. Supp. at 937* ("It may be true that a 'dialogue' is 'ongoing' between counsel. But nothing in § *501(b)*

requires that court proceedings be held in abeyance until the dialogue is completed."). Individual Plaintiffs have adequately demonstrated that the ATC "refused or failed to sue or recover damages ... or other appropriate relief within a reasonable time."

ATC Defendants argue next that Individual Plaintiffs lack good cause to sue under *section 501 of the LM-RDA*. HN49To establish "good cause," Individual Plaintiffs must show a reasonable likelihood of success and, with regard to any material facts alleged, must have a reasonable ground for belief in their existence. *Dinko v. Wall, 531 F.2d 68, 75 (2d Cir. 1976)*. Defendants assert that Individual Plaintiffs have not satisfied these requirements.

HN50The LMRDA does not authorize courts to intervene in the day-to-day activities of labor unions. *Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964)*. Thus, as a general rule, union officers are not in violation of *Section 501* unless they act beyond their authority. *Guzman v. Bevona, 90 F.3d 641, 645-46 (2d Cir. 1996)* *94 However, "even authorized conduct may violate *section 501* if (a) the officer personally benefitted from the expenditure and (b) the expenditure was 'manifestly unreasonable.'" *Id. at 646* (quoting *Morrissey v. Curran, 650 F.2d 1267, 1274 (2d Cir. 1981))*. Thus, a union officer who acts in accordance with the union's constitution and by-laws can violate *Section 501* if he engages in deliberate self-dealing. *Id. at 645-46.*

The complaint does not allege that the payments at issue were unauthorized. Rather, the complaint alleges that ATC Defendants personally benefitted from the union's expenditures in the following ways: first, defendant Crowley received a free trip to England (Compl. P 84); second, defendants Morro, Rosado, and Crowley received a subsidized trip to Kutsher's Resort (Id. P 85); third, defendants Morro, Siebel, Rosado, and Crowley had pecuniary or personal interests in BBB and the Foundation (Id. P 86). The complaint alleges also that the substantial payments to the Foundation and BBB, which totaled over $ 1.5 million and comprised a large portion if not all of the union's annual revenue from dues, had no legitimate union purpose *95 and were not proportional to services rendered to ATC. (Id. PP 81-88)

These detailed allegations establish Individual Plaintiffs' reasonable ground to believe that defendants personally benefitted from the ATC contributions to the Foundation and that these contributions were manifestly unreasonable. In Dinko, the Second Circuit defined the plaintiff's burden under *section 501(b)* as follows:HN51The factual showing to institute a suit should be no more demanding than that required to defend it against a motion for summary judgment; indeed, it should be somewhat less, since at the earlier stage a plaintiff has not yet had a chance for discovery and a defendant will still have the later protection of a summary judgment motion.*Dinko, 531 F.2d at 75*. As applied to this case, *Dinko* dictates that Individual Plaintiffs have met their burden, because the ATC Defendants have offered no evidence to rebut the allegations of deliberate self-dealing. HN52The movant for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials "demonstrate the absence of genuine issues *96 of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. With respect to the allegations in paragraphs 81 through 88 of the complaint, the ATC Defendants have not fulfilled this initial responsibility.

Moreover, the allegations in the complaint are sufficient to establish a reasonable likelihood of success. Individual Plaintiffs allege that in 1996, 1997, and 1999, ATC, which had dues receipts of $ 1,132,239, gave $ 1 million to the Foundation -- a "manifestly unreasonable" diversion of funds away from the union. Individual Plaintiffs allege also that the officer defendants personally benefitted from the diversion of funds to ATC. If Individual Plaintiffs prove these allegations, there is a reasonable likelihood that their *section 501(a)* action will succeed. n19

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n19 ATC Defendants argue also that Bona and Thomas lack standing to sue under the LMRDA. This argument has no bearing on whether Individual Plaintiffs' application to file a claim should be granted because there is no dispute that Elaine N. Cogdell, Jose Martinez, and Haywantie Singh are members of ATC with standing to bring an action on behalf of the organization.

- - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

*97

IX.

The Barasch Family, along with Financial Administrators and BBB, moves to strike plaintiffs' demand for a jury trial on the two ERISA claims. Although neither Individual Plaintiffs nor Miranda has responded to the motion, they have not waived their right to a jury trial. HN53The right to trial by jury in civil cases is protected by the *Seventh Amendment. Gargiulo v. Delsole, 769 F.2d 77, 79 (2d Cir. 1985)*. This right can be waived knowingly and intentionally, but its waiver

is not lightly inferred. *Id. at 79; Bank of China v. NBM L.L.C., 2002 U.S. Dist. LEXIS 9468, 2002 WL 1072235,* at *1 (S.D.N.Y. May 28, 2002). Thus, I will consider the motion to strike on the merits.

HN54The *Seventh Amendment* provides that "in Suits at Common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." *U.S. Const. amend. VII.* The right to a jury trial exists, and will be "carefully preserved," where legal rights are at issue. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry, 494 U.S. 558, 565, 108 L. Ed. 2d 519, 110 S. Ct. 1339 (1990).* HN55In determining whether a particular *98 action will involve a determination of legal rights, a court must "examine both the nature of the issues involved and the remedy sought," with the second inquiry being the more important. *Id.*; see also *Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1991)* ("The second stage of this analysis is more important than the first."). The Supreme Court has intimated that the inquiry into whether legal rights are at issue for *Seventh Amendment* purposes is similar to the inquiry into whether a party is seeking "other equitable relief" under *ERISA § 502(a)(3).* See *Great-West, 534 U.S. at 217.* n20

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n20 I am not suggesting that the two inquiries are identical. In some situations, claims that would traditionally be considered equitable have not been deemed equitable for the purposes of the ERISA statute. See *Mertens, 508 U.S. at 253-54* (indicating that ERISA does not allow recovery against non-fiduciaries who knowingly assist in a fiduciary's breach of duty even though trust law has long made non-fiduciaries liable for breach of trust).

- - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

*99

HN56The Second Circuit has repeatedly held that there is no jury trial available where plaintiffs seek equitable relief under ERISA. *Sullivan v. LTV Aero. & Def. Co., 82 F.3d 1251, 1258 (2d Cir. 1996)* (finding that there is no right to a jury trial on an ERISA claim where the relief sought is "equitable in nature"); *Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984)* ("Nor were appellants entitled to a jury trial of the claims against them since the plaintiffs seek equitable relief in the form of removal and restitution as distinguished from damages ...."), cert. denied sub nom. *Cody v. Donovan, 469 U.S. 1072, 83 L. Ed. 2d*

506, 105 S. Ct. 565 (1984).

Based on *Sullivan* and *Katsaros,* plaintiffs have no right to a jury trial on their *section 502(a)(3)* claims. Moreover, neither Individual Plaintiffs nor Miranda is entitled to a jury trial on the ERISA claims against defendants other than the trustees because, with regard to those defendants, the complaint seeks injunctive relief. (See Compl. at 38) One question remains: Are plaintiffs entitled to a jury trial on their *section 502(a)(2)* claims against the trustees? If so, the demand *100 for a jury trial cannot be stricken at this stage of the litigation.

Because Miranda is HN57an ERISA fiduciary suing on behalf of Employee Benefit Funds, *section 409(a),* by way of *section 502(a)(2),* entitles him to sue the trustees for damages or equitable relief arising from the alleged breach of fiduciary duty. Likewise, because Individual Plaintiffs represent a class of participants in the Employee Benefit Funds suing on behalf of the funds, *section 409(a),* by way of *section 502(a)(2),* entitles them to sue the trustees for damages or equitable relief arising from the alleged breach of fiduciary duty. For *Seventh Amendment* purposes, therefore, the narrow issue is whether Miranda and Individual Plaintiffs have sued the trustees for damages under *section 502(a)(2)* or whether they have sought an equitable remedy under that section. n21

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n21 HN58The Supreme Court has indicated that for *Seventh Amendment* purposes, the equitable clean-up doctrine does not apply; thus, if a case involves requests for both injunctive and legal relief, a court may not deny the right to jury trial on the legal claim by stating that the legal remedy is incidental to the request for an injunction. See, e.g., *Tull v. United States, 481 U.S. 412, 425, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987); Curtis v. Loether, 415 U.S. 189, 196 n.11, 39 L. Ed. 2d 260, 94 S. Ct. 1005 (1974).*

- - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

*101

Several courts have addressed the availability of a jury trial under *ERISA § 502(a)(2).* At least one court has concluded that, because ERISA fiduciary duty claims are distinct from trust enforcement claims traditionally heard by equity courts, *section 502(a)(2)* provides a right to a jury trial. See *Cedar Rapids Pediatric Clinic*

*Employees Pension Plan & Trust v. Cont'l Assurance Co.,1988 U.S. Dist. LEXIS 17467* (W.D. Ark. 1988) (finding that an action for breach of fiduciary duty under *section 502(a)(2)* is an action at law rather than at equity "since the action is not brought to enforce a trust"), remanded on other grounds, *957 F.2d 588 (8th Cir. 1992)*. On the other hand, most courts in this district and others have concluded that plaintiffs have no right to a jury trial in actions brought under *section 502(a)(2)*. E.g., *Diduck, 737 F. Supp. at 805* (concluding that "no jury trials obtain under *sections 409 and 502(a)(2)* of ERISA" because "claims for breach of fiduciary duty have traditionally been characterized as equitable" and "the nature of the relief afforded pursuant to *section 409* is equitable and not legal").    *102 In the most extensive treatment of the issue, one Court reasoned:Issues raised under § *1132(a)(2)* for breach of fiduciary duty are examined under trust law principles and fiduciary standards. Actions for breach of fiduciary duty by a trustee were within the exclusive jurisdiction of courts of equity at common law, and, thus, not triable by a jury. In actions under § *1132(a)(2)*, any entitlement to monetary relief necessarily turns upon whether or not the fiduciary has breached its ERISA duties; thus, any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue -- whether or not there has been a breach of fiduciary duty. Consequently, the nature of the proceedings are inherently equitable.*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia 876 F. Supp. 809, 816 (E.D. Va. 1995)* (internal quotation marks and citations omitted). The Court thus struck the plaintiff's demand for a jury trial.

However, these cases antedate the Supreme Court's decision in *Great-West*. Although that decision did not deal with the right to a jury trial per se, the Supreme Court's explication of the distinction between **\*103** law and equity, discussed in detail in Part III, is relevant here as well. As I concluded in Part III, the monetary relief sought by plaintiffs in this case cannot be characterized as equitable relief under *Great-West*. Rather, plaintiffs seek damages from the trustees on behalf of the Employee Benefit Funds. HN59Because they seek money damages rather than an equitable remedy, both Miranda and Individual Plaintiffs are entitled to a jury trial on their ERISA claims. Cf. *White v. Martin, 2002 U.S. Dist. LEXIS 6899, 2002 WL 598432,* at *4 (D. Minn. Apr. 12, 2002) (concluding that a plaintiff seeking equitable restitution is not entitled to a jury trial in a suit based on *section 502(a)(2)* but implying that after Great-West a plaintiff seeking money damages under ERISA would be entitled to a jury trial).

One case in this district indicates that, notwithstanding Great-West, suits for breach of fiduciary duty are

necessarily "in equity" and therefore do not carry a right to a jury trial. In *Pereira v. Cogan, 2002 U.S. Dist. LEXIS 8513, 2002 WL 989460* (S.D.N.Y. May 10, 2002), a bankruptcy trustee alleged that directors and officers of a corporation breached their fiduciary **\*104** duty to the corporation and its creditors by subordinating the interests of the creditors to the interests of a dominant shareholder. Plaintiffs moved to strike the defendants' demand for a jury trial on the fiduciary duty claims and the Court granted the motion. With respect to the first prong of the Terry test, namely the "nature of the issues involved," *2002 U.S. Dist. LEXIS 8513,* WL at *2, the Court concluded that "the general rule is that 'actions for breach of fiduciary duty, historically speaking, are almost uniformly actions "in equity"--carrying with them no right to trial by jury.'" *2002 U.S. Dist. LEXIS 8513,* WL at *3 (quoting *In re Evangelist, 760 F.2d 27, 29 (1st Cir. 1985)))*. With regard to the second prong of the test, namely "the nature of the remedy sought," *2002 U.S. Dist. LEXIS 8513,* WL at *2, the Court concluded that, although "restitution may be legal if ordered in a case at law," *2002 U.S. Dist. LEXIS 8513,* WL at *4, "this is an equity case and therefore the restitution is equitable," id.

In reaching its conclusion that the plaintiffs were seeking equitable restitution simply because an action for breach of fiduciary duty is "in equity," the Pereira Court rejected the argument that "the relief sought ... is not in fact restitution **\*105** because the officers and directors never personally possessed any of the disputed funds themselves." Id. However, the Great-West Court stated explicitly that a plaintiff could seek restitution in equity only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West, 534 U.S. at 213*. Thus, with respect to the second prong of the Terry test, i.e., the nature of the remedy sought, Pereira appears to be at odds with Great-West.

As the Supreme Court stated in Mertens, HN60"all relief available for breach of trust could be obtained from a court of equity." *Mertens, 508 U.S. at 257*; see also *Reich v. Continental Casualty Co., 33 F.3d 754, 756 (1994)* (noting that "the ... concept of fiduciary obligation was invented by equity judges"). Therefore, as in any suit for breach of fiduciary duty, the first prong of the test -- "comparing the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," *Granfinanciera, 492 U.S. at 42* -- weighs against a **\*106** jury trial in the present case. However, the second, more important, prong of the test -- "determining whether the remedy sought is legal or equitable" -- weighs in favor of a jury trial, because, under the

Court's analysis in *Great-West,* plaintiffs seek legal relief from the trustees. Because the remedy sought against the trustees of the Employee Benefit Funds is a legal remedy, the motion to strike plaintiffs' jury demand on the ERISA causes of action is denied.

## X.

Finally, the UMF Trustees move to dismiss the complaint for improper venue under *Fed. R. Civ. P. 12(b) (3).* n22 ERISA has its own venue provision which states, in relevant part, that "an action . . . may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *29 U.S.C. § 1132(e) (2) (2000).* Miranda contends that because defendant trustees Reginald Rosado, Stephen Camadeco, Bertram Gelfand, and Anthony Guigliano reside in the Southern District of New York, the ERISA claims cannot be dismissed for improper venue.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n22 The UMF Trustees are defendants in the ERISA and RICO actions. Because the RICO action has been dismissed, I consider the ERISA claims only in addressing the UMF Trustees' Rule 12(b) (3) motion.

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

*107

Acknowledging that some defendants reside in the Southern District, the UMF Trustees change course in their Reply Brief and ask this court to transfer the action to New Jersey sua sponte under *28 U.S.C. § 1404(a),* which allows a district court to transfer any civil action to another district where "for the convenience of parties and witnesses and in the interest of justice." n23 According to the UMF Trustees, venue would be more appropriate in New Jersey because the operative facts took place in New Jersey, the Employee Benefit Funds are located in New Jersey, many of the defendants live in New Jersey, relevant documents are located in New Jersey, and the district court in New Jersey is fully familiar with the governing law and could efficiently handle this case.

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n23 In its initial Memorandum of Law,

the UMF Trustees mention ERISA's venue provision in a footnote only, and do not ask the court to transfer the action under section 1404(a).

- - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

A court may sua sponte *108 transfer an action under *28 U.S.C. § 1404(a)* after giving both parties notice and an opportunity to be heard. In *Haskel v. FPR Registry, Inc., 862 F. Supp. 909, 916 (E.D.N.Y. 1994),* for example, the Court transferred an action sua sponte on the ground that the plaintiff's choice of forum was inconsistent with the parties' forum selection clause, and plaintiff, in response to a motion to dismiss for improper venue, "failed to satisfy the heavy burden of proof to show that the serious inconvenience of the contractual forum warrrants setting aside the forum selection clause." *Id. at 917* (citations omitted). Likewise, in *Clisham Management v. American Steel Building Co., 792 F. Supp. 150, 157 (D. Conn. 1992),* the Court, after initially denying a motion to transfer, reversed its earlier decision sua sponte after concluding that the case presented complex and novel issues of Texas law that should not be decided by a district court in Connecticut. *Id. at 158.*

Here, Individual Plaintiffs and Miranda have had no opportunity to respond to the trustees' belated request to transfer the action *109 to New Jersey. Moreover, it appears that Individual Plaintiffs contest the first ground for transfer put forward by the Trustees -- that the operative events in this lawsuit did not take place in the Southern District of New York. (SeePl.'s Mem. at 48-49) Therefore, unlike the Haskell and Clisham ManagementCourts, which had strong grounds to believe that venue in their districts was inappropriate based on an existing record, this court has not been presented with facts sufficient to support a sua sponte transfer. *Cf. Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 437 (S.D.N.Y. 2000)* (noting that the "convenience of party and non-party witnesses is perhaps the most important consideration of a Section 1404(a) motion"); *800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 133 (S.D.N.Y. 1994)* (laying out nine separate factors to be considered in evaluating a motion to transfer under section 1404(a)).

* * *

For the reasons stated, defendants' motion to dismiss is granted in part and denied in part. The RICO claims are dismissed in their entirety for lack of standing. Bona and Thomas's *110 ERISA claims, as well as the ERISA claims against trustees of the Union Mu-

tual Medical Fund, are dismissed for lack of standing. Individual Plaintiffs' ERISA claims are also dismissed for lack of standing to the extent that Individual Plaintiffs seek monetary relief on thier own behalf. Finally, the ERISA claims are time-barred except to the extent that they arise out of the renewal of service contracts within six years of plaintiffs' filing the complaint. Plaintiffs' application for leave to file a claim for breach of fiduciary duty under LMRDA § 501 is granted. Defendants' motion to strike plaintiffs' jury demand is denied, and the UMF Trustees' motion to dimiss for improper venue is also denied. The parties will attend a conference on April 15, 2003 to discuss the progress of this litigation. The conference will be held at 9:15 a.m. in Room 21B of the United States Courthouse, 500 Pearl Street, New York, New York 10007.

SO ORDERED:

/s/

Michael B. Mukasey

U.S. District Judge

Dated: New York, New York

March 18, 2003