1995 U.S. Dist. LEXIS 9147

MARIA J. EVARISTO, LUISA ANTUNES, ELSA ANDRADE, MARIO CUNHA, MARIA C. NICOLAU, LUISA VELEZ, MARIA P. RAMOS, ELIZABETH LUIZ, JOHN THOMAS, HUMBERTO VELEZ, VINCENT LOPEZ, JEANNETTE FERRARA, HELENA MENDES, ROSA ATAIDE, NATERCIA ALMEIDA, AUDREY MAZZA, LISBETH RAVALLO, ANTONIO MOREIRA, MAFALDA SILVA, ROSARIO ANTUNES, ISABEL BOHN, ROSE GRIMM, MANUEL RUAS, Plaintiffs, -against- JOHN RENDEIRO, individually and as PLAN ADMINISTRATOR of the TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, TRUSTEES OF THE TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, PLAN ADMINISTRATOR OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TRUSTEES OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP AIR PORTUGAL, Defendants. JOHN RENDEIRO, et al., Third-Party Plaintiffs, -against- CONNECTICUT GENERAL LIFE INSURANCE COMPANY and DONALD M. MILLER ASSOCIATES, INC., Third-Party Defendants.

91 Civ. 7950 (LMM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1995 U.S. Dist. LEXIS 9147

June 27, 1995, Decided
June 30, 1995, FILED

**CORE TERMS:** residual, termination, terminated, terminate, beneficiary, accrued, defined benefit plan, plan administrator, colorable claim, supplemental, distributed, summary judgment, accrued benefit, calculation, market value, lump sum, distribute, election, annual report, informing, sponsor, proportionate share, notified, promised, granting summary judgment, failure to provide, covered employment, retirement, notice, automatically

**COUNSEL:** *1 For MARIA J. EVARISTO, LUISA ANTUNES, ELSA ANDRADE, MARIO CUNHA, MARIA C. NICOLAU, LUISA VELEZ, MARIA P. RAMOS, ELIZABETH LUIZ, JOHN THOMAS, HUMBERTO VELEZ, VINCENT LOPEZ, JEANNETTE FERRARA, HELENA MENDES, NATERCIA ALMEIDA, AUDREY MAZZA, LISBETH RAVALLO, ANTONIO MOREIRA, MAFALDA SILVA, ROSARIO ANTUNES, ISABEL BOHN, ROSE GRIMM, MANUEL RUAS, plaintiffs: Ralph C. Prisco, Vaccaro & Prisco, Hauppauge, NY. For ROSA ATAIDE, plaintiff: Robert F. Ferris, Robert L. Ferris, New York, NY.

For JOHN RENDEIRO, individually and as Plan Administrator of the Tap Air Portugal Employee Savings Plan, TRUSTEES OF THE TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, PLAN ADMINISTRATOR OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TRUSTEES OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP AIR PORTUGAL, defendants: Robert F. Ferris, Robert L. Ferris, New York, NY. Scott M. Riemer, SCHOEMAN, MARSH & UPDIKE, New York, NY.

For JOHN RENDEIRO, TRUSTEES OF THE TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, TAP AIR PORTUGAL EMPLOYEE SAVINGS PLAN, PLAN ADMINISTRATOR OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TRUSTEES OF TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP - THE AIRLINE OF PORTUGAL RETIREMENT INCOME PLAN, TAP AIR PORTUGAL, third-party plaintiffs: Robert F. Ferris, Robert L. Ferris, New York, NY. Scott M. Riemer, SCHOEMAN, MARSH & UPDIKE, New York, NY.

**JUDGES:** LAWRENCE M. McKENNA, U.S.D.J.

**OPINIONBY:** LAWRENCE M. McKENNA

**OPINION:** MEMORANDUM AND ORDER

McKENNA, D.J.

Plaintiffs, Maria J. Evaristo, Luisa Antunes, Elsa Andrade, Mario Cunha, Maria C. Nicolau, Luisa Velez, Maria P. Ramos, Elizabeth Luiz, John Thomas, Humberto Velez, Vincent Lopez, Jeannette Ferrara, Helena Mendes, Rosa Ataide, Natercia Almeida, Audrey Mazza, Lisbeth Ravallo, Antonio Moreira, Mafalda Silva, Rosario Antunes, Isabel Bohn, Rose Grimm, and Manuel Ruas ("Plaintiffs"), brought this action against defendants, TAP Air Portugal ("TAP"), the Tap - The Airline Of Portugal Retirement Income Plan ("Retirement Plan"), Tap Air Portugal Employee Savings Plan ("Savings Plan"), John Rendeiro ("Rendeiro") individually and as plan administrator of both plans, and the plans' trustees, ("Defendants"), for violations of the Employee Retirement Income Security Act ("ERISA" or the "Act"), *42 U.S.C. §§ 1001* to 1461. Plaintiffs

Page 6

originally sought damages for Defendants' failure to provide documents pursuant to a request by plan participants. Plaintiffs later added four claims for breach of fiduciary duties. Plaintiffs moved pursuant to Fed. R. Civ. P. 56 for an order granting summary judgment on *2 their claim for failure to provide documents. Defendants cross-moved for an order granting summary judgment dismissing all of Plaintiffs' claims. For the reasons set forth below, Plaintiffs' motion is denied and Defendants' motion is granted.

Facts

Plaintiffs, current and former employees of TAP, were participants in the Retirement Plan until TAP replaced the Retirement Plan with the Savings Plan at the beginning of 1985. (Compl. P 5.) Other than as noted, the facts of this case are not in substantial dispute.

On April 1, 1966 TAP established the Retirement Plan, a defined benefits plan requiring employee contributions and held for investment in a CIGNA Group Annuity Contract (the "CIGNA account"). The Retirement Plan was amended effective April 1, 1976 to comply with ERISA. (Rendeiro Aff. PP 3, 4.) In the fall of 1984, Joao Forcada, Director General of TAP in the United States, Manuel Pinot Silva ("Silva"), Administrative & Financial Manager of TAP in the United States, and Rendeiro decided to terminate the Retirement Plan and replace it with the Savings Plan, a defined contribution plan satisfying § *401(k) of the Internal Revenue Code*. (Rendeiro Aff. P 6.) On October 9 and 15, *3 1984, Silva sent circulars to all employees informing them of the decision to replace the Retirement Plan. (Id. Exh. C.) In a letter dated October 22, 1984, Rendeiro authorized CIGNA to take all actions necessary to terminate the Retirement Plan and to calculate each participant's accrued benefit. (Id. Exh. D.) On December 11, 1984, TAP sent each employee a copy of the Notice to Interested Parties, as required under ERISA, informing all employees that TAP had applied to the IRS and the Pension Benefit Guaranty Corporation ("PBGC") to terminate the Retirement Plan. (Id. Exh. F.) On December 21, 1984, Rendeiro completed Form 5310, Application for Determination Upon Termination; Notice of Merger, Consolidation or Transfer of Plan Assets or Liabilities; Notice of Intent to Terminate. (Id. Exh. G.)

Pursuant to TAP's request, CIGNA actuarially valued each participant's accrued benefits as of March 1, 1985 and provided TAP with a list of lump sum values. n1 (Id. Exh. H.) According to Rendeiro the lump sum value represented not only each participant's accrued benefit payment but also a proportionate share of the Plan's residual assets derived from mandatory employee contributions.  *4 n2 (Id. P 12.) On March 25, 1985, Rendeiro informed the IRS and the PBGC that $ 323,928.27 in residual assets attributable to employee contributions would be allocated to eligible participants and beneficiaries. (Id. Exh. I.) On June 25, 1985, Joao M. Forcada, Director General of TAP in the United States, sent a letter to all employees informing them of TAP's intent to distribute the residual assets attributable to employee contributions. (Id. Exh. J.) On August 6, 1985, the PBGC issued a Notice of Sufficiency. (Id. Exh. K.) TAP then sent out election forms to each participant providing them with three options: a single life annuity, a lump sum, or a rollover to the Savings Plan. (Id. Exh. L.) Each Plaintiff made an election, with all but four of the Plaintiffs electing a lump sum payment. On November 20, 1985, the IRS issued a determination letter finding that the termination did not adversely affect the Plan's qualification for Federal tax purposes. (Id. Exh. M.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Under the Retirement Plan, each participant's accrued benefit, the amount that he would receive annually after retirement, was equal to one half of the total amount contributed on his behalf during his participation in the plan. (Retirement Plan § 4.1, attached as Exh. A to Rendeiro Aff.) At termination, this amount had to be reduced to a single lump sum representing the present day actuarial value of the promised stream of payments.

*5

n2 Residual assets are those assets remaining in a defined benefit plan after all benefits have been distributed. They will be derived from both employer and employee contributions. See also infra p. 8.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On January 1, 1986, CIGNA issued checks to each participant purportedly in the amount of each participant's accrued benefit plus the proportionate share of the residual assets attributable to employee contributions plus interest. Every Plaintiff received and cashed his or her check. (Id. P 19.) Having distributed all of the accrued benefits and the surplus assets attributable to employee contributions, $ 194,782.94 remained in the CIGNA account. (Id. P 20.)

On November 10, 1986, to facilitate the distribution of the remaining assets, Rendeiro executed an amendment to the Annuity contract, which included an au-

thorization to CIGNA to make an adjustment based on the experience rating of the assets. n3 (Id. P 21.) On April 9, 1987 CIGNA issued a check to TAP for $ 228,839.90 ($ 194,782.94 plus interest). In the summer of 1988, Monteiro Lemos, President of TAP, decided to voluntarily *6 distribute these employer-derived residual assets according to the same distribution formula employed to distribute the employee-derived residual assets. (Rendeiro Aff. PP 22-26.) In October 1988, each participant received a check for his portion of the remaining residual assets. (Id. Exh. Q.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 The purpose of this adjustment was explained by Kathleen R. Prewitt, the enrolled actuary of the Retirement Plan when it was terminated: The market value adjustment is made to maintain equity among General Account clients and to protect remaining clients from adverse investment selection. Without market value adjustment, there would be an incentive to withdraw funds during periods of increasing interest rates because the funds could then be invested at a higher interest rate. The difference between book value and market value would then have to be absorbed by remaining clients through lower credited interest rates.

Prewitt Aff. at 2 (attached as Exh. 1 to Def. Post-Hearing Brief).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

On November 29, 1989, *7 almost five years after the Plan's termination and almost four years after the January 1986 distribution of benefits and residual assets, Plaintiffs formally requested Retirement Plan documents pursuant to ERISA's disclosure requirements. On that date, Ralph Prisco, Plaintiffs' attorney, wrote to TAP seeking to "determine the entitlement of our clients to benefits under any and all retirement plans which may have been terminated, merged, consolidated, or presently maintained by TAP." Plaintiffs repeated their requests in letters dated February 13, 1990 and January 16, 1991. (Compl. P 14-18; Exhs. A, D, E.) Defendants never complied with these requests.

On November 25, 1991, Plaintiffs filed their original complaint ("Complaint"). In the Complaint they alleged that Defendants had failed to provide documentation pursuant to a written request by participants or beneficiaries of the Plan. (Compl. PP 14-18.) On May 17, 1993, Plaintiffs filed an Amended and Supplemental Complaint ("Amended Complaint") including four additional causes of action, all alleging breach of fiduciary duty: (1) failure to maintain records and file annual reports, (2) improper termination of the Retirement Plan, *8 (3) reducing the Plan's assets by authorizing the market adjustment, and (4) retroactive reduction of the Plaintiffs' accrued benefits.

Standard

Summary judgment is appropriate only if, resolving all ambiguities and drawing all factual inferences in favor of the non-moving party, there is no genuine issue of material fact to be tried. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*. The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

Defined Benefit Plans

The Retirement Plan was a defined benefit plan. "A defined benefit plan is one which sets forth a fixed level of benefits. Contributions to a defined benefit plan are calculated on the basis of a number of actuarial assumptions about such things as employee turnover, mortality rates, compensation increases, and the rate of return *9 on invested plan assets." *Mead Corp. v. Tilley, 490 U.S. 714, 717, 104 L. Ed. 2d 796, 109 S. Ct. 2156 (1989)* (citations omitted). With a defined benefit plan, each participant's benefit is calculated based not on the amount contributed to the plan on his behalf by either the employer or the participant himself, but rather by the amount promised to the participant in the plan document. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 A defined contribution plan on the other hand is one in which individual accounts are established for each participant and into which the employer and/or employee make mandatory and voluntary contributions. The participant's benefit under the plan is simply the total assets in his account.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Upon the termination of a defined benefit plan, the plan administrator must distribute plan assets accord-

ing to a six-tier allocation scheme comprising all of the plan's benefit liabilities. ERISA § 4044(a), *29 U.S.C. § 1344*(a). If assets remain after settlement of all benefit liability, the plan is overfunded and the remaining assets *10 are the plan's residual assets derived in part from both employer and employee contributions. n5 Contrary to the position of Defendants in their brief and in the June 25, 1985 letter to employees, the portion of residual assets derived from employee contributions must be "equitably distributed to the participants who made such contributions or their beneficiaries." ERISA § 4044(d)(3)(A), *29 U.S.C. § 1344*(d)(3)(A). If the plan expressly so provides, any other assets (e.g. the portion of residual assets derived from employer contributions) may automatically revert to the employer. ERISA § 4044(d)(1), *29 U.S.C. § 1344*(d)(1). The Retirement Plan did expressly provide for such a reversion. (Rendeiro Aff. Exh. A, § 16.4.) Residual assets, even those that must be returned to participants, are not benefits, as that term is understood in ERISA.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n5 ERISA provides a formula for determining what amount of residual assets are derived from each. See § 4044(d)(3)(B), *29 U.S.C. § 1344*(d)(3)(B).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

### § 502(c) Claim

Among *11 its many disclosure requirements, ERISA requires that a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated." ERISA § 104(b)(4), *29 U.S.C. § 1024*(b)(4). If the administrator fails to provide the requested information, he may, in the Court's discretion, be personally liable for up to $ 100 a day commencing thirty days after the date of the request. ERISA § 502(c)(1), *29 U.S.C. § 1132*(c)(1).

Because only participants or beneficiaries are entitled to the documents requested, the threshold question is whether Plaintiffs were participants at the time that the requests for documents were made. n6 "The term participant is of considerable importance within ERISA's statutory scheme because numerous rights under that scheme are limited to those who are included within that term." *Saladino v. I.L.G.W.U. Nat. Retirement Fund, 754 F.2d 473, 476 (2d Cir. 1985).* The term "participant" is naturally read *12 to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989)* (citations omitted). Employees who have received their vested benefits under the plan and who do not challenge the calculation of their benefits are no longer participants. *Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986); Saladino, 754 F.2d at 477;* see also Werner v. Morgan Equip. Co., 1992 WL 453355 (N.D. Cal.) (holding that participants of a defined contribution plan who challenged the plan sponsor's valuation of stock options were participants); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345 (5th Cir. 1989)* (same).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n6 There has been no suggestion that Plaintiffs were beneficiaries.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*13

Plaintiffs argue that they are participants because (1) TAP failed to effectively terminate the Retirement Plan, and they are therefore still covered by the plan, or (2) Plaintiffs have a colorable claim in a suit to recover benefits. The Court takes each argument in turn.

### TAP terminated the Retirement Plan

At the time of the purported termination, ERISA had only two express requirements for terminating a plan. A plan administrator needed only (1) file a notice of termination (IRS/PBGC Form 5310) with the PBGC, and (2) notify participants and retirees of the details of the proposed termination. ERISA § 4041, *29 U.S.C. § 1341* (1982), *29 C.F.R. § 2616.2(a), 29 C.F.R. § 2616.4(a),* (b) (1982). n7 Failure to comply with the statutory requirements rendered the termination voidable by the PBGC. *29 C.F.R. § 2616.5.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n7 The requirements are somewhat more burdensome now, but there is still no requirement that the plan be amended. See

ERISA § 4041, *29 U.S.C. § 1341.*

---------- End Footnotes----------

Plaintiffs have not raised a single question *14 of fact concerning the general course of events as described by Defendants. They concede, or at least have not contested, that Rendeiro filed documents with CIGNA, the IRS, and the PBGC; that TAP notified each participant and beneficiary; that every plaintiff received an election form and in fact made an election; and that every Plaintiff received and cashed his disbursement check.

Defendants nevertheless argue that the termination was ineffective because implicit in ERISA is a requirement that the plan sponsor amend the plan to terminate it, and that a failure to do so renders the termination ineffective. The Court disagrees. Plaintiffs have proposed no authority for their reading of the Act, nor have they pointed to any legislative history, or analogy from trust law. In the absence of any authority, the Court will not read an amendment requirement into the Act. Defendants took every reasonable measure to terminate the plan; they notified the IRS and the PBGC, they authorized CIGNA to terminate the plan and appraise each participant's interest, they notified the employees on more than one occasion, they distributed benefits and residual assets, and they replaced the Retirement Plan *15 with a defined contribution plan. An additional, formal, amendment would have served no purpose. It would not have put any other party on notice, nor would it have served to protect any interest more effectively.

Because there are no questions of fact concerning Rendeiro's actions in terminating the plan, and because no amendment is necessary, the Court finds that the Plan was properly and effectively terminated as of December 31, 1984. The Court must now determine whether plaintiffs had or have a colorable claim for their benefits.

Claim for benefits

Despite three opportunities (original moving papers, oral argument (before the Judge to whom this case was previously assigned), and post-argument briefs), Plaintiffs have failed to articulate a colorable challenge to the calculation and distribution of their benefits. Fixated on their theory that the plan was never terminated and is still in effect, Plaintiffs insist that the calculation of the proportional share of residual assets and the November 1986 market adjustment adversely impacted their "benefits" under the plan. This argument demonstrates a fundamental misunderstanding of the term "benefits" within ERISA. Each participant's *16 benefits were a function, not of the assets in the CIGNA account, but rather of the Plan's promised benefit, in this case an annual payment of one half of total contributions. n8 Plaintiffs have not made any challenge to Defendants' calculation of these amounts.

-------------- Footnotes---------

n8 One example of Plaintiffs' continuing misconception of their rights under the Retirement Plan and ERISA can be found in a footnote in their post argument brief: "The payment of a proportionate share of surplus assets to employees was not a gratuitous payment in addition to their accrued benefits; the payment was part of the employees' plan benefits." (Post-Argument Br. at 3, fn.2.)

---------- End Footnotes----------

Plaintiffs' Supplemental Claims

Plaintiffs added four supplemental claims to their original action, each alleging that Defendants breached a fiduciary duty to the plan after the Retirement Plan's effective date of termination. Unless these claims are for benefits, Plaintiffs' original cause of action must be dismissed.

In their first supplemental claim, Plaintiffs allege *17 that Defendants failed to maintain records and to file appropriate reports. (Am. Compl. PP 28-31.) However plaintiffs have no standing to bring such a claim. Under the plain terms of ERISA's civil enforcement section, only the Secretary may sue to assess a civil penalty against any plan administrator for his failure to file the annual report. § 502(c)(2). Plaintiffs contend that they are not seeking to enforce the Secretary's power under § 502(c)(2), but now bring this claim under § 502(a)(2) for breach of fiduciary duty in violation of § 409. The Court does not agree. Section 409 does not encompass claims for failure to maintain records and file reports. These are ministerial tasks that, while required under ERISA, do not have a direct financial effect on the plan. Section 409 imposes liability on fiduciaries for "losses to the plan resulting from each . . . breach." Failure to maintain records or to file an annual report, in and of themselves, will not cause any loss to the plan. They may allow the fiduciary to conceal a loss, but will not cause the loss itself. The careful articulation of enforcement rights under ERISA cannot be modified by characterizing any breach of a ministerial *18 duty as a breach of a fiduciary duty.

Plaintiffs' second supplemental claim alleges that De-

fendants improperly terminated the Plan without the appropriate authorization of TAP, the Plan sponsor. (Compl. PP 32-37.) The Court has addressed this claim above, finding that the Retirement Plan was properly terminated effective December 31, 1984.

Plaintiffs' third and fourth supplemental claims allege that the November 10, 1986 amendment to the Annuity contract prematurely terminated the contract and retroactively reduced the Plaintiffs' accrued benefits. Plaintiffs also allege that the Amendment authorized CIGNA to make an adjustment to the Plan diverting $ 76,721.36 in trust assets to CIGNA due to a market value adjustment. (Am. Compl. PP 38-50.) Plaintiffs have no standing to bring these claims because as of the date of the amendment, TAP had terminated the Plan and distributed the accrued benefits and employee-derived residual assets. All that remained, and all that was affected, was employer-derived residual assets that had automatically reverted to TAP under § 16.4 of the Plan.

Conclusion

Because at the time that Plaintiffs requested documents, TAP had terminated the Retirement *19 Plan, and Plaintiffs did not have a colorable claim for benefits, they were no longer participants of the Plan. Plaintiffs' motion for summary judgment on their original cause of action is denied and Defendants' motion for summary judgment is granted. For the reasons stated above, Defendants' motion for summary judgment to dismiss Plaintiffs' First, Second, Third, and Fourth Supplemental claims is also granted. The Complaint and Amended Supplemental Complaint are dismissed.

Plaintiffs' request for attorney's fees pursuant to *29 U.S.C. § 1132*(g)(1) and for costs associated with the Court's July 10, 1992 order are denied.

The Clerk is directed to enter judgment dismissing the Complaint and Amended Supplemental Complaint.

Dated: New York, New York
June 27, 1995

SO ORDERED

LAWRENCE M. McKENNA

U.S.D.J.

## Citation #3
**2003 us dist lexis 4186**