SUSAN AUGIENELLO, RICHARD J. DORAN, PHILIP EINHORN, CRAIG NAZZARO, EILEEN PAPP, and VINCENT AMATO, Plaintiffs, - against - COAST-TO-COAST FINANCIAL CORP., ALVIN DWORMAN, PENNY PRITZKER, NELSON STEPHENSON, MONTE KURS, KEVIN SEXTON, NEIL HALLERAN and JOHN DOES 1-100, Defendants.

01 Civ. 11608 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 14584; 29 Employee Benefits Cas. (BNA) 1195

August 7, 2002, Decided
August 12, 2002, Filed

**SUBSEQUENT HISTORY:** *Affirmed by Augienello v. Coast-To-Coast Fin. Corp., 2003 U.S. App. LEXIS 8770 (2d Cir. N.Y., May 9, 2003)*

**DISPOSITION:** *1 Defendants' motion to dismiss complaint granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former federal savings employees brought suit against defendant plan fiduciaries, alleging that defendants violated their fiduciary duties under an Employee Retirement Income Security Act (ERISA) plan by failing to pay the employees' their deferred retirement funds in the ERISA plan after the federal savings association was closed. Defendants moved to dismiss the employees' complaint.

**OVERVIEW:** The federal savings association closed one year after the employees began making contributions to the plan. On the motion to dismiss, defendants claimed that the employees' contractual rights to future deferred compensation and severance payment had not vested prior to the institution of the receivership, thereby precluding recovery. The court agreed because there existed no vested right to deferred compensation since the employees could not have claimed immediate payment of the compensation sought prior to the automatic termination of the employment contracts, which indisputably occurred either before or at the time of the receivership. According to the very terms of the employment agreements, deferred compensation was available only to those who completed a three-year term and then remained employed at the association at the end of each full month in which a deferred compensation payment would be due. The employees failed to complete the required terms of service, precluding a right to all deferred compensation from becoming vested by the time their contracts terminated.

**OUTCOME:** Defendants' motion to dismiss was granted.

**CORE TERMS:** deferred compensation, vested, termination, terminated, resident, involuntary, severance, rider, beneficiary, continuation, fiduciary, salary, immediate payment, equitable relief, fifty-seven, unjust enrichment, receivership, deferred, monthly, operation of law, unconditional, former employees, contractual, installments, non-party, automatic, receiver, savings, breach of fiduciary duty, employment agreement

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
HN1 In evaluating a motion to dismiss, the court must accept as true the factual allegations asserted in the complaint and draw all reasonable inferences in favor of the plaintiff. Review must be limited to the complaint and the documents attached or incorporated into the complaint by reference. A complaint is deemed to include documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
HN2 While 12 C.F.R. § 563.39(b)(4) terminates all obligations under contracts into which it is incorporated upon default or a finding of unsafe or unsound condition, the provision does not apply to vested rights.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
HN3 A right is vested under 12 C.F.R. § 563.39 if it is unconditional, such that the employee holding the right is entitled to claim immediate payment.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
HN4 12 C.F.R. § 563.39(b)(5) expressly protects only rights that have already vested at the time of termination are preserved.

*Labor & Employment Law > Employee Retirement*

*Income Security Act (ERISA) > Civil Claims & Remedies*
HN5See *29 U.S.C.S. § 1132*(a)(1)(B).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN6Section 502(a)(3)(B) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., allows a participant, beneficiary, or fiduciary to assert certain claims for equitable relief. *29 U.S.C.S. § 1132*(a)(3)(B).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN7See *29 U.S.C.S. § 1132*(a)(3).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN8With limited exceptions, § 502(a)(1)(B) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., only gives a beneficiary a right to sue the plan itself for recovery of benefits. *29 U.S.C.S. § 1132*(a)(1)(B).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN9Section 502(a)(3)(B) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., only provides for those categories of relief that were typically available in equity. *29 U.S.C.S. § 1132*(a)(3)(B).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN10Neither an order of specific performance for payment of money past due, nor restitution in a form that was not traditionally available in equity, could be characterized as equitable relief. Almost invariably, suits seeking to compel the defendant to pay a sum of money to the plaintiffs are suits for money damages, as that phrase has traditionally been applied.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Contracts Law > Remedies*
HN11Because unjust enrichment is a quasi-contractual remedy, the existence of a valid and enforceable written contract governing a particular subject matter precludes recovery for events arising out of the same subject matter. This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract.

COUNSEL: For Plaintiffs: SCOTT S. BALBER, ESQ., Of Counsel, KELLY & BALBER, New York, NY.

For Defendants: DAVID W. HALLER, ESQ., Of Counsel, COVINGTON & BURLING, New York, NY.

For Defendants: PAUL W. SCHMIDT, ESQ., Of Counsel, COVINGTON & BURLING, Washington, DC.

JUDGES: ROBERT W. SWEET, U.S.D.J.

OPINIONBY: ROBERT W. SWEET

OPINION: Sweet, D.J.,

Defendants Coast-to-Coast Financial Corp ("CCFC"), Alvin Dworman ("Dworman"), Penny Pritzker ("Pritzker"), Nelson Stephenson ("Stephenson"), Monte Kurs ("Kurs"), Kevin Sexton ("Sexton"), Neil Halleran ("Halleran"), and John Does 1-100 have moved pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the complaint of plaintiffs Susan Augienello ("Augienello"); Richard J. Doran ("Doran"), Philip Einhorn ("Einhorn"), Craig Nazzaro ("Nazzaro"), Eileen Papp ("Papp"), and Vincent Amato ("Amato").

For the reasons set forth below, the motion is granted.

**Parties**

Augienello, Einhorn, Nazzaro, Amato are residents of New York and are former employees of non-party Superior Bank FSB ("Superior").

Doran and Papp are residents of New Jersey and are also former employees of Superior. *2

CCFC is a Nevada corporation with its principal place of business in New York.

Dworman, a resident of New York, was a beneficial owner of CCFC shares and served on the Investment Advisory Committee of non-party Superior Holdings, Inc. ("SHI"), a subsidiary of CCFC.

Penny Pritzker is a resident of Illinois and was Executive Vice President and a member of the Board of Directors of CCFC.

Stephenson is a resident of Connecticut and was the President of CCFC and SHI. Stephenson also served as Chairman of the Board of Directors of Superior, and as a member of the Board of Directors of CCFC.

Kurs is a resident of New York and was President of the Consumer Finance Division of Superior and a member of the Board of Directors of both Superior and CCFC.

Sexton, a resident of Connecticut, was the Senior Vice President and Treasurer of CCFC and Vice President and Treasurer of SHI.

Halleran is a resident of Illinois and was President and a member of the Board of Directors of Superior.

Case 3:01-cv-01737-MRK    Document 52-28    Filed 10/16/2003    Page 3 of 7

2002 U.S. Dist. LEXIS 14584; 29 Employee Benefits Cas. (BNA) 1195

### Prior Proceedings

This action was commenced on December 20, 2001 with the filing of a complaint stating three claims for relief. First, the plaintiffs claim that the defendants were fiduciaries *3 under an Employee Retirement Income Security Act (ERISA) plan, and that the defendants breached their fiduciary duties to the plaintiffs. Second, the complaint alleges that CCFC, Dworman, and Pritzker breached employment contracts that plaintiffs entered into with Superior. Finally, plaintiffs claim that CCFC, Dworman, and Pritzker were unjustly enriched by taking money from the ERISA plan and by unjustly using the plaintiffs' labor.

The defendants filed the instant motion to dismiss on March 1, 2002. The motion was deemed fully submitted on April 19, 2002.

### Facts

Plaintiffs, former employees of non-party Superior, a federal savings association headquartered in Illinois, allege that they were participants in an employee pension benefit plan (the "ERISA Plan") formed by CCFC to provide retirement income to employees of Superior. The ERISA Plan was allegedly made available to all employees.

The complaint states that on July 1, 1997, plaintiffs entered into employment agreements with Superior (the "Employment Agreements"). The Employment Agreements provide for the payment of salary, incentive compensation monies, deferred compensation monies, and continuation of compensation *4 payments in the event of an involuntary termination of the plaintiffs' employment. The deferred compensation provisions of the Employment Agreements provide that money be paid in sixty equal monthly installments beginning on July 31, 2000. The continuation of compensation provisions, pertaining to severance payments, provide that in the event of an "involuntary termination" of employment, the employee would receive payment of his or her average total compensation for a period of two years. According to the complaint, involuntary termination of employment is defined in the Employment Agreements to include a "change of control event" that results in the reduction of the aggregate ownership interests of then-existing CCFC investors in Superior to less than 50%.

Augienello, Einhorn, Nazzaro, Papp, and Amato allege that they also received riders to their employment agreements dated July 1, 1998, July 1, 1999, and July 1, 2000. Each rider provided for the payment of additional deferred monies in sixty monthly installments, beginning on July 31 three years after the execution of the rider. Doran alleges that he received monthly statements setting forth the deferred monies owed to him. According *5 to plaintiffs, all deferred monies were to be paid by CCFC pursuant to the ERISA Plan.

Plaintiffs allege that defendants Stephenson, Kurs, Sexton and Halleran comprised the "CCFC Plan Committee" and were therefore fiduciaries of the ERISA Plan. Defendants Dworman, Pritzker and CCFC were also alleged fiduciaries of the ERISA Plan in that they exercised authority and control over the management of plan assets. The complaint alleges that the defendants represented that the deferred compensation monies were fully funded and, on a periodic basis, provided plan participants with account statements that purported to set forth the monies being held in trust for the benefit of plan participants.

The plaintiffs began to receive deferred compensation payments on July 31, 2000. On July 27, 2001, Superior was closed by the Office of Thrift Supervision ("OTS"). The Federal Deposit Insurance Corporation ("FDIC") was then appointed receiver of Superior. While the plaintiffs received additional payments of deferred monies after July 27, 2001, those payments ultimately ceased.

### Discussion

### I. Legal Standard

HN1 In evaluating a motion to dismiss, the Court must accept as true the factual *6 allegations asserted in the complaint and draw all reasonable inferences in favor of the plaintiff. *Koppel v. 4987 Corp.*, 167 F.3d 125, 128 (2d Cir. 1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Review must be limited to the complaint and the documents attached or incorporated into the complaint by reference. See *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). In this context, the Court of Appeals has held that a complaint is deemed to "include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. See *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir. 2000).

### II. Plaintiffs Claims are Barred by Banking Regulations and the Terms of Their Contracts

The parties agree that a central question underlying the instant motion is whether the plaintiffs had rights to continued *7 deferred compensation or severance pay that had already "vested" prior to the appointment of the FDIC as receiver for Superior. Defendants contend that the plaintiffs' contractual rights to future deferred compensation and severance payment had not vested

Case 3:01-cv-01737-MRK   Document 52-28   Filed 10/16/2003   Page 4 of 7

2002 U.S. Dist. LEXIS 14584; 29 Employee Benefits Cas. (BNA) 1195

prior to the institution of the receivership, thereby precluding recovery. Plaintiffs, by contrast, argue that the their rights vested on the date that the Employment Agreements and the accompanying riders were executed.

Each plaintiff's employment contract states: "All obligations under this Agreement shall be terminated pursuant to 12 C.F.R. § 563.39(b) (5) . . . when the Bank is determined by the Director of the OTS to be in an unsafe or unsound condition . . . ." (Kurs Decl., Ex. A at 18). Each contract also provides that "obligations under this Agreement shall terminate "as of the date of" any "default, as defined in . . . *12 U.S.C. § 1813*(x) (1)" or "at the time the FDIC . . . enters into an agreement to provide assistance to or on behalf of the Bank . . . ." (Id.). The contracts explicitly exempts "vested rights" from termination. n1

-------------- Footnotes --------

n1 The plaintiffs' Employment Agreements are incorporated into the complaint by reference.

------------ End Footnotes------

*8

Both parties acknowledge that HN2while § 563.39 terminates all obligations under contracts into which it is incorporated upon default or a finding of unsafe or unsound condition, the provision does not apply to vested rights. See 12 C.F.R. § 563.39(b) (4). The policy behind § 563.39 is to allow "the OTS the flexibility it needs to deal with troubled savings institutions while at the same time ensuring payment to employees of salary and benefits already earned." *Romines v. Great-West Life Assur. Co., 73 F.3d 1457, 1465 (8th Cir. 1996)*. While neither the Employment Agreements nor § 563.39 define "vesting," virtually "every court which has considered the issue . . . has held that HN3a right is vested under § 563.39 if it is unconditional, i.e., the employee holding the right is entitled to claim immediate payment." *Id. at 1464*.

Here, there existed no vested right to deferred compensation since the plaintiffs could not have claimed "immediate payment" of the compensation sought prior to the automatic termination of the employment contracts, which indisputably occurred either before or at the time FDIC was appointed *9 receiver. According to the very terms of the Employment Agreements, deferred compensation was available only to those who completed a three-year term and then remained employed at Superior "at the end of each full month" in which a deferred compensation payment would be due. (Kurs Decl., Ex. A at 4). The plaintiffs failed to complete the required terms of service, precluding a right to all deferred compensation from becoming vested by the time their contracts terminated.

The plaintiffs argue that they acquired a vested interest in deferred compensation as of the date of execution of their employment contracts and each rider thereto, although their right to possess the money was delayed until future dates. In support of this position, they rely principally on *Modzelewski v. RTC, 14 F.3d 1374 (9th Cir. 1994)*. In Modzelewski, plaintiff Rice's entered into an employment agreement with a bank providing for the payment of salary continuation benefits if he died or retired after age fifty-seven, but also providing that Rice would forfeit all salary continuation benefits if he continued to work after age fifty-seven and was thereafter terminated for cause. In reviewing *10 the claims by Rice, who at the age of fifty-nine was terminated with the insolvency of the bank and the establishment of a receiver, the Ninth Circuit found that his rights under the employment contract had been vested since he had an unconditional right to immediate payment when he had turned fifty-seven. *Id. at 1378*.

However, unlike plaintiff Rice in Modzelewski, who at the age of fifty-seven had obtained an immediate right to compensation, the plaintiffs here had no unconditional right to benefits prior to the receivership. In order to collect the benefits sought, they had to continue working at Superior for an established number of years or be terminated under circumstances that never arose. n2 In fact, the situation of the plaintiffs in this case is more analogous to that of Modzelewski, the other plaintiff in Modzelewski whose benefits were found not to have been vested at the time the bank became insolvent. Modzelewski had a salary continuation agreement akin to Rice's, except that it entitled him to payments of benefits when he reached age 65. Because Modzelewski was only 53 when the receiver took over the bank, the court found that he was not entitled *11 to "immediate payment." Like the plaintiffs here, Modzelewski's rights had not "already vested" within the meaning of Section 563.39(b) (5). See *Modzelewski, 14 F.3d 1374 at 1378-79*.

-------------- Footnotes --------

n2 Because the payments did not start until three years after the date of the contracts, and were to be paid out in monthly installments over the next five years, eight full years of service would be required in order to receive the full amount of deferred compensation.

Case 3:01-cv-01737-MRK    Document 52-28    Filed 10/16/2003    Page 5 of 7

2002 U.S. Dist. LEXIS 14584; 29 Employee Benefits Cas. (BNA) 1195

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Nor were the plaintiffs' rights to severance pay vested prior to the time of the automatic termination of the Employment Agreements. In the complaint, the plaintiffs allege that "the implementation of the FDIC receivership constituted a change of control as defined in the Employment Agreements," (Compl. P 46), and that a "change of control event" is included in the definition of "involuntary termination," presumably triggering the continuing compensation provisions. (Compl. P 31). Notwithstanding the doubts surrounding this assertion given the language *12 of the Employment Agreements, n3 the fact remains that no "change of control" event or "involuntary termination" occurred prior to the automatic termination. This precluded any rights to severance payments from being protected under the agreements. HN4Section 563.39 expressly protects only rights "that have already vested" at the time of termination are preserved, 12 C.F.R. § 563.39(b)(5), and the Employment Agreements themselves preserve only those rights that have vested "as of the date of termination," (Kurs. Decl., Ex. A at 18). Because neither of these circumstances was present, any rights under the change of control and involuntary termination provisions had not vested at the time the plaintiff's rights were terminated by operation of law. See *Fleischer v. FDIC*, 113 F.3d 168, 172 (10th Cir. 1996) (severance payments due on reduction of workforce had not vested because plaintiff "was terminated by operation of law"); *Rush v. FDIC*, 747 F. Supp. 575, 578 (N.D. Cal. 1990) (denying severance benefits to savings and loan employee since right to benefits had not vested at time of insolvency, and noting that such a result furthers *13 the policy of § 563.39); see also *Crocker v. RTC*, 839 F. Supp. 1291, 1295-96 (N.D. Ill. 1993) (rejecting claim that benefits had vested since right to payment was conditioned on being terminated "without cause" and plaintiff had been terminated instead by operation of law when savings association was placed in receivership).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n3 Paragraph 31 of the complaint specifically states that "involuntary termination of employment is defined in the Employment Agreement to include a "change of control event . . . ." However, the term "change of control event" is nowhere mentioned in the Employment Agreements' definition of "Involuntary Termination." (Kurs. Decl., Exs. A-F).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

## III. Plaintiffs' ERISA Claims Fail for Lack of Standing and the Unjust Enrichment Claim Fails on the Merits

The provisions of Section 563.39 as incorporated into the Employment Agreements are sufficient for purposes of Rule 12(b)(6) to dismiss plaintiffs' claims. There are, however, additional reasons for dismissing the complaint *14 for failure to state a claim.

First, taking the facts alleged in the complaint as true, the plaintiffs do not have standing to pursue their contractual and fiduciary duty claims under the authority of ERISA. In their brief, plaintiffs have pointed to HN5Section 502(a)(1)(B) of ERISA, which provides that "a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of his plan." *29 U.S.C. § 1132(a)(1)(B)*. According to plaintiffs, this provision allows them to assert their contractual rights to recover benefits owed to them under the terms of the alleged ERISA Plan against CCFC. Plaintiffs also argue that they have standing to sue the remaining defendants under HN6Section 502(a)(3)(B), which allows a "participant, beneficiary, or fiduciary" to assert certain claims for equitable relief. n4 *29 U.S.C. § 1132(a)(3)*.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n4 HN7Section 502(a)(3)(B) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan." *29 U.S.C. § 1132(a)(3)*.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*15

However, HN8with limited exceptions, Section 502(a)(1)(B) only gives a beneficiary a right to sue the plan itself for recovery of benefits, which plaintiffs have not done. See *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324-25 (9th Cir. 1985) (interpreting Sections 1132(a)(1)(B) and (d) to require that suits for recovery of benefits be brought only against the plan); see also *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (citing to § 1132(d)(2) and stating that "in

a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."). Plaintiffs have not brought an action against the plan, but against CCFC, an entity that was not a party to the Employment Agreements and is not mentioned in those contracts as an administrator. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n5 Plaintiffs contend that they may sue CCFC because it "created and maintained the plan." However, this allegation is contradicted by the Employment Agreements, with respect to which Superior, not CCFC, is the counter-party.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

*16

Plaintiffs have also attempted to base their claims on Section 502(a) (3) (B). However, as the Supreme Court recently clarified, HN9that provision only provides for "those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 712, 151 L. Ed. 2d 635 (2002)* (quoting *Mertens v. Hewitt Associates, 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993))* (emphasis in original). In Great-West Life, the Court reviewed whether Section 502(a) (3) authorized a beneficiary to enforce a reimbursement provision of an ERISA plan. It held that HN10neither an order of specific performance for payment of money past due (i.e., reimbursement) nor restitution in a form that was not traditionally available in equity (i.e. the imposition of a constructive trust or equitable lien on particular property) could be characterized as equitable relief. The Court stated that "almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiffs are suits for 'money damages,' as that phrase has traditionally *17 been applied . . . ." *122 S. Ct. 708 at 713*.

As was recently recognized by the Honorable Michael B. Mukasey in *Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438 (S.D.N.Y. 2002)*, there is reason to believe Great-West Life repudiated the Second Circuit's reasoning in *Strom v. Goldman Sachs, 202 F.3d 138 (2d Cir. 1999)*, on which plaintiffs rely in their attempt to frame their claims in equitable terms. Strom had held that the recovery of life insurance proceeds a plaintiff would have received but for her late husband's employer's breach of fiduciary duty was a form of "equitable relief" under § 502(a) (3). *Id. at 143-50*. Although that case, like this one, involved a breach of fiduciary duty claim which the court characterized as being "within the exclusive jurisdiction of equity," the reasoning of Great-West Life makes it difficult to conceive of the relief sought by plaintiffs (principally monetary damages) as a form traditionally available in equity.

Aside from the issue of standing, it has already been explained in Part II of this opinion that the breach of contract action fails according to its own terms as interpreted *18 under federal law. Similarly, the unjust enrichment claim must be dismissed on the merits because plaintiffs' rights to deferred compensation and severance benefits were a subject of their employment contracts. As a general rule, "HN11because unjust enrichment is a quasi-contractual remedy, the existence of a valid and enforceable written contract governing a particular subject matter . . . precludes recovery . . . for events arising out of the same subject matter." *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 2000 U.S. Dist. LEXIS 3841, No. 98 Civ. 6907, 2000 WL 335557, at *9 (S.D.N.Y. March 30, 2000)*; see also *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 655 (1987); G & S Custom Homes, Inc. v. Holtz, 179 A.D.2d 1025, 1025-26, 579 N.Y.S.2d 514, 515 (4th Dep't 1992)*. "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998)*. Here, it is undisputed that the Employment Agreements and the attached riders governed *19 the plaintiffs' rights to deferred compensation and severance benefits. Therefore, the unjust enrichment claim must fail.

Although plaintiffs cite *Aramony v. United Way of America, 949 F. Supp. 1080 (S.D.N.Y. 1996)* in support of their argument that an unjust enrichment claim may properly be pleaded as an alternative to a breach of contract claim, that holding resulted from the fact that the defendants had "questioned the existence of an enforceable ERISA plan." *Id. at 1084*. There is no doubt here that the employment contracts existed, and Superior and plaintiffs indisputably were parties to those agreements. Defendants in this case deny any obligations under the contracts, not their existence. The remaining cases cited by plaintiffs involved instances where, unlike here, "there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *Joseph Sternberg, Inc. v. Walber 36th Street Assocs., 187 A.D.2d 225, 228, 594 N.Y.S.2d 144, 146 (1st Dep't 1993)*; see also *Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996)*.

Page 51

Case 3:01-cv-01737-MRK   Document 52-28   Filed 10/16/2003   Page 7 of 7

2002 U.S. Dist. LEXIS 14584; 29 Employee Benefits Cas. (BNA) 1195

Conclusion *20

For the foregoing reasons, the defendants' motion to dismiss is granted. Because each cause of action has been dismissed for the reasons stated, it is not necessary to address the argument by Halleran and Pritzker that the claims against them must be dismissed for lack of personal jurisdiction.

It is so ordered.

New York, NY
August 7, 2002

**ROBERT W. SWEET**

U.S.D.J.