the court *inter alia* dismissed a claim against corporate-defendant administrative committee members for failing to provide correct, adverse information about the actual value of the corporation and failing to act on it and sell the stock in the trust fund to protect the interests of the plan participants. The district court opined that the plaintiffs' standard of care for the corporation's stock was illegal and impractical because it

> would put the Committee in the untenable position of choosing one of the three unacceptable (and in some instances illegal) courses of action; (1) obtain "inside" information and then make stock purchase and retention decisions based on this [*89] "inside" information; (2) make the disclosures of "inside" information itself before acting on the discovered information, overstepping its role and, in any case, likely causing the stock price to drop; or (3) breach its fiduciary duty by not obtaining and acting on "inside" information.

2001 WL 1836286, at *9. In the same vein, in *In re McKesson* the district court concluded, "Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties." 2002 WL 31431588 at *6. The district court opined, moreover, that had there been public disclosure by ERISA Enron fiduciaries in an efficient market, there would have been a swift adjustment in market price and the plan participants would have been unable to sell the stock at artificially high prices so the court dismissed claims against a number of defendants under Rule 12(b) (6). See instruments # 504 and 513 in *Tittle*.

First, the Court notes that the holding in *McKesson*, that ERISA fiduciaries must comply with the prohibition on selective disclosure under the securities laws for the fiduciaries' or their beneficiaries' personal gain, is limited to ESOP plans, [*90] which by their nature are generally excepted from the duty to diversify, and on its face does not apply to 401(k) plans. Second, and more significant, the Court finds that the *McKesson* court's rationale is misguided for the following reasons.

Defendants' argument that despite the duty of loyalty, a fiduciary should make no disclosure to the plan participants, because under the securities laws he cannot selectively disclose nonpublic information, translates in essence into an argument that the fiduciary should both breach his duty under ERISA and, in violation of the securities laws, become part of the alleged fraudulent scheme to conceal Enron's financial condition to the continuing detriment of current and prospective Enron shareholders, which include his plan's participants. This Court does not believe that Congress, ERISA or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to [*91] mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

At the same time, a fiduciary's duty of loyalty should also not be construed to require him to enable and encourage plan participants to violate the law, i.e., to sell their stock at artificially high prices to make a profit or avoid loss *before* disclosure of Enron's financial condition was made public. Nor would selective disclosure of that information by the fiduciary to plan participants protect any lawful financial interests of the plan participants and beneficiaries. Like any other investor, plan participants have no lawful right, before anyone else is informed of Enron's negative financial picture, to profit from fraudulently inflated stock prices or to avoid financial loss by selling early before public disclosure. If the material information [*92] about Enron's precarious financial status had been made public by Enron officials and plan fiduciaries in accordance with their legal obligations and the prices of the stock dropped before the plan participants could make a profit or reduce a substantial loss, the damage to the plan participants would not be the fault of the plan fiduciary but of the underlying alleged fraudulent Ponzi scheme and the corporate officials who participated in it, concealed it, and against whom the plan would have a cause of action. A trustee has no duty to violate the law to serve his beneficiaries. Restatement (Second) Trusts § 166, cmt. a. Nor is an ERISA fiduciary an insurer of the value of plan assets, even where that price is the result of fraud or manipulation; he has, instead, an ongoing obligation to satisfy the prudent man rule, which, if he performs the necessary investigations and provides accurate information in accordance with it, relieves him of personal liability regardless of the financial success or failure of the purchased assets, even if he does not discover the fraud. If he does not meet the requirements of the prudent man standard, then the plan [*93] fiduciary is personally liable to the plan for monetary damages under ERISA. Similarly if Enron directors fail to meet their duties of disclosure but continue to conceal or materially misrepresent Enron's financial

condition, they are subject to liability under the securities laws. Thus under either scenario the plan and/or plan participants and beneficiaries who invest in Enron stock because of material misrepresentations or omissions of corporate officers/fiduciaries have a remedy against those who violate the law and injure them.

"The Department of Labor, the agency responsible for interpreting and enforcing ERISA, flatly rejects the *McKesson* court's position on the interaction between ERISA and the securities laws." Secretary of Labor's Amended *Amicus Curiae* Brief (# 1024 at 7). The Court finds that the Secretary's brief appropriately addresses the issue and suggests practical ways to resolve the alleged tension between ERISA and the federal securities statutes so that both can be followed:

> *Defendants' duty to "disclose or abstain"* under the securities laws does not immunize them from a claim that they failed in their conduct as ERISA fiduciaries. To the contrary, [*94] while their Securities Act and ERISA duties may conflict in some respects, they are congruent in others, and there are certain steps that could have been taken that would have satisfied both duties to the benefit of the plans. First and foremost, nothing in the securities laws would have prohibited them from disclosing the information to other shareholders and the public at large, or from forcing Enron to do so. *See Cady v. Roberts*, 1961 WL 60638, at *3. The duty to disclose the relevant information to the plan participants and beneficiaries, which the Plaintiffs assert these Defendants owed as ERISA fiduciaries, is entirely consistent with the premise of the insider trading rules: that corporate insiders owe a fiduciary duty to disclose material nonpublic information to the shareholders and trading public. *See id.* (incorporating common law rule that insiders should reveal material inside information before trading).
> . . .
>
> Second it would have been consistent with the securities law for the Committee to have eliminated Enron stock as a participant option and as the employer match under the Savings Plan. . . . The securities rules do not require an individual [*95] never to make any decision based on insider information. To the contrary, the insider trading rules require corporate insiders to refrain from buying (or selling) stock if they have material, nonpublic information about the stock. Thus, the "disclose or abstain" securities law rule is entirely consistent with, and indeed contemplates a decision not to purchase a particular stock. See Condus v. Howard Sav. Bank, 781 F. Supp. 1052, 1056 (D.N.J. 1992) (it is perfectly legal to retain stock based on inside information; violation of insider trading requires buying or selling of stock). It would have been entirely consistent with securities laws for the fiduciaries to have eliminated Enron stock as a participant option and the employer match. . . . Finally, another option would have been to alert the appropriate regulatory agencies, such as the SEC and the Department of Labor, to the misstatements.

*Id.*, # 1024 at 26-27. n67

> n67 Plaintiffs in response to Defendants' argument based on the holding of *McKesson*, cite another unpublished opinion, *Vivien v. WorldCom, Inc.*, No. C 02-01329-WHA, 2002 WL 31640557 at *7-8 (N.D. Cal. July 26, 2002). Copy attached to Plaintiffs' Response, # 514. In *Vivien*, another California district court, reviewing a Rule 12(b)(6) motion and *Hull*, noted that the *Hull* judge "did not dismiss the complaint as a matter of law by concluding that the claim there was 'nothing more than an ineffective attempt to recast the securities action as an ERISA action.'" *Id.* at *7. Instead, the judge determined that the corporate defendants (the employer and the CEO) in that suit did not act in a fiduciary capacity with respect to the alleged breach of fiduciary duties owed to the pension plan because these defendants' fiduciary duties were expressly limited by the plan's governing written instrument and did not reach the asserted misconduct. Furthermore he concluded that the challenged duties to provide accurate information were "not based on the duties owed by an ERISA fiduciary to a plan and its participants, but the general duties of disclosure owed by a corporation and its officers to the corporation's shareholders." *Id.* at *8. The judge in *Vivien* distinguished the facts in its case because the plaintiff had alleged that the Plan administrator had the duty and responsibility "as one of its duties in administering the Plans," to distribute to the plan participants and beneficiaries information about the plans. *Id.* More important, the judge in *Vivien* decided, "It is impossible to rule out as a matter of law any and all ERISA recovery at the pleadings stage simply because federal securities law may provide overlapping relief." *Vivien* at 8; # 514 at 7.

Moreover, Plaintiffs in their Memorandum in Opposition, # 315 at 39 n. 18, also argue ways the tension between the two statutes can be resolved without violating either:

> The Complaint alleges that as a matter of fact there were any number of things that Olson could have done consistent with her fiduciary duties, without running afoul of the securities law, to protect the Plans, including but not limited to making or causing Enron to make immediate disclosure of the substance of Watkins' allegations to the market, and (along with other Committee Members) discontinuing further purchases of Enron stock by the Plans. PP678-91, 780. Olson does not dispute that she had, and breached, the duty to disclose what she knew from Watkins and about Fastow's behavior to her fellow-fiduciaries on the Committee. *See, e.g., Glaziers v. Newbridge Securities, Inc.*, 93 F.3d 1171, 1180-82 (3d Cir. 1996) (one fiduciary can be held liable for failing to make disclosure to another fiduciary to permit that second fiduciary to protect the plan and its beneficiaries even where the information to be disclosed is beyond the scope of fiduciary authority of the inappropriately silent fiduciary.) Exactly what she and the Plans' fiduciaries could and should have done, and how much they could and should have saved the Plans is an issue for another day.

[*96]

#### f. Personal Liability of Corporate Employees

Courts are divided about if and under what circumstances the officers or employees of a corporation that is the named fiduciary in plan instruments may be personally liable for a breach of their fiduciary duty. In light of the traditional rule that the employees of a corporation acting within the course and scope of their employment cannot be personally liable for their actions, some courts have held that the individual corporate employee must have a individual discretionary role in the plan administration to be liable as a fiduciary under ERISA. To shield themselves from liability, Defendants rely heavily on *Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir. 1991), holding "that when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of the corporation are not fiduciaries within the meaning of section 3(21)(A)(iii) unless it can be shown that these officers have *individual* discretionary roles as to plan administration." n68 *See also Torre v. Federated Mutual Ins. Co.*, Civ. A. No. 91-425-DES, 1993 WL 545237, *3 (D. Kan. Dec. 3, 1993); *Eyler v. C.I.R.*, T.C. Memo 1995-123 [*97], No. 16247-92, 1995 WL 127907 [page references unavailable] (U.S. Tax Ct. Mar. 23, 1995) (following *Confer*), *aff'd*, 88 F.3d 445 (7th Cir. 1996); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F. Supp. 1447, 1451 (M.D. Ala. 1992).

n68 The *Confer* panel explained,

> Although section 3(21)(A) by itself may give rise to fiduciary status when a designated fiduciary is not chargeable with a particular discretionary role, section 3(21)(A) does not extend the fiduciary status of a corporation to its officers. Where no designation is made or implied, the corporation remains the fiduciary. A Department of Labor bulletin makes clear that the officers of a corporation that sponsors an employee benefit plan are *not* fiduciaries solely by reason of holding office. 29 C.F.R. § 2509.75-8 at D-5 (1991). The bulletin further states that "persons who perform one or more of the functions described in section 3(21)(A) of the Act . . . are fiduciaries." *Id.* at D-2. When a corporation is a "person" who performs the fiduciary functions, however, the officer who controls the corporate action is not *also* the person who performs the fiduciary function. Because a corporation always exercises discretionary authority, control, or responsibility through its employees, section 3(21)(A) must be read to impute to the corporation some decisions by its employees. Otherwise, the fictional "person" of a corporation could never be a fiduciary because a corporation could never meet the statute's requirement of "having discretion." We cannot read section 3(21)(A) in a way that abrogates a use of corporate structure clearly permitted by ERISA.

952 F.2d at 37.

[*98]

Other courts, stressing the functional definition of a fiduciary under ERISA, have held that the individuals within the corporations who actually exercised the fiduciary discretionary control or authority in their official capacity may also be personally liable, depending on the facts of the particular case. *See, e.g., Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459-61 (9th Cir. 1995) (Because fiduciary status under ERISA depends upon an individual's functional role rather than title, as exemplified by Department of Labor interpretations, and because of ERISA's underlying, broadly based liability policy, the Ninth Circuit "reject[s] the Third Circuit's interpretation in *Confer* that an officer who acts on behalf of a named fiduciary corporation cannot be a fiduciary if he acts within his official capacity and if no fiduciary duties are delegated to him individually."), *cert. denied*, 516 U.S. 914 (1995). Such a rule would allow a corporation to "shield its decision-makers from personal liability merely by stating in the plan documents that all their actions are taken on behalf of the company and not in a fiduciary capacity." n69 *Id.* at 1461. [*99] *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000) ("where, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company"), *cert. denied*, 531 U.S. 1074 (2002); *Landry v. Air Line Pilots Ass'n Inter. AFL-CIO*, 901 F.2d 404, 418 (5th Cir. 1990) (Members of the board of directors of an employer that maintains an employee benefit plan will be viewed as fiduciaries for the plan maintained by that employer only "to the extent" that they have the responsibility for functions listed in § 3(21)(A) of ERISA, such as selection and retention of plan fiduciaries, over which they necessarily would exercise "discretionary authority or discretionary control respecting management of such plan."), *cert. denied*, 498 U.S. 895 (1990); *Martin v. Schwab*, No. CIV. A. 91-5059-CVSW-1, 1992 WL 296531, at *5 (W.D. Mo. 1992) ("Defendants' contention they have no individual exposure as fiduciaries [because they were members of the Board of [*100] Directors] is clearly at odds with the language of the statute n70 . . . . Congress 'conferred fiduciary status on persons and entities by activity and not by label.'"); *Kay v. Thrift & Profit Sharing Plan for Employees of Boyertown Casket Co.*, 780 F. Supp. 1447, 1461 (E.D. Pa. 1991) (holding liable the company and the company employees personally involved in a plan decision that was determined to be a breach of fiduciary duty); *Eaton v. D'Amato*, 581 F. Supp. 743, 747 (D.D.C. 1980) (where a corporation's "key officials exercised far more than ministerial powers[,] their status as administrator may well qualify them automatically as fiduciaries"); *Freund v. Marshall Illsley Bank*, 485 F. Supp. 629, 641 (W.D. Wis. 1979) ("While it is indeed contemplated under ERISA that a corporation, as an entity, may be a plan fiduciary, the analysis does not end there. Individuals within the corporation who exercise the type of authority or control described in section 3(21)(A) of ERISA will themselves be fiduciaries with respect to the Plan.").

> n69 The Ninth Circuit also points to 29 U.S.C. § 1110, which states, "Any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void against public policy." 51 F.3d at 1460. Moreover, that provision also permits insurance of fiduciaries for potential liability, but not a shield from liability. *Id.* Therefore, concluded the Ninth Circuit, the argument by a corporate party, which the Court finds functionally meets the definition of a fiduciary, that it relied on a statement in the Plan that its officers were not acting as fiduciaries, but only on behalf of the corporation, is void against public policy because it "purports to relieve the officers from fiduciary responsibility or liability, under § 1110." *Id.*

[*101]

> n70 Section 409(a) of ERISA, 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan.").

This year the Fifth Circuit emphasized that in last year's opinion in *Bannistor v. Ullman*, 287 F.3d 394, 403-06 (5th Cir. 2002) (holding that corporate officers were liable as fiduciaries since they exercised control over plan assets, approved a new health plan, and had check-signing authority for their employer corporation), it had demonstrated that it has adopted the functional approach of the Ninth Circuit in *Kayes* and holds corporate officers personally responsible for the role they played in the management of plan assets, while it clearly rejected *Confer. Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 350 & n. 7 (5th Cir. 2003). One district court in the Fifth Circuit had previously held corporate officials personally liable when acting within the scope of their [*102] employment on behalf of the corporation. *Brock v. Self*, 632 F. Supp. 1509, 1523-24 (W.D. La. 1986)

("While the . . . Company, as an entity, is properly held to be a fiduciary, it cannot shield its officers and employees from liability for their fiduciary breaches under the express terms of ERISA, which provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities imposed upon fiduciaries . . . *shall be personally liable* to make good to such plan any losses to the plan resulting from each such breach . . . [emphasis added by court]."), *quoting* 29 U.S.C. § 1109(a).

In view of the broad language, the functional and flexible definition of "fiduciary," and the expansive liability policy of the statute, as well as the holding in *Musmeci*, this Court agrees with those courts which reject a *per se* rule of nonliability for corporate officers acting on behalf of the corporation and instead make a functional, fact-specific inquiry to assess "the extent of responsibility and control exercised by the individual with respect to the Plan" to determine if a corporate employee, and thus also the [*103] corporation, has exercised sufficient discretionary authority and control to be deemed an ERISA fiduciary and thus personally liable for a fiduciary breach. *Bell v. Executive Committee of United Food and Commercial Workers Pension Plan for Employees*, 191 F. Supp. 2d 10, 15 (D.D.C. 2002); *Musmeci*, 332 F.3d at 350 & n.7.

### g. Professional Liability

Even where a person exercises some control over the plan's operations or assets, if he is providing only traditional professional services to the plan, he is not a "fiduciary" for such services and is not subject to an ERISA suit for breach of fiduciary duties. "An attorney rendering legal and consulting advice to a plan" will not be considered to be a fiduciary unless he exercises authority over the plan "in a manner other than by usual professional functions" and thus cannot be sued for breach of fiduciary duty under ERISA for pursuing a lawyer's traditional services. *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1220 (*quoting Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir. 1988)), *amended and superseded on other grounds*, 208 F.3d 1170 [*104] (9th Cir.), *cert. denied*, 531 U.S. 992 (2000). The same is true for providers of other professional services, including accountants and banks. *Rutledge*, 201 F.3d at 1220; *Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1150 (3d Cir. 1989); *Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990); *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982). The Department of Labor's guidelines for interpreting ERISA's definition of "fiduciary" in 29 U.S.C. 1002(21)(A) note that "attorneys, accountants, actuaries, and consultants will ordinarily not be considered fiduciaries." Interpretive Bulletin 75-5, 29 C.F.R. § 2509.75-5 (1987).

ERISA does not permit a civil action for legal damages against a non-fiduciary charged with knowing participation in a fiduciary breach. *Reich v. Rowe*, 20 F.3d 25, 26, 28 (1st Cir. 1994), *citing Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). As an alternative to fiduciary liability, a nonfiduciary may be liable as a [*105] "party in interest," but only for "appropriate equitable relief," including injunctions and equitable restitution, in civil actions brought by plan participants under 29 U.S.C. § 1132(a)(3). n71 *See also Useden v. Acker*, 947 F.2d 1563, 1581-82 (11th Cir. 1991), *cert. denied sub nom. Useden v. Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel*, 508 U.S. 959 (1993). A "party in interest" of an employee benefit plan is defined in 29 U.S.C. § 1002(14) and includes *inter alia* any fiduciary (administrator, officer, trustee, custodian, etc.), a person that provides services to the plan (such as an accountant, attorney), an employer of any employees covered by the plan and an employee organization including any members covered by the plan. Such nonfiduciaries may be held liable for such "appropriate equitable relief" if they are "parties in interest" and, with actual or constructive knowledge, they participate in a fiduciary's breach of its duties in transactions between the plan and a party in interest that are expressly prohibited under § 406(a) of ERISA, 29 U.S.C. § 1106(a). [*106]

> n71 Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which will be discussed in more detail under the section of this memorandum and order entitled "Standing and Remedies," allows suits by a plan participant, beneficiary or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Section 406(a) bars a plan fiduciary from entering into certain kinds of transactions that he "knows or should know" are transactions with a party in interest to the injury of the participants of the plan. These include purchases of assets, loans and extensions of credit, payments and transfers of assets to the party in interest, and payments for furnishing services. Section 406(b) bars a fiduciary from dealing with plan assets for his own interest. *See, e.g., Donovan v. Cunningham*, 716 F.2d at 1464-65 [*107] ("The object of section 406 was to make illegal per se the types of transactions that experience had shown to entail a high potential for abuse."). *See also Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241, 248 (2000) (unanimous op.); *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 485-86 (6th Cir. 2001); *Whitfield v.*

*Lindemann*, 853 F.2d 1298, 1303 (5th Cir.) (holding attorney liable as a nonfiduciary), *cert. denied sub nom. Klepak v. Dole*, 490 U.S. 1089 (1998). n72 When a plaintiff shows that a fiduciary "caused the plan to engage in an allegedly unlawful transaction" listed in § 406(a)(1), 29 U.S.C. § 1106(a)(1), the fiduciary, in contrast to the participating interested party, may be held personally responsible for monetary damages under § 409(a), 29 U.S.C. § 1109(a), "for any losses incurred by the plan, any ill-gotten profits, and other equitable and remedial relief deemed appropriate by the court." *Lockheed Corp. v. Spink*, 517 U.S. at 888.

>n72 The Ninth Circuit has held that the prohibited transactions under §§ 406(a) and 408(b) include receipt of excessive compensation by a law firm for legal services provided to an ERISA plan. *Concha v. London*, 62 F.3d 1493, 1504 (9th Cir. 1995), *cert. dismissed*, 517 U.S. 1183 (1996); *Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir. 1998). *But see Useden v. Acker*, 947 F.2d at 1578 (rejecting Ninth Circuit's rationale because it permits "anyone performing services for an ERISA plan-be it an attorney, a security guard or a janitor" to be deemed a fiduciary.

[*108]

Although the claim against the party in interest in *Harris Trust* was brought under § 406 for participation in designated prohibited transactions, the Supreme Court's broad language indicated that ERISA § 502(a)(3) authorizes a private cause of action for "appropriate equitable relief" to redress any violations of ERISA's Title I, which would include violations of § 404's fiduciary duties. In its ruling, the high court stated that § 502(a)(3) "admits of no limit on the universe of possible defendants" and "the focus . . . is on redressing the *fact or practice* which violates any provision of [ERISA Title I]." *Harris Trust*, 530 U.S. at 246-47 (contrasting the fact that § 503(a) "makes no mention at all of which parties may be proper defendants" while other provisions "do expressly address who may be a defendant."). Thus it would appear that a party-in-interest's liability under *Harris Trust* applies beyond prohibited transactions with the plan under § 406 to a knowing participation in a fiduciary's breach of fiduciary duties under § 404(a). *See Rudowski v. Sheet Metal Workers Intern. Ass'n, Local Union Number 24*, 113 F. Supp. 2d 1176 (S.D. Ohio 2000) [*109] (holding that a nonfiduciary union may be liable for participating in a fiduciary breach of § 404 in a suit brought under § 502(a)(3)); *L.I. Head Start Child Dev. Serv., Inc. v. Frank*, 165 F. Supp. 2d 367 (E.D.N.Y. 2001) (attorneys alleged to have knowingly participated in a breach of duty could be liable to return legal fees received in that improper transaction). Plaintiffs have alleged that Arthur Andersen, while not a plan fiduciary, was a knowing participant in the fiduciary breaches by other Defendants by actively concealing from the plans' fiduciaries and participants Enron's actual financial condition and the imprudence of investing in its stock. n73 Moreover, they assert that the accounting firm received large fees that included assets belonging to the plan for Arthur Andersen's provision of these services that purportedly constituted a knowing participation in the breach of fiduciary duty. Thus Plaintiffs seek to have the court impose a constructive trust on plan assets or proceeds traceable to such assets, and ultimately conveyance of those assets or profits derived from them to the plan, i.e., equitable restitution.

>n73 Disagreeing with this expansive construction of the potential liability of a party in interest beyond violations of § 406 to reach breaches of fiduciary duty under § 404, the First Circuit, refusing to add to the remedies (including money damages and other forms of liability) expressly provided by ERISA's comprehensive regulatory scheme and acknowledging Congress' decision to balance the competing goals of protecting employees' interests and containing pension costs, explains that
>
>> nonfiduciary participation in a fiduciary breach is most likely to involve . . . service providers and other nonfiduciary professionals who provide advice or expertise to ERISA fiduciaries. The advice and expertise provided by these individuals—whether actuaries, lawyers, accountants, or consultants— is vital for the successful operation of ERISA plans which must function in a highly complex and regulated environment. . . . We do not mean to countenance the action of someone who advises a fiduciary to break the law, but we are concerned that extending the threat of liability over the heads of those who only lend professional services to a plan without exercising any control over, or transacting with, plan assets will deter such individuals from helping fiduciaries navigate the intricate financial and legal thicket of ERISA.
>
> *Reich v. Rowe*, 20 F.3d 25, 26, 32 (1st Cir. 1994) (holding that ERISA does not authorize suits against nonfiduciaries charged solely with partici-

pating in a fiduciary breach). To impose liability on professionals that regularly offer advice to ERISA plans would result in high insurance costs to them and ultimately to the plans. *Id.*

[*110]

Even though generally a lawyer or accountant providing services to a plan is a party in interest and not a fiduciary, it has been recognized that at times a professional consultant or advisor may go beyond his normal, traditional advisory function and, because of his special expertise and influence, in effect exercise the discretionary authority or control over the management or administration of an ERISA plan to the point that he has assumed the fiduciary obligations and has transmuted into a fiduciary as defined under ERISA, 29 U.S.C. § 1102(21)(A). *Mertens*, 508 U.S. at 262 ("professional service providers . . . become liable for damages only when they cross the line from advisor to fiduciary"). *See also Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993), *cert. denied*, 510 U.S. 964 (1993); *Reich v. Lancaster*, 55 F.3d 1034, 1047-49 (5th Cir. 1995); *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) (finding that two partners in an accounting firm who recommended a complex series of transactions, structured deals, provided advice, and had expertise not shared among other corporate [*111] insiders exercised effective control over the plan's assets and were ERISA fiduciaries), *cert. denied*, 506 U.S. 1054 (1993); *Carpenters' Local Union No. 964 Pension Fund v. Silverman*, No. 93 CIV. 8787 (RPP), 1995 WL 378539 (S.D.N.Y. June 26, 1995) (finding a law firm was a fiduciary under ERISA where plan trustees depended on lawyers' expertise for a real estate investment, lawyers played a role in investment decisions, and one partner was a plan trustee) . . To meet the "authority or control" element under 29 U.S.C. § 1002(21)(A)(i), a plaintiff must show that the consultant or advisor did not merely influence the plan fiduciary, but "caused [the] trustee . . . to relinquish his independent discretion in investing the plan's funds and follow the course prescribed" by the consultant. *Schloegel*, 994 F.2d at 271-72, *citing Sommers Drug Stores Co. Employee Profit Sharing Trust*, 793 F.2d at 1460. Alternatively, the rendering of investment advice for a fee on a regular basis pursuant to an agreement or understanding between the consultant and the plan where the agreement indicates that the consultant's [*112] advice will be the primary basis for the plan's investment decisions and the consultant will provide individualized investment advice according to the plan's individual needs may also impose fiduciary liability on a professional consultant. *Schloegel*, 994 F.2d at 273.

There is no *per se* rule regarding the rendering of professional advice and the point at which a professional may become subject to fiduciary liability. *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537-38 (7th Cir. 1991) (the legislative history "seems to . . . contemplate[] . . . a fact intensive inquiry that looks at whether the professional transceneded her 'ordinary functions'"); *Mertens*, 508 U.S. at 262 ("professional service providers . . . become liable for damages only when they cross the line from advisor to fiduciary"). A fact intensive examination of the extent of the discretion and control assumed by the administrator is required. *Pappas*, 923 F.2d at 538; *Reich*, 55 F.3d at 1047. For instance, where pre-existing policies, practices and procedures sufficiently limit an entity that assumes discretionary authority or [*113] control over plan management and/or assets, that entity will not be viewed as a fiduciary. *Reich*, 55 F.3d at 1047. The performance of ministerial duties or mere processing of claims will not impose fiduciary liability; however, if the administrator has the authority to grant, deny or review claims or has the sole authority to determine the benefits to which the insured plan participant is entitled, the administrator may be a fiduciary under ERISA. *Id.* (and cases cited therein); *Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 721-22 ("A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules and procedures established by others is not an ERISA fiduciary. To become a fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan."). The statute "'defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties—and [*114] to damages—under § [1109(a)].'" *Id.* at 1048, *quoting Kayes v. Pacific Lumber Co.*, 51 F.3d at 1459, and § 1002(21)(A). *See also* 29 C.F.R. § 2510.3-21(c). n74 Courts have analyzed the extent of authority and control exercised by attorneys and accountants over plan investment decisions to determine whether they crossed the line and became fiduciaries of the plan. *See, e.g., Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992) (finding that accountants who provided professional accounting services to an ESOP and also recommended transactions, structured deals, and provided investment advice to the point that they exercised effective control over the plan's assets and utilized their positions of trust and confidence as corporate insiders to involve the plan in transactions in which they had a personal interest were fiduciaries of the ESOP), *cert. denied sub nom. Henss v. Martin*, 506 U.S. 1054 (1993); *Useden v. Acker*, 947 F.2d 1563, 1577-78 (11th Cir. 1991) (finding that a law firm providing advice on a number of concerns but not beyond the usual professional function of attorneys [*115] and otherwise controlling the plan did

not become a fiduciary), *cert. denied sub nom. Useden v. Greenberg, Taurig, Hoffman, Lipoff, Rosen & Quentel*, 508 U.S. 959 (1993).

> n74 Section 2510.3-21(c), which defines "fiduciary," states,
>
>> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of [ERISA] and this paragraph, only if
>>
>> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>>
>> (ii) Such person either directly or indirectly (e.g., through or togther with any affiliate) –
>>
>> (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
>>
>> (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.
>>
>> (2) A person who is a fiduciary with respect to a plan by reason of rendering investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or having any authority or responsibility to do so, shall not be deemed to be a fiduciary regarding any assets of the plan with respect to which such person does not have any discretionary authority, discretionary control or discretionary responsibility, does not exercise any authority or control, does not render investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, and does not have any authority or responsibility to render such investment advice . . . .

[*116]

### h. Section 404(c) Plans

Generally ERISA imposes liability for resulting losses on fiduciaries who commit breaches of their duties. 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."). Section 404(c) of ERISA, 29 U.S.C. § 1104(c), however, provides that a plan fiduciary is not liable if (1) the plan is an "individual account plan", (2) the plan participants can exercise control over the assets allocated to their accounts, and (3) the plan participants actually do exercise control over their accounts in a manner proscribed under the regulations. n75 Under § 404(c), the plan participants that exercise such control over their accounts will not be treated as fiduciaries, and neither the plan participants nor the other plan fiduciaries will be liable for any loss or breach that results from the plan participants' exercise of control over the plan administration; in other words, no one is [*117] liable for the participants' loss that results from the participants' own informed investment choices. *See generally In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443-46 (3d Cir. 1996), *cert. denied sub nom. Unisys Corp. v. Meinhardt*, 510 U.S. 810 (1996).

> n75 The Secretary of Labor has interpreted 29 U.S.C. § 1104(c) as inapplicable to ESOPs because it applies only to plans that give the participants a wide range of investments from which to select. 29 C.F.R. § 2550.404c-1.
>
> Many 401(k) plans are established to qualify as § 404(c) plans. Plaintiffs argue that the Savings Plan does not qualify as a § 404(c) plan because

under article XV.3, it imposes a duty to diversify on all Plan fiduciaries unless it would be prudent under the circumstances not to do so. Moreover the regulations require that the fiduciaries provide participants with "complete and accurate information" about investment alternatives, a range of investments, procedures to permit transfers and to deal with conflicts of interest, as well as notice that the plan qualifies under § 404(c), none of which were met according to Plaintiffs. Furthermore, as Plaintiffs point out, the employer's matching contributions went directly into Enron stock, where it remained until the employee reached fifty years of age; the employee never had the requisite independent control over this portion of his plan assets. Under 29 C.F.R. § 2550.404(c)-1(c)(2), a plan participant also lacks independent control where he "is subjected to improper influence by a plan fiduciary or plan sponsor with respect to the transaction or where a "plan fiduciary has concealed material nonpublic facts regarding the investment from the participant or beneficiary . . . ." Plaintiffs have alleged such concealment occurred at Enron.

[*118]

There is little case law regarding § 404(c) plans. The legislative history reveals that 29 U.S.C. § 1104(c) created "a special rule" for plans that permit the participant to have "independent control" over his individual account assets and provides that the participant who exercises that independent control, as well as other plan fiduciaries, is not liable for losses caused by the participant's control. *In re Unisys*, 74 F.3d at 445, *citing* H.R. Conf. Rep. No. 1280, *reprinted in* 1974 U.S.C.C.A.N. at 5085-86. A House Conference Report states,

> Therefore, if the participant instructs the plan trustee to invest the full balance of his account in, *e.g.*, a single stock, the trustee is not liable for any loss because of a failure to diversify or because the investment does not meet the prudent man standards. However, the investment must not contradict the terms of the plan, and if the plan on its face prohibits such investments, the trustee could not follow the instructions and avoid liability.

*Id., quoting* H.R. Conf. Rep. No. 1280, *reprinted in* 1974 U.S.C.C.A.N. at 5086. The legislative history also indicates that [*119] the statute requires the plan to offer "a broad range of investments." *Id.* at 446 & n. 24.

The Department of Labor issued final regulations regarding § 404(c) in 1992. n76 29 C.F.R. § 2550.404c-1.

The Court quotes below portions of the regulations that are relevant to the issues in this class action. It defines a § 404(c) plan as an individual account plan under § 3(34) of ERISA that

> (i) Provides an opportunity for a participant or beneficiary to exercise control over assets in his individual account . . .; and
>
> (ii) Provides a participant or beneficiary an opportunity to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in his account are invested . . . .

29 C.F.R. § 2550.404c-1(b)(1).

> n76 Because the appellate court in *In re Unisys* addressed matters that transpired before these regulations were issued, it did not address them or apply them to the case before it.

[*120]

Regarding the requirement that an opportunity be provided to a participant or beneficiary to exercise control over his account, to qualify as a § 404(c) plan, the regulation provides:

> (A) Under the terms of the plan, the participant or beneficiary has a reasonable opportunity to give investment instructions (in writing or otherwise, with opportunity to obtain written confirmation of such instructions) to an identified plan fiduciary who is obligated to comply with such instructions except as otherwise provided in paragraph (b)(2)(ii)(B) and (d)(2)(ii).
>
> (B) The participant or beneficiary is provided or has the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan, and incidents of ownership appurtenant to such investments. For purposes of the subparagraph, a participant or beneficiary will not be considered to have sufficient investment information unless--
>
> (1) The participant or beneficiary is provided by an identified plan fiduciary (or a person or persons designated by the plan fiduciary to act on his behalf):

> (i) An explanation that the plan is intended to constitute a plan [*121] described in section 404(c) of [ERISA], and title 29 of the Code of Federal Regulations Section 2550.440c-1, and the fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participant or beneficiary;
>
> (ii) A description of the investment alternatives available under the plan and, with respect to each designated investment alternative, a general description of the investment objectives and risk and return characteristics of each such alternative, including information relating to the type and diversification of assets comprising the portfolio of the designed investment alternative.

29 C.F.R. § 2550.404c-1(b)(2)(i)(A) - (B)(ii).

The regulation allows a plan to "impose reasonable restrictions on the frequency with which participants and beneficiaries may give investment instructions." 29 C.F.R. 2550.404(c)-1(b)(i)(C). To be "reasonable," the plan must, with respect to each investment alternative, allow participants and beneficiaries to provide "investment instructions with a frequency [*122] which is appropriate in light of the market volatility to which the investment alternative may reasonably be expected to be subject." *Id.* Participants and beneficiaries must be permitted to give investment instructions at minimum at least once in any three-month period and to give transfer instructions as often as they are allowed to give investment instructions. *Id.*

The Department of Labor's regulation also prescribes the following guidelines for a "Broad range of investment alternatives":

> (i) A plan offers a broad range of investment alternatives only if the available investment alternatives are sufficient to provide the participant or beneficiary with a reasonable opportunity to:
>
> (A) Materially affect the potential return on amounts in his individual account with respect to which he is permitted to exercise control and the degree of risk to which such amounts are subject;
>
> (B) Choose from at least three investment alternatives:
>
> (1) Each of which is diversified;
>
> (2) Each of which has materially different risk and return characteristics;
>
> (3) Which in the aggregate enable the participant or beneficiary by choosing among them to achieve a portfolio [*123] with aggregate risk and return characteristics at any point within the range normally appropriate for the participant or beneficiary; and
>
> (4) Each of which when combined with investments in the other alternatives tends to minimize through diversification the overall risk of large losses, taking into account the nature of the plan and the size of participants' or beneficiaries' accounts. In determining whether a plan provides the participant or beneficiary with a reasonable opportunity to diversify his investments, the nature of the investment alternatives offered by the plan and the size of the portion of the individual's account over which he is permitted to exercise control must be considered.

29 C.F.R. § 2550.404c-1(b)(3).

The regulation also addresses "exercise of control." 29 C.F.R. § 2550.404c-1(c). *Inter alia* it states,

> Whether a participant or beneficiary has exercised independent control in fact with respect to a transaction depends on the facts and the circumstances of the case. However, a participant's or beneficiary's exercise of control is not independent in fact if:
>
> (i) The participant [*124] or beneficiary is subjected to improper influence by a plan fiduciary or the plan sponsor with respect to the transaction;
>
> (ii) A plan fiduciary has concealed material non-public facts regarding the investment from the participant or beneficiary, unless the disclosure of such information by the plan fiduciary to the participant or beneficiary would violate any provision of federal law or any provision of state law which is not preempted by the Act . . . .

29 C.F.R. § 2550.404c-1(c)(2)(i)-(ii). Plaintiffs here con-

tend that the plan fiduciary concealed material non-public facts about Enron's financial condition from them so that under the regulation they did not, in fact, exercise independent control in making investment decisions for their individual accounts. As discussed *supra*, Defendants respond that to have provided such information only to the Savings Plan participants would have violated the federal securities laws. This Court has disagreed with Defendants and adopted the view of the Secretary of Labor.

In addition, "[a] fiduciary has no obligation . . . to provide investment advice to a participant or beneficiary under an ERISA [*125] section 404(c) plan." 29 C.F. R. § 2550.404c-1(c)(4).

Finally 29 C.F. R. § 2550.404c-1(d), in relevant part, explains

> (d) Effect of independent exercise of control-
>
> (1) Participant or beneficiary not a fiduciary. If a participant or beneficiary of an ERISA section 404(c) plan exercises independent control over assets in his individual account in the manner described in paragraph (c), then no other person who is a fiduciary with respect to such plan shall be liable for any loss . . . .
>
> (2) Limitation on liability of plan fiduciaries.
>
> (i) If a participant or beneficiary of an ERISA section 404(c) plan exercises independent control over assets in his individual account in the manner described in paragraph (c), then no other person who is a fiduciary with respect to such plan shall be liable for any loss, or with respect to any breach of part 4 of Title I of the Act, that is the direct and necessary result of that participant's or beneficiary's exercise of control.
>
> (ii) Paragraph (d)(2)(i) does not apply with respect to any instruction, which if implemented-
>
> (A) Would not be in accordance with [*126] the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of Title I of ERISA.
> . . . .
> (D) Could result in a loss in excess of a participant's or beneficiary's account balance; or
>
> (E) Would result in a direct or indirect:
> . . . .
> (4) Acquisition or sale of any employer security except to the extent that:
>
> (iii) Such securities are publicly traded on a national exchange or other generally recognized market;
>
> (iv) Such securities are traded with sufficient frequency and in sufficient volume to assure that participant and beneficiary directions to buy or sell the security may be acted on promptly and efficiently;
>
> (v) Information provided to shareholders of such securities is provided to participants and beneficiaries with accounts holding such securities. . . .

29 C.F.R. § 2550.404(c)-1(d).

Because § 404(c) in essence exempts a fiduciary from liability that he normally would have under 29 U.S.C. § 1109(a), the fiduciary seeking protection under § 404(c), and not the plaintiff, has the burden of demonstrating that it applies. *In re Unisys*, 74 F.3d at 446; [*127] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002) (as amended on denial of rehearing). The court must review evidence relating to whether a participant could remove his assets from one fund and place them in an acceptable alternative fund, whether the plan provided the participants with adequate information for an average participant to understand and evaluate his investments and the risks and financial consequences that might be associated with his taking control, information about the rights provided to participants and obligations imposed on fiduciaries by ERISA, the financial condition and performance of the investments, the alternative funds available, and developments which substantially affected that financial status. *Unisys*, 74 F.3d at 446-47.

If a plan does not qualify as a § 404(c), the fiduciaries retain liability for all investment decisions made, including decisions by the Plan participants. Plaintiffs contend that the Savings Plan did not qualify as a § 404(c) plan for all or most of the Class Period because it did not provide a broad range of diversified investment options, liberal opportunities to transfer assets among [*128] allocations, and sufficient information to make sound investment decisions, nor did the plan provide the requisite notice to participants that it intended to qualify as such a plan. The Court has found that they have raised material fact issues as to whether the Savings Plan did qualify as a § 404(c) plan that cannot be resolved on a 12(b)(6) motion.

If the plan does qualify as a § 404(c) plan, and if the participants or beneficiaries exercised independent control over the assets in their individual accounts, "then no other person who is a fiduciary with respect to such plan shall be liable for any loss . . . that is the direct and necessary result of that participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(4)(d)(2). Losses that do not "result from" the participant's exercise of control are still charged against the plan fiduciary, which retains the duty to prudently select investment options under the plan and to oversee their performance on a continuing basis. *See* Advisory Opinion No. 98-04(A) (". . . The Department emphasized that the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary [*129] function to which the limitation on liability provided by section 404(c) is not applicable"); Letter from the Pension and Welfare Benefits Administration, U.S. Dept. of Labor to Douglas O. Kant, 1997 WL 1824017, *2 (Nov. 26, 1997) ("The responsible plan fiduciaries are also subject to ERISA's general fiduciary standards in initially choosing or continuing to designate investment alternatives offered by a 404(c) plan.").

Even if the Savings Plan were to qualify as a § 404(c) plan, relating to the Savings Plan and the ESOP in the Department of Labor's Final Regulation Regarding Participant Directed Individual Account Plans, Preamble, 57 Fed. Reg. 46,906, 924 n.27 (1992), the agency emphasized,

> The act of designating investment alternatives . . . is a fiduciary function . . . [and] all of the fiduciary provisions of ERISA remain **applicable to both the initial designation of investment alternatives and investment managers and the ongoing determination that such alternatives and managers remain suitable and prudent investment alternatives for the plan** [emphasis added].

*See also Buccino v. Continental Assurance Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) [*130] ("as Fund fiduciaries [Defendants] were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments"); *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 955-56 (D.C. Cir. 1985) ("The requirement of prudence in investment decisions and the requirement that all acquisitions be solely in the interests of plan participants continue to apply. The investment decisions of a profit sharing plan's fiduciary are subject to the closest scrutiny under the prudent person rule, in spite of the 'strong policy and preference in favor of investment in employer stock.'"); *Eaves v. Penn*, 587 F.2d 453, 458-60 (10th Cir. 1978) (holding that the trustee of an ESOP is subject to the duty of loyalty and the prudent man requirements in deciding whether to invest plan assets in employer's securities).

### i. Causation

Defendants contend that Plaintiffs have failed to plead facts showing that the alleged breaches of fiduciary duty caused the loss to the plans. There is division of opinion about who bears the burden of proving the fiduciary caused the alleged losses to a plan.

The Sixth and Second Circuits have placed the burden of [*131] demonstrating causation on the plaintiff. *Kuper v. Iovenko*, 66 F.3d 1447, 1459-60 (6th Cir. 1995) (To satisfy the causation link between a breach of fiduciary duty and an alleged plan loss, "a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."); *Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 105-06 (2d Cir.) (placing the burden of proof of causation on the plaintiff), *cert. denied*, 525 U.S. 876 (1998).

The Fifth and Eighth Circuits have held that the plaintiff initially must prove a breach of fiduciary duty and a prima facie case of loss by the plan under § 1109(a), and then the burden shifts to the defendant fiduciary to prove that the loss was not caused by the breach of the fiduciary duty. n77 *McDonald*, 60 F.3d at 237; *Martin v. Feilin*, 965 F.2d 660, 671 (8th Cir. 1992), *cert. denied sub nom. Henss v. Martin*, 506 U.S. 1054 (1993). n78 *In accord, Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 564, 571 (D. Md. 2003); *McCurdy v. Wedgewood Capital Management Co.*, No. CIV. A. 97-4304, 1999 WL 391494, [*132] *4 (E.D. Pa. May 28, 1999); *Chao v. Moore*, No. CIV. A. AW-99-1283, 2001 WL 743204, *7-8 (D. Md. June 15, 2001). This Court is bound by *McDonald*. Thus Plaintiffs need not plead causation. *See Ehlmann v. Kaiser Foundation Health Plan of Texas*, 20 F. Supp. 2d 1008, 1011 (N.D. Tex. 1998) (plaintiff not required to plead causation under *McDonald*), *aff'd*, 198 F.3d 552 (5th Cir. 2000), *cert. dismissed*, 530 U.S. 1291 (2000). Moreover, because at this point Plaintiffs have pleaded under Counts II and III both fiduciary breach and injury, i.e., that Defendants' participation in the lockdowns and failure to diversify caused the plans, and indirectly the plaintiffs, to lose hundreds of millions of dollars, Plaintiffs have stated a claim and demonstrated standing to sue, even though they have not alleged that "but for the lockdown" or "but for the failure of the fiduciaries to diversify investments of the Plan," they, themselves, would have timely diversified their investments or sold the Enron stock in their individual accounts.

n77 To prevail on a cause of action for breach of fiduciary duty, a plaintiff is only required to "prove a breach of fiduciary duty and a prima facie case of loss to the plan. 'Once the plaintiff has satisfied these burdens, 'the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of duty.'"" *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (*citing and quoting Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994), *cert. denied*, 516 U.S. 1174 (1996)).

[*133]

n78 In his concurrence to *Silverman*, Judge Jacobs pointed out that under the common law of trusts, the defaulting fiduciary has the burden of disproving causation. 138 F.3d at 106, *citing inter alia Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 170, 278 (2d Cir. 1992). Nevertheless, as discussed previously, because the common law of trusts informs but has often been modified when interpreting ERISA, the Second Circuit construed key provisions relating to co-fiduciary responsibilities to place the burden on the plaintiff, rather than on the fiduciary defendant, to prove that his losses resulted from the defendant's inaction or fraud. *Silverman*, 138 F.3d at 104, addressing 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . .") and § 1105 ("[A] fiduciary with respect to the plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.").

[*134]

2. Co-Fiduciary Liability

A person must be a fiduciary before he can be liable as a co-fiduciary. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc. ("Sommers II")*, 883 F.2d 345, 352 (5th Cir. 1989) (Because a person is a fiduciary only to the extent that he exercises authority or control over that management of a plan or plan assets, in the absence of such authority and control a person cannot be liable as a co-fiduciary).

Under section 405(a) of ERISA, 29 U.S.C. § 1105(a), In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or undertakes knowingly to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 404(a)(1) [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities, which give rise to his status as fiduciary, he has enabled such [*135] other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. n79

A fiduciary that breaches § 1105(a) is "personally liable to make good to such plan any losses to the plan resulting from each such breach . . ." under § 1109(a) of the statute.

n79 Where there was more than one trustee, the common law of trusts imposed a duty on each to use reasonable care to prevent his co-trustee(s) from committing a breach of duty. If he failed to take reasonable steps to prevent a breach of duty, the trustee would be liable for the co-trustee's breach of duty. Restatement (Second) of Trusts § 224(2)(d) (1959).

Sections 405(a)(1) and (3) require a showing of actual knowledge of the other fiduciary's breach; there is no vicarious liability under these provisions. *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984); [*136] *Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002). *But see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 283 (2d Cir. 1992) (constructive knowledge sufficient). n80

n80 *Diduck* has been abrogated on other grounds by recent Supreme Court decisions discussed elsewhere in this memorandum and order: *Mertens*, 508 U.S. at 255; *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 375-76 (2002); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209

(2002).

The elements of a claim brought under § 405(a)(1), 29 U.S.C. § 1105(a)(1), are "(1) that a co-fiduciary breached a duty to the plan, (2) that the fiduciary knowingly participated in the breach or undertook to conceal it, and (3) damages resulting from the breach." *Silverman v. Mutual Ben. Life Ins. Co.*, 941 F. Supp. 1327, 1335 (E.D.N.Y. 1996), [*137] aff'd, 138 F.3d 98 (2d Cir. 1998), cert. denied, 525 U.S. 876 (1998). As noted, under Fifth Circuit law, the plaintiff does not have the burden of pleading or proving the third element, which falls instead on the defendant fiduciary. *McDonald*, 60 F.3d at 237.

Under § 405(a)(2), 29 U.S.C. § 1105(a)(2), providing the broadest type of co-fiduciary liability without any requirement of knowledge about what the co-fiduciary is doing, to impose liability a plaintiff must prove that the fiduciary "failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." *Silverman*, 941 F. Supp. at 1336. *In accord, Free v. Briody*, 732 F.2d 1331, 1335 (7th Cir. 1984); *Brock v. Self*, 632 F. Supp. 1509, 1524 (W.D. La. 1986).

For a cause of action under § 405(a)(3), 29 U.S.C. § 1105(a)(3), the elements are that the fiduciary had knowledge of the co-fiduciary's breach and that the losses "resulted from" the co-fiduciary defendant's failure to take reasonable steps to remedy the breach. *Id.* at 1337. Under Department [*138] of Labor Interpretive Bulletin, 29 C.F.R. § 2509.75-5FR-10, a fiduciary must take all legal and reasonable steps to prevent or remedy a breach by a co-fiduciary, including taking legal action against the co-fiduciary or informing the Department or the plan sponsor.

### 3. Directed Trustee Liability

There is a factual dispute in *Tittle* as to whether Northern Trust was a "directed" or discretionary trustee. Plaintiffs argue that it was the latter. The complaint alleges that Northern Trust was the trustee of the Savings Plan and exercised discretionary authority and control over plan assets when it imposed the lockdown, in spite of the fact that it had the power to postpone the lockdown until the price of Enron stock stabilized to avoid injury to the participants, and that numerous red flags should have alerted Northern Trust to the dangers of proceeding with the scheduled lockdown. Furthermore, the complaint asserts, plan documents and the trust agreement n81 gave Northern Trust discretionary authority and control over plan assets and plan administration where there was no direction by the Administrative Committee.

   n81 Plaintiffs argue that the Savings Plan and ESOP plan documents identify Northern Trust as both the plans' trustee and as a "named fiduciary" of the plans responsible for investment of the plans' assets. # 322, Ex. B (Savings Plan Document), § XIV.1(a) ("The Trustee shall be the 'named fiduciary' with respect to the investment of the Trust Fund's assets"); *id.*, § XV.3 (detailing the duties of "the Committee and the Trustee as 'named fiduciaries'" of the Savings Plan); Ex. C (ESOP Plan Document) § 16.1 ("The Trustee shall be the 'named fiduciary' with respect to investment of the Trust Fund's assets"); *id.*, § 17.3 (detailing the duties of "the Committee and the Trustee as 'named fiduciaries'" of the ESOP).

Furthermore, under parallel provisions in both plans, "if the Committee, as a co-fiduciary, shall exercise its power given hereunder at any time, and from time to time, by written notice to the Trustee, to direct the Trustee in the management, investment and reinvestment of the Trust Fund, then in such event the Trustee shall be subject to all proper directions of the Committee that are made in accordance with the terms of the Plan and the Act. Ex. B, § XV.2; Ex. C, § 17.2. Plaintiffs maintain that Northern Trust has no evidence that the Committee directed Northern Trust by any written notice with respect to either the timing or the length of the lockdown under Count II or diversification under Count III. Such factual disputes are not properly resolved on a 12(b) (6) motion, but must await discovery.

[*139]

### CONCUR:

Alternatively, the complaint asserts that if Northern Trust was a directed trustee and if the Administrative Committee gave written instructions to Northern Trust regarding the lockdown, Northern Trust breached its fiduciary duties in following the lockdown instructions because the directions were contrary to ERISA and Northern Trust knew or should have known that the lockdown instructions violated ERISA.

Northern Trust contends that it was a "directed" trustee, as opposed to a "discretionary" trustee, under provisions in the plan documents and trust agreement that subjected it to direction by the Administrative Committee, that the Administrative Committee exercised total authority and discretion over the plan assets and management, and that Northern Trust thus had no responsibility or liability for the lockdown.

While case law addressing the duties of a directed trustee is minimal, it is also in conflict with respect to the

extent, if any, of the duty and potential liability of a directed trustee. The issue necessitates consideration of the relationship of several different provisions under ERISA.

As a starting point, under § 403(a) (1), 29 U.S.C. § 1103 [*140] (a) (1),

> All assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a) or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that-
>
> (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustee shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [ERISA].

In other words, in contrast to the general rule, pursuant to which trustees hold the assets of every employee benefit plan in trust and have exclusive authority and discretion to manage and control the assets of the plans, an exception n82 may arise when the plan authorizes a named fiduciary (a fiduciary either named in the plan document or designated by an employer or an employee organization according to [*141] a procedure described in the plan), who is not a trustee, to direct the trustee, who in turn then becomes a "directed" trustee.

> n82 Two other exceptions to the trustee's otherwise exclusive authority and discretion to manage the plan assets are permitted by the statute: the plan may delegate the trustee's authority to manage the plan assets to investment manager(s), an exception not at issue here; or a qualifying § 404(c) plan may establish individual participant accounts and give the participants control over the assets in their accounts and may subject the trustee to direction of a named fiduciary who is not a trustee. 29 U.S.C. § 1103(a) (2), § 1104(c). Thus employers have the option of four different ways to structure control of their plans (exclusive control in the trustee; appointment of investment manager; qualifying § 404(c) plan; and directed trustee).

Under § 403(a) (1) of the statute, the directed trustee will escape liability for his actions performed pursuant to the named [*142] fiduciary's direction if the named fiduciary's directions are "proper" and "in accordance with the terms of the plan" and "not contrary to" ERISA. The underlying issue here can be rephrased as to what extent, if at all, is the directed trustee a fiduciary, as defined in § 3(21) (A), and thus subject to the standards, duties, and obligations of an ERISA fiduciary under § 404(a) (1) (the duty of loyalty, the prudent man rule, the duty of diversification of plan investments, and the duty of acting in accordance with the provisions of the statute)?

Difficulties in construing the scope of the directed trustee's fiduciary obligations pursuant to the statute are compounded by (1) the lack of a statutory definition of "proper" with respect to the named fiduciary's directions and (2) a lack of guidance about the nature and extent of a directed trustee's duty to determine whether the fiduciary's directions are "in accordance with the terms of the plan" and "not contrary to" ERISA under § 403(a) (1). For example, if the instruction on its face looks consistent with the plan and the statute, does a directed trustee have any duty to investigate further? What if the directed trustee knows or [*143] suspects that the directing fiduciary has breached his fiduciary duties?

Implicated by the directed fiduciary provision is § 409(a), which makes a fiduciary personally liable "to make good to such plan any losses to the plan resulting from such breach . . . ." Thus if the directed trustee is a fiduciary, the plan may hold him personally liable for losses caused by any breach of his fiduciary duty. If he is not a fiduciary, a plan may not seek a remedy against him for any misconduct under § 409 and § 404. Moreover, § 502(a) does not provide an individual civil action for relief against a non-fiduciary, so plan participants may be without a remedy for a directed trustee's allegedly wrongful conduct.

Furthermore a directed trustee's potential fiduciary liability also implicates claims under § 405, 29 U.S.C. § 1105, a plan fiduciary's liability for breach of duty by a co-fiduciary, discussed *supra*. Section 405(b) (1) (A) provides that where assets are held by two or more trustees, "each shall use reasonable care to prevent a co-trustee from committing a breach." 29 U.S.C. § 1105(b) (1) (A). This provision incorporates the common [*144] law of trusts. Restatement (Second) of Trusts § 184 (1959); 2A Austin Wakeman Scott & William F. Fratcher, *Scott on Trusts* § 184 at p. 561 (4th ed. 1987).

Section 405(b)(1) of ERISA, 29 U.S.C. § 1105(b)(1), begins, "except as otherwise provided in . . . section 1103(a)(1) and (2)"; and § 405(b)(3)(B) states, "No trustee shall be liable under this subsection for following instruc-