tions referred to in section 1103(a)(1)." At the same time, § 405(b)(2) states, "Nothing in this subsection shall limit any liability that a fiduciary may have under subsection (a) or other provision of this part." "This part" clearly refers to § 405(b), which includes the requirement that the "directing" named fiduciary's instructions must be "proper" and in compliance with the terms of the plan and the statute. Section 405 has been criticized as "nearly impenetrable in its awkward structure and phrasing," while subsection 405(b)(3)(B) in particular has been characterized as "oddly placed," inexplicable by the rule of statutory construction, and confusing because of phrases that appear to exempt the directed fiduciary from liability for following [*145] the instructions of a directing named fiduciary, yet a contrary provision that clearly does not. Patricia Wick Hatamyar, *See no Evil? The Role of the Directed Trustee under ERISA*, 64 Tenn. L. Rev. 1, 19-21 (1996). n83 As noted by Ms. Hatamyar, "To say that a trustee is not liable for following [an instruction that is "proper" and "made in accordance with" the plan and ERISA,] is to beg the question of when an instruction is improper enough for the trustee to ignore": in other words, if § 405(b)(3) ("No trustee shall be liable under this subsection for following instructions referred to in section 403(a)(1)") "refers generally to the directed trustee's liability for following a named fiduciary's direction, it is redundant." *Id.* at 21.

> n83 The Court has found Ms. Hatamyar's article to be the most extensive and authoritative source regarding construction of statutory provisions in ERISA relating to the directed trustee. The article is cited as persuasive authority by most of the few courts addressing the directed trustee issue.

[*146]

In contrast, Ms. Hatamyar observes that in the other two statutory exceptions to a trustee's exclusive authority, i.e., when authority is granted to an investment manager under § 405 or to a plan participant over his own individual account under § 404(c), the statute is quite explicit about the resulting limitations on the directed trustee's liability. *Id.* at 17-18. With a properly appointed investment manager, under § 405(d)(1) the trustee has no liability for breaches of duty occurring under the investment manager's management and control unless the trustee knowingly participates in or conceals a breach of duty by that investment manager as a co-fiduciary under § 405(a). See § 405(d)(1) of ERISA, 29 U.S.C. § 1105(d)(1) ("If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then not withstanding subsections (a)(2) and (3) and subsection (b) of this section, no trustees shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager."). [*147] Similarly, when the plan participant is given control of his individual account, under § 404(c)(1) the participant does not become a "fiduciary" by exercising that control and thus the directed trustee cannot be liable as a co-fiduciary under § 405. Had Congress intended that the directed trustee be completely relieved of liability for following a named fiduciary's instructions, it could just as easily have stated so. 64 Tenn. L. Rev. at 21 ("If a trustee were free from liability for following a named fiduciary's directions, one would expect to see that stated unambiguously in section 405.").

This Court agrees with Ms. Hatamyar that in light of the common law history, Congress did not intend to release the directed trustee from all liability where the directed trustee follows the directions of a named fiduciary, and that if it had, it would have expressly stated so. 64 Tenn. L. Rev. at 21. After attempting to follow the rules of statutory construction to give meaning to each provision, Ms. Hatamyar concluded that § 405(b)(3)(B) does not provide a safe harbor from liability for the directed trustee, but is a nullity. *Id.* at 20.

Construction [*148] of the statute does require first a determination whether the directed trustee is a fiduciary. If so, and if the directed trustee follows "proper" directions of the named fiduciary with respect to that part of the plan management or control granted to the named fiduciary, and if those directions are "in accordance with the terms of the plan" and "not contrary to" ERISA under § 403(a)(1), the directed trustee is not liable for a co-fiduciary's [the named fiduciary's] breaches. Regardless, the same issue must initially be addressed under both § 403(a)(1) and § 405(b)(1)—the extent of a directed trustee's duty to determine whether the instructions are "proper" and consistent with the terms of the plan and of ERISA.

Defendants rely on the fact that a single sentence in the legislative history of § 403(a)(1) states that the trustee is only required to determine whether the directed action *facially* complies with the terms of the plan and of ERISA, a fairly minimal duty:

> If the plan provides that the trustees are subject to the direction of named fiduciaries, then the trustees are not to have the exclusive management and control over the plan assets, but generally are [*149] to follow the directions of the named fiduciary. Therefore, if the plan sponsor wants an investment committee to direct plan investments, he may provide for such an arrangement in the plan. In addition, since investment decisions are basic to plan

> operations, members of such an investment committee are to be named fiduciaries. . . . If the plan so provides, the trustee who is directed by an investment committee is to follow that committee's directions **unless it is clear on their face** **that the actions to be taken under those directions would be prohibited by the fiduciary responsibility rules of the bill or would be contrary to the terms of the plan or trust** [emphasis added].

H.R. Conf. Rep. No. 93-1280 (1973), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5079. Furthermore Defendants argue that the legislative history implies that if the directed trustee meets the facial compliance requirement, his responsibility is less than that of a fiduciary and that he may be free of any liability:

> if the trustee properly follows the instructions of the named fiduciaries, the trustee generally is not to be liable for losses which arise out of following these instructions. [*150] (The named fiduciaries, however, would be subject to the usual fiduciary responsibilities rules and would be subject to liability on breach of these rules.)

*Id.* at 5082.

The American Bankers Association ("the Association"), the principal national trade association of the banking industry in the United States, whose members serve as trustees of numerous ERISA pension plans, has submitted an *amicus curiae* brief (# 464), arguing, based on the single sentence, quoted above, in the minimal legislative history available relating to § 403(a)(1), that the directed trustee's duty is merely to examine the named fiduciary's directions to determine whether it is "clear on their face" that following these directions would violate ERISA or the plan or trust document. According to the Association, the directed trustee is not required to examine the merits of the named fiduciary's direction. n84 The Association maintains that the banking and trust industry has relied on this facial compliance standard since ERISA was enacted in 1974. The Association insists that the directed trustee is not subject to a fiduciary's duty to act prudently and loyally nor required to exercise independent [*151] judgment nor subject to the Department of Labor's broader and more demanding standard that a directed trustee should not follow the named fiduciary's directions if he "knows or should know" that the directions violate ERISA's fiduciary duties of prudence. The Association further claims the Department of Labor's standard is not supported by its cited authority. n85

> n84 In a reply brief (# 520) the Association, believing that Plaintiffs have mischaracterized its position, emphasizes that it assumes that a directed trustee is a fiduciary, but with severely restricted duties, as will be discussed. In essence the Association finds that a directed trustee is subject to co-fiduciary liability under § 405(a) of ERISA. # 464 at 18-19.

> n85 The Secretary of Labor relies upon *Koch v. Dwyer*, No. 98 CIV. 5519 (RPP), 1999 WL 528181 (S.D.N.Y. July 22, 1999), *clarified on other grounds*, 2000 WL 174945 (S.D.N.Y. Feb. 15, 2000), and *Scott On Trusts* § 185. The Court will discuss both subsequently.

[*152]

For a number of reasons, including the rules of statutory construction, the common law roots of the directed trustee concept, the Department of Labor's interpretation, as well as some of the case law, all of which are discussed in detail in the remainder of this section, this Court is not persuaded by the Association's argument for a minimum standard that would shield its members from liability.

The first step in construing a statute is to decide whether the language in question has a plain and unambiguous meaning by examining the plain language, the specific context in which the language is used, and the broader context of the complete statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). "Plain" language does not always mean that it is always "indisputable" or "pellucid." *Aviall Services, Inc. v. Cooper Industries, Inc.*, 312 F.3d 677, 679 (5th Cir. 2002), *petition for cert. filed*, 71 USLW 3552 (Feb. 12, 2001) (No. 02-1192). Thus, as the proper way to interpret a provision, one should examine the contested passage in connection with other sections and the law as a whole, as well as the statute's purpose and policies, [*153] with the aim of reaching the most reasonable and harmonious result. *Id.* at 680-81 and n.3.

"Legislative history should be consulted gingerly, if at all, in aid of statutory construction." *Aviall Services*, 312 F.3d at 684. Use of legislative history is only appropriate where the language is "opaque," "translucent," or ambiguous. *Id.* at 680 n.3, *citing Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 440 (5th Cir. 2000), *cert. denied*, 532 U.S. 971 (2001). Even when reference to the legislative history is appropriate, there is disagreement about the reliability and persuasiveness of such evidence. *See, e.g., Shannon v. U.S.*, 512 U.S. 573,

583 (1994), *citing County of Washington v. Gunther*, 452 U.S. 161, 182 (1981) (Rehnquist, J., dissenting) ("It is well settled that the legislative history of a statute is a useful guide to the intent of Congress."), and *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 617 (1991) (Scalia, J., concurring) (Legislative history is "unreliable . . . as a genuine indicator of congressional intent.").

In interpreting [*154] § 403(a)(1), as a threshold matter the Court notes that nowhere in that provision relating to the directed trustee, nor in the statute as a whole, is the phrase "clear on their face" or any paraphrase of that facial compliance standard to be found. The Supreme Court has stated, "We are not aware of any case in which we have given an authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute." *Shannon v. U.S.*, 512 U.S. 573, 583 (1994). Moreover, in terms of the statute as a whole, the Fifth Circuit has long held that given its remedial purposes, ERISA is "to be construed liberally to safeguard the interests of fund participants and beneficiaries, and to preserve the integrity of fund assets." *Landry v. Air Line Pilots Ass'n Intern., AFL-CIO*, 901 F.2d 404, 417 and n.38 (5th Cir.) (and cases cited therein), *cert. denied*, 498 U.S. 895 (1990). *Inter alia*, fiduciary status in particular under the statute is broadly construed in accordance with ERISA's policies and objectives. *John Hancock Mutual Life Ins. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 (1993) ("To [*155] help fulfill ERISA's broadly protective purposes, Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive."); *see also Mertens*, 508 U.S. at 262 (ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, . . . thus expanding the universe of persons subject to fiduciary duties—and damages–under § 409(a).").

With respect to the language of § 403(a)(1), the Court agrees that the phrase, "proper directions," is ambiguous because there is no definition of "proper" other than an implied relationship to the remainder of the provision requiring, also in vague language, compliance with the plan and with the statute, similarly undefined; indeed the meaning of the terms and the scope of the trustee's duty under the whole provision are uncertain. n86

> n86 This Court cannot help but note that the legislative history sentence's "clear on their face" standard is vague and ambiguous, too, with no delineated guidelines defining what effort must be made to determine compliance.

[*156]

The underlying issue in construing § 403(a)(1) is the same question discussed *supra*, whether the directed trustee is a fiduciary to any degree, and therefore subject to the fiduciary duties embodied in § 404(a) of the statute. Of significance in this determination, "the underlying purposes of ERISA" have been described by the Supreme Court as "enforcement of strict fiduciary standards of care in the administration of all aspects of pensions plans and promotion of the best interests of participants and beneficiaries." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 158 (1985) (Brennan, J., joined by Justices White, Marshall and Balckmun, concurring). Furthermore, "in enacting ERISA Congress made *more* exacting the requirements of the common law of trusts relating to employee trust funds." *Id.* at 158 n.17, *quoting Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984). ERISA's expansive definition of fiduciary, its enhancement of the fiduciary's duty incorporated from trust law, and the statute's purpose and policy of heightened protection of plan assets and [*157] plan participants and beneficiaries, together, support the Court's conclusion that § 403(a) should be read to maintain some, rather than virtually eliminate, fiduciary obligations of a directed trustee to question and investigate where he has some reason to know the directions he has been given may conflict with the plan and/or the statute.

As an example of ERISA's emphasis on fiduciary protection of plan participants and beneficiaries, increased over that provided by common law beyond the statute's expansion of the definition of "fiduciary," "thus expanding the universe of persons subject to fiduciary duties—and damages—under § 409(a)," n87 section 410(a) of ERISA, 29 U.S.C. § 1110(a), seeks to bar a fiduciary's evasion of its responsibilities: "Any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility, obligation, or duty under this part shall be void as against public policy." Unlike the single sentence in the legislative history for § 403(a), which states the "clear on their face" standard notably absent from the statutory provision, the legislative history of § 410 reflects the same purpose as the statutory [*158] provision: "Exculpatory provisions which relieve a fiduciary from liability shall be void as against public policy." H.R. Rep. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5101.

> n87 *John Hancock*, 510 U.S. at 96.

Moreover, the Association dismisses the origins of the directed trustee's liability in the common law of trusts by quoting the Supreme Court's statements, such as "trust law does not tell the entire story," but "often will inform

but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties," or trust law may "offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements." *Varity Corp.*, 516 at 497. Yet the Association fails to make such an analysis or to demonstrate that the statute was an intentional modification of the common law regarding a directed trustee, but instead [*159] basically ignores the question. Other than complaining about the burden that a "knew or should know" standard would impose on a directed trustee, the Association fails to identify reasons to carve out an exception here to the established concept that "rather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Varity Corp.*, 516 U.S. at 496; *Central States*, 472 U.S. at 570 (same); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("ERISA's legislative history confirms the Act's fiduciary responsibility provisions . . . 'codify and make applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.").

Moreover, the Association brushes off the Secretary's reliance on *Scott on Trusts* § 185 at 562-68, without a close reading, even though it corresponds to the Restatement (Second) of Trusts § 185 and deals expressly with the common-law roots of the statute's directed-trustee/directing-named-fiduciary [*160] relationship, although the common law uses different terminology than ERISA to describe that relationship. Apparently concluding that § 185 of the Restatement (Second) of Trusts is irrelevant to ERISA, the Association emphasizes that rather than dealing with what the statute terms a "named fiduciary," § 185 refers generally to a person holding a "power of control" over the trust and permits that person to be a "co-trustee, beneficiary, settlor or person otherwise unconnected with the trust" which would be subject to different rules for determining their level of responsibility, depending on which type of person is the holder of power. Comment a to Restatement (Second) of Trusts § 185 (1959).

Section 185, entitled "Duty With Respect to Person Holding Power of Control," provides,

> If under the terms of the trust a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power, unless the attempted exercise of the power violates the terms of the trust or is a violation of a fiduciary duty to which such person is [*161] subject in the exercise of the power.

Restatement (Second) of Trusts § 185 (1959). The Court acknowledges that the Restatement (Second) of Trusts § 185 is far more inclusive than § 403(a) (1); it covers situations where persons, including fiduciaries and nonfiduciaries, are given power by the trust to direct the trustee, as well as situations where the holder of the power is acting for his own benefit or as a fiduciary for the benefit of a beneficiary.

Nevertheless Comment e to the Restatement (Second) § 185 specifically addresses the situation where a *fiduciary* is empowered by the trust document to direct a trustee and provides a guide to the directed trustee's obligations under common law that also informs and is codified in § 403(a) (1), as well as reveals the seeds for the "knew or should know" standard now advocated by the Secretary of Labor. Comment e to § 185 also reflects that a directed trustee's obligations derive from those at common law of co-trustees, who, if they have reason to suspect that a co-trustee was breaching his duty, must take reasonable steps to prevent a breach:

> [*162] *Duty of trustee where holder of power is subject to fiduciary obligations.* If the power is for the benefit of someone other than the holder of the power, the holder of the power is subject to a fiduciary duty in the exercise of the power. In such a case the trustee is under a duty similar to his duty with respect to the action of a co-trustee. See § 184. If the trustee has **reason to suspect** that the holder of a power is attempting to exercise it in violation of a fiduciary duty to which the holder is subject in the exercise of the power, the trustee *is under a duty not to comply* and may be liable if he does comply. If the holder of the power insists upon compliance notwithstanding the objection of the trustee, it is the duty of the trustee to apply to the court for instructions.
>
> Even though the person holding the power holds it as a fiduciary and in fact violates his duty as fiduciary in the exercise of the power, the trustee is **not liable** for acting in accordance with the exercise of the power **if he has no notice** that the holder of the power is violating his duty as fiduciary [emphasis added] . . . . [emphasis added]

The Restatement (Second) of Trusts § 184 [*163] further stakes out a trustee's duty with respect to a co-trustee,

while § 224 n88 sets out the rule for one trustee's liability for a breach of trust by a co-trustee; these three section (§§ 185, 184 and 224), with their quoted comments, are the basis from which ERISA's co-fiduciary liability under § 405 is derived. Section 184 states, "If there are several trustees, each trustee is under a duty to the beneficiary to participate in the administration of the trust and to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust." *Id.* Comment a to § 184 states in relevant part, "if a trustee has **reason to suspect** that a co-trustee is committing or attempting to commit a breach of trust, he must take reasonable steps to prevent him from doing so [emphasis added]."

> n88 Section 224 provides,
>
>> (1) Except as stated in Subsection (2), a trustee is not liable to the beneficiary for a breach of trust committed by a co-trustee.
>>
>> (2) A trustee is liable to the beneficiary, if he
>> (a) participates in a breach of trust committed by his co-trustee; or
>> (b) improperly delegates the administration of the trust to his co-trustee; or
>> (c) approves or acquiesces in or conceals a breach of trust committed by his co-trustee; or
>> (d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust;
>> (e) neglects to take proper steps to compel his co-trustee to redress a breach of trust.

[*164]

Moreover the ERISA statute, itself, and the underlying common law of trusts also suggest a continuing responsibility on the part of the directed trustee. According to § 403(a) of ERISA, 29 U.S.C. § 1103(a), "all assets of an employee benefit plan shall be held in trust by one or more trustees." Furthermore, the trustee "shall have *exclusive* authority and discretion to manage and control the assets of the plan, *except to the extent that* . . . the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary *who is not a trustee* [emphasis added]." *Id.* The employment of a trust structure necessarily invests a trustee with common-law fiduciary duties. Restatement (Second) of Trusts § 2, comment h (stating that "a trust involves three elements, namely, (1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary."). At common law, a [*165] trust is defined as "a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person . . . ." Restatement (Second) of Trusts § 2 (1959). According to comment f to § 2, a trustee holds a legal interest in trust property, while the beneficiary has an equitable interest. Under § 3(3) of the Restatement (Second) of Trusts, a "trustee" is "the person holding property in trust." Thus if trust law is applied, as Congress indicated it should be where not inconsistent with ERISA's purpose and language, as long as the trust remains in existence, the trustee retains a legal interest in, and thus some ultimate authority, over the plan's assets, which would qualify a trustee to meet the definition of a "fiduciary" under § 3(21)(A)(i) ("exercises any authority or control respecting management or disposition of [plan] *assets* [emphasis added]," which, as noted in *FirsTier*, does not require the trustee to have discretion.

Under the terminology employed in ERISA, when instructed by a named fiduciary, [*166] a "trustee" remains designated a "trustee," though his role is qualified by the adjective "directed." Moreover, under the statute, the named fiduciary ("who is not a trustee" according to the requirements of the statute) who directs the trustee does *not* then become a "directing trustee" nor does the named fiduciary replace the trustee. The statutory language appears to this Court to support a continuance of fiduciary responsibility, though modified, in the trustee, who retains a legal interest in the trust and some authority over the plan assets, the *res* in the trust. According to the statute, the named fiduciary must instruct the directed trustee to perform what actions the named fiduciary wants done, thus interposing the trustee (and any control he has) between the named fiduciary and the act. The trustee's function as the holder of the legal interest in the property of the trust also precludes direct action on the trust's *res* by the named fiduciary. Furthermore the express imposition by the statute of a duty, though its scope is uncertain, on the directed trustee to determine whether the instructions given to him by the directing named fiduciary were "proper," "made [*167] in accordance with the plan," and "not contrary to ERISA," also implies that the trustee retains certain supervising and investigative duties and that the directed trustee is still bound by the terms of the plan documents and of ERISA and cannot escape its fiduciary

or statutory obligations to the plan participants and beneficiaries. As has been noted by many, the statute fails to define "proper." The directed trustee's undefined duty to supervise and question would be determined at minimum by what was prudent under the particular circumstances at the time and, as under the common law, be heightened where the directed trustee knew or should have known of the named fiduciary's breach of its duties or of potential conflicts of an act or omission with ERISA or the plan, which threatens the interests of the plan participants and beneficiaries. Nevertheless the nature and scope of that higher standard remain unclear. This Court will accordingly apply a fact-specific approach to determining that duty here. In this context, in an ESOP there should be some duty on the part of a directed trustee to keep apprized of the company's financial condition to the extent that trustee can determine whether [*168] its stock is an appropriate, i.e., prudent, investment.

Thus in light of § 403(a)(1)'s vague language and Congress' failure to exclude expressly the directed trustee's heightened common law duty where he has notice, or knows or should know, of a breach by the directing named fiduciary, it appears to this Court that Congress deliberately chose not to hold a directed trustee jointly liable for a directing named fiduciary's breach of duty under § 405(a)(1) and (3) of ERISA except where the directed trustee has notice (knows or should know) of a directing fiduciary's breach of its fiduciary duties. Such a choice makes good business sense to keep the costs of administering such plans down and encouraging employers to establish them, but maintaining key protection for the plan participant or beneficiary where the directing trustee's failure to protect is more egregious. See IIA *Scott on Trusts* § 185 at 574-75 ("Where the holder of the power [to direct the trustee] holds it as a fiduciary, the trustee is not justified in complying with his directions if the trustee knows or ought to know that the holder of the power is violating his duty to the beneficiaries as fiduciary in [*169] giving the instructions"; moreover the directed trustee "is ordinarily under a duty to make a reasonable inquiry and investigation in order to determine whether the [directing fiduciary] is violating his duty."). Furthermore, under § 405(a)(2), where the directed trustee himself breaches his duty by "failing to comply with its duties under ERISA" (at minimum to insure that the directions comply with the plan and the statute) and "thereby enabled a co-fiduciary to commit a breach," the directed trustee's knowledge of that co-fiduciary's resulting breach is not a necessary element for imposition of liability.

In contrast, the American Bankers Association's proposed facial compliance standard, based on a single line in the legislative history that finds no reflection in the statute, would impose only a minimal duty on the trustee and place the plan participants and beneficiaries and the assets in their pension plans at much greater risk. The Association also argues that a knowledge standard is not needed under § 403(a)(1) because "a directed trustee is subject to co-fiduciary liability under § 405(a), imposing liability on a fiduciary "that has knowledge of a breach by such other [*170] fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." The Court has indicated previously that the Fifth Circuit requires a more restrictive, actual knowledge standard for claims under § 405. *Donovan v. Cunningham*, 716 F.2d at 1475 (co-fiduciary must actually know that the other person is a fiduciary, that the other person participated in an act that constituted a breach of his fiduciary duties, and that the co-fiduciary knows that the act was a breach of fiduciary duty). Therefore § 405(a) alone, contrary to the Association's arguments, would not adequately protect plan participants and beneficiaries.

Moreover, the Association's argument that the banking and trust industry has relied on the "clear on its face" standard since ERISA was enacted in 1974 is undermined by the judicial decisions that have ruled otherwise, as will be discussed. Plaintiffs furthermore cite a number of advisory opinion letters written by the Department of Labor since ERISA was enacted in response to requests from banks serving as directed trustees that reflect the Department's long-standing assumptions that these banks are fiduciaries with a duty of [*171] inquiry. # 501 at 16. They also point to Ms. Hatamyar's statement in *See No Evil*, 63 Tenn. L. Rev. at 31 & n.203 (*citing* Committee on Fiduciary Responsibility (Employee Benefits Group), Directed Trusts under ERISA, 12 Real Prop. Prob. & Tr. J. 535, 546-48 (1977)): "Early industry commentators were quick to point out that section 403(a)(1) gave directed trustees no comfort in mechanically following a named fiduciary's directions." Ms. Hatamyar also discusses the Department of Labor's advisory opinions. *Id.* at 32-335 & nn.210-230.

These opinion letters issued by the Department of Labor have some weight with respect to defining the obligations of directed trustees. The Supreme Court has held that when an agency, authorized by statute to interpret and enforce that statute, construes the statute that it administers, a court must defer to that interpretation if Congress has not spoken directly on the matter and if the agency's interpretation "is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). In *Chevron, U.S.A.*, the Supreme Court further [*172] held that a court must defer to a regulation issued after formal adjudication or notice-and-comment rulemaking pursuant to the Administrative Procedure Act by an agency, if the agency's interpretation of an ambigu-

ous statute contains a reasonable (but not necessarily the most reasonable) interpretation of an ambiguous statute. *Id.* at 842-44. *See also United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("We hold that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law and that the agency interpretation claiming deference was promulgated in the exercise of that authority."). Where an agency offers an interpretation that is not the result of formal procedures such as adjudication or notice-and-comment rulemaking, however, as in opinion letters, policy statements, agency manuals, *amicus curiae* briefs, and enforcement guidelines, that interpretation lacks the force of law and does not warrant Chevron-style deference. *Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000) [*173] (and cases cited therein). Instead the agency's interpretations are "entitled to respect," "but only to the extent that those interpretations have 'the power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Christensen*, 529 U.S. at 587. Indeed such interpretations merit some deference because of the "specialized experience and broader investigations and information," as well as the importance of uniformity in the agency's administrative and judicial understanding of what a federal law requires available to the agency. *Skidmore*, 323 U.S. at 139-40. In sum,

> The weight [given to an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 140. *See also Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (5th Cir.) (["Opinion letters by the Department of Labor do not *per se* bind the court. . . . Such materials, however, do 'constitute a body of [*174] experienced and informed judgment' and the court will give these materials 'substantial weight.' [citations omitted]"), *cert. denied*, 534 U.S. 825 (2001).

The few advisory or opinion letters from representatives of the Department of Labor which, while not on point because they deal with the issue in different contexts than that involving Northern Trust, in dicta suggest that the Secretary and/or the Pension and Welfare Benefits Administration views a directed trustee as having some further duty under the § 403(a)(1) exception than merely determining that an instruction from the directing named fiduciary is facially in compliance with the terms of the plan and ERISA. While the letters merely state an opinion without indicating the underlying reasoning, and thus lack the force of law and do not carry great weight, they appear to reflect the determination of the agency with expertise in the application of the statute that the directed trustee has obligations requiring more that a superficial determination that the fiduciary's instructions are in compliance with the plan and the statute.

For example in an advisory opinion letter from the Secretary of Labor's Director [*175] of Regulations and Interpretations, Robert J. Doyle, to attorney John B. Brescher, Jr., Opinion No. 92-23A, 1992 WL 314117 (E.R.I.S.A.), *3 (Oct. 27, 1992), dealing with the applicability of section 406 (prohibited transaction provisions) to a bank acting as a directed trustee, the Director stated,

> It should be pointed out, however, that under section 403(a)(1) of ERISA, a trustee that is subject to proper directions from the plan's named fiduciary remains responsible for determining whether following a given direction would result in a violation of ERISA. The directed trustee also has responsibility to exercise discretion where the directed trustee has reason to believe that the named fiduciary's directions are not made in accordance with the terms of the plan or are contrary to ERISA. Furthermore, as with other fiduciary duties, the trustee must ascertain whether existing or potential conflicts of interest may interfere with the proper exercise of this responsibility. Whether, in light of all the facts and circumstances, a trustee is subject to a conflict-of-interest or has reason to believe that a particular direction is contrary to ERISA are inherently factual [*176] questions as to which the Department generally will not opine.

The phrase, "reason to believe," which was implied in the common law's notice standard, informs the standard urged by the Secretary, i.e., "knows or should know." n89

> n89 On the other hand, the Department has issued some advisory opinions regarding situations where the plan participants have been granted the authority to manage and control their individual account assets that appear to contradict the express language of § 404(c)(1) stating that the plan participant does not become a "fiduciary" by exercising control over the assets in his individual account, and therefore the trustee cannot be liable as a co-fiduciary under § 405. As Patricia Wick Hatamyar has commented,

Thanks to the DOL, participant control under ERISA is at present a rather murky area of law. Through changing interpretations and new regulations, the DOL has fogged up one of ERISA's clearer provisions. Section 404(c), which allows participant control of individual accounts, used to be interpreted on its face as a straightforward exculpation of the trustee for losses directly resulting from a participant's exercise of control over the assets in her individual account. The legislative history and the DOL itself (in an early advisory opinion) confirmed this interpretation. . . . Since at least 1984, the DOL's position has been that a participant acts as a limited "named fiduciary" under section 403(a) (1), at least with respect to stock allocated to her individual accounts. Accordingly the DOL now asserts that the trustee which is directed by participants in voting or tendering shares must determine "whether following participant directions would result in a violation of" ERISA's fiduciary obligations.

More generally, in 1992, following the authorization of section 404(c), the DOL finally promulgated regulations [29 C.F.R. § 2550.404c-1(b) (2) (i)], to clarify when "a plan provides a participant or beneficiary an opportunity to exercise control over assets in his account." Those regulations cut back considerably on section 404(c) (2) by setting forth numerous detailed conditions that must be met before the trustee may enjoy relief from liability for following the participant's instructions.

Despite this added layer of complexity, the upshot of the DOL regulations is the same as the statute's. If the regulations' requirements are met, the trustee is not liable for any loss resulting from the participant's exercise of control.

64 Tenn. L. Rev. at 18-19 [footnotes omitted]. Ms. Hatamyar has decided, "Although the DOL's regulations arguably go beyond the statutory language of ERISA § 404(c), I will assume the regulations' validity in the remainder of the article." This Court does the same for purposes of reviewing the motions to dismiss.

Examples of the Department of Labor's obfuscation of the statute's originally clear release of a directed trustee from liability through its advisory letters are the following two pronouncements. In an opinion issued on August 19, 1994, by the Department of Labor, 1994 ERISA LEXIS 51, *9-10, in the context of a tender offer, when the plan grants a plan participant authority to direct trustees with regard to stock allocated to the participant's own account and the participant is thus considered to be a named fiduciary for the limited purpose of giving such instructions,

> under section 403(a) (1) of ERISA, the trustee may follow such direction subject to the direction being both proper and made in accordance with the plan terms, as well as not being contrary to the provisions of ERISA. However, even with regard to directions involving stock that has been allocated to an individual participant's account, the Department has taken the position that the trustee(s) remain(s) responsible for determining whether a violation of ERISA would occur if the participant's directions were followed.

More specific about the nature of that directed trustee's duty is the "Labor Department Guidance on Pass-Through Voting Provisions In Collectively Bargained Employee Stock Ownership Plans," 22 Pen. & Ben. Rep. (BNA) 2249, 2250-51 (Sept. 28, 1995). In it the Department dealt with a directed trustee's role where an ESOP plan granted plan participants the authority to direct the trustee regarding the tendering of stock or proxy voting of stock allocated to their own accounts, thus rendering the participants fiduciaries for the limited purpose of giving such directions. The letter states that the trustee can satisfy § 403(a) (1) and assure itself that a participant's instructions are proper and not contrary to ERISA and the plan if it follows procedures to insure that the eligible individual account plan's provisions are fairly implemented, that the directing participant has not been subject to coercion or undue pressure in its decision, that necessary information was provided to the participant, and that clearly false information or misleading information is not distributed to the participant, or

that any false or misleading information that may have been distributed by other parties is corrected. *Id.* at 2250. Furthermore, the fact that the named fiduciary-participant issues such a direction with respect to a tender offer or proxy vote related to stock in its individual account "does not diminish the trustee's duty to diligently investigate and evaluate the merits of the course of action required by the plan document to determine that the instructions are consistent with titles I and IV [of ERISA].

[*177]

The Department of Labor's regulations, on the other hand, do warrant deference. Rather than quote the entire text of 29 C.F.R. § 2550.404c-1(b)(2), which places a long list of specific requirements that must be met before a plan participant or beneficiary can be deemed to "exercise control over assets in his account," and thus "not be deemed a fiduciary by reason of his exercise of control" or expose the directed trustee to liability, the Court briefly generalizes the key category of restrictions: a broadly diversified range of investment options to reduce risk, sufficient information about the plan and about the investments for its participants and beneficiaries to make informed investment decisions, and a structure to allow participants to give directions regarding their securities investments with sufficient frequency "in light of the market volatility to which the investment alternative may reasonably be expected to be subject." 29 C.F.R. 2550.404(c)-1(b)(i)(C).

The case law on the issue of a directed trustee's obligations, although far from in agreement, also generally appears to place at least some burdens on the [*178] directed trustee beyond merely facial compliance with the terms of the plan and of ERISA suggested by the legislative history text. In the few published opinions available, courts have started from different assumptions and focused on different issues. Some, without considering the question, have assumed that a directed trustee, acting at the direction of a fiduciary authorized by the plan to exercise control over plan management or assets, is still a fiduciary, but is liable only where he knows of a breach of fiduciary obligations by the named fiduciaries under § 404, n90 while other courts analyze the issue of fiduciary duty based on the functional statutory definition, § 3(21)(A), 29 U.S.C. § 1002(21)(A), on the language of the plan and the trust agreement, and on the facts in the particular case. n91 In both kinds of cases, what the directed trustee knew or should have known plays a significant role in deciding what duties and liability would be imposed on the directed trustee.

n90 *See, e.g., Ershick v. United Missouri Bank of Kansas City, N.A.*, 948 F.2d 660 (10th Cir. 1991) (holding that trustee of an ESOP, acting at the specific direction of the plan administrator to purchase additional company stock despite its diminishing value, actions permitted by the plan documents and consistent with ERISA, was held to be not liable to plan participants for breach of fiduciary duty absent evidence that the trustee used its position for its personal benefit to the detriment of the participants); *Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) (concluding that the directed trustee did not breach his fiduciary duties because he lacked actual knowledge that the ESOP committee, which had directed him to abstain from voting, had conflicts of interest and had not performed a proper investigation of their options in voting unallocated shares of stock in the plan and thus breached its fiduciary duties).

[*179]

n91 *See, e.g., Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264 (8th Cir. 1994), *cert. denied*, 514 U.S. 1111 (1995).

The Eighth Circuit has issued several, somewhat inconsistent opinions that have been influential in the few subsequent cases addressing the issue of the directed trustee's responsibility and liability. It has moved from a liberal to a very narrow construction of directed trustee liability.

In *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir.), *cert. denied sub nom. Vercoe v. FirsTier Bank, N.A.*, 513 U.S. 871 (1994), the Eighth Circuit focused on the language (especially the use of the word, "discretionary") and the grammatical structure of § 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i): "a person is a fiduciary . . . to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such *plan* or exercises any authority or control respecting management or disposition of [plan] *assets* [emphasis added]." It distinguished [*180] the first half of the provision dealing with authority and control over management of the plan from the second portion concerning authority or control over the plan assets: "this [first] section imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management*, but imposes those duties *whenever one deals with plan assets*. This distinction is not accidental—it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another." *Id.* at 911. *In accord IT Corp. v. Gen. American Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997), *cert. denied*, 522 U.S. 1068 (1998); *Board of*

*Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assoc., Inc.*, 237 F.3d 270, 274-75 (3d Cir. 2001).

In *FirsTier*, the trustee was authorized by a profit-sharing plan "to hold, manage, invest, and account for all Plan assets." *Id.* In *FirsTier*, the named fiduciary, who was the plan sponsor, directed the trustee to make loans to plan participants from the plan assets. After the company went bankrupt, [*181] plan participants sued the directed trustee for breach of fiduciary duty. On appeal, the appellate court held that § 1103(a), dealing with directed trustees, "no doubt modifies, . . . but does not eliminate, the trustee's fiduciary duty when handling assets. When the direction comes from another fiduciary, . . . the law of trusts does not excuse a compliant trustee from all fiduciary responsibility . . . ." 16 F.3d at 911. The panel quoted IIA *Scott on Trusts* § 185 at p. 574 (4th ed. 1987) for a rule that the Eighth Circuit determined was adopted by Congress in ERISA:

> "Where the holder of the power [to direct the trustee] holds it as a fiduciary, the trustee is not justified in complying with his directions if the trustee knows or ought to know that the holder of the power is violating his duties to the beneficiaries as fiduciary in giving the directions.

16 F.3d at 911. From the same section of the treatise, the panel found support for imposing a duty to inquire even where the directed trustee does not know that the directing fiduciary is breaching his fiduciary duties:

> The trustee is not necessarily justified in complying [*182] with the directions of the holder of the power merely because he does not actually know that the latter is violating his duty as fiduciary . . . . [The trustee] is ordinarily under a duty to make a reasonable inquiry and investigation in order to determine whether the holder of the power is violating his duty.

16 F.3d at 912, *citing id.* at 575. The panel concluded that the directed trustee must make a reasonable inquiry and investigation to determine if the named fiduciary's order was "proper" and was "made in accordance with the terms of the plan and . . . not contrary to [ERISA]." *Id.* at 912. In sum the Eighth Circuit held, "An ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties to conform to the prudent man standard of care, *see* 29 U.S.C. § 1104(a); to attempt to remedy known breaches of duty by other fiduciaries, *see* 29 U.S.C. § 1105(a); and to avoid prohibited transactions, *see* 29 U.S.C. § 1106." *Id.* at 911. n92

> n92 In *FirsTier*, the trustee made the loans not only at the direction of the fiduciary, but also at the request of the plan participants. The appellate court held, "When acting at the direction of the ultimate beneficiary of a trust, the trustee's fiduciary duty is satisfied if it simply complies with a direction that does not violate the terms of the trust." *Id.* at 912.

[*183]

Nevertheless, in *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264 (8th Cir. 1994), *cert. denied*, 514 U.S. 1111 (1995), in dealing with a directed trustee of an ESOP, the appellate court reached a different result and attempted to distinguish the situation from that in *FirsTier*.

This Court briefly summarizes the facts in *Maniace*. Over a ten-year period, Juvenile Shoe Company's ("JSC's") sales, profits and net worth diminished and the business fell apart, ultimately ending in bankruptcy, with the ESOP's JSC stock becoming worthless. During the company's gradual demise, Commerce Bank annually reviewed JSC's financial statements, but did not become involved in its business difficulties until JSC suffered a large loss in 1988. Commerce Bank then met with JSC officials and voiced its concerns. When the problems were not resolved, Commerce resigned as trustee. Shortly thereafter, JSC filed for bankruptcy. Plan participants then sued Commerce for breach of fiduciary obligations to prudently manage and protect plan assets, on the grounds that Commerce had held onto substantial amounts of JSC stock despite the fact that Commerce knew of the [*184] company's declining value. They also alleged that Commerce knew of, but failed to remedy, breaches of fiduciary duties by the Administrative Committee since Commerce did not involve itself in trying to remedy the company financial difficulties and management disputes.

In *Maniace* the named fiduciary, i.e., the Administrative Committee, was the plan administrator of the ESOP, which, by its nature, may invest only in the employer's (JSC's) stock. Commerce Bank was designated as its trustee in the trust agreement and granted general responsibilities, powers and authority, which allowed it "to invest in savings accounts, certificates of deposit, JSC stock, real estate, securities of companies other than JSC, bonds or mortgages." 40 F.3d at 265. Nevertheless, according to paragraph 5 of the Trust, which became critical to the decision, "*The Trustee's duties and responsibilities with respect to the purchase sale, retention, distribution*

*or other action with respect to Company stock ... shall be limited to effecting the direction of the [Administrative] Committee, discretionary, fiduciary responsibility with respect to such matters being hereby allocated to the Committee.* [*185] "*Id.* at 266. In contrast, the *Maniace* panel noted, in *FirsTier* the trustee was given the authority to "hold, invest, and account for *all* plan assets." *Id.* at 268. n93 The *Maniace* panel ignored *FirsTier's* distinction between the first half of 29 U.S.C. § 1002(21)(A) concerning a fiduciary's discretionary authority and control over management of the plan and the second portion concerning a fiduciary's authority or control over the *assets*, which did not require a grant of discretionary authority for the imposition of fiduciary duties on the trustee. 16 F.3d at 911. The *Maniace* panel focused on the language of the plan and concluded that the directed trustee Commerce "had no discretion nor control with respect to JSC stock, the central asset in the ESOP at issue" and thus "did not fit within the ERISA definition of a fiduciary," but was governed wholly by § 1103(a). 40 F.3d at 267-68. Furthermore, presumably because the plan at issue in *Maniace* was an ESOP, the *Maniace* panel stated that the directed trustee "was not required to weigh the merits of an investment in [the [*186] company's] stock against all other investment options every time it was directed to purchase said stock." 40 F.3d at 268. The panel further found that based on the summary judgment record, the plan participants had failed to establish that Commerce's conduct at the Committee's direction was not in accordance with the terms of the plan or was contrary to provisions of ERISA. *Id.* The panel did recognize that, depending upon the grant of control under the plan, a directed trustee may have some duty beyond merely following directions, but a substantially diminished one, that might subject it to the modified prudent man standard of care imposed on the directed trustee in FirsTier. Nevertheless, the *Maniace* panel distinguished the situation before it from that in *FirsTier* on the grounds that in *FirsTier* the trustee was invested with *general* control to hold manage, invest and account for *all* plan assets; in contrast, in *Maniace* Commerce was given a more limited grant of control with no discretion with respect to JSC stock. *Id.* The *Maniace* panel concluded that "imposing any 'residual' duties on Commerce would, in effect, abrogate the distinction [*187] between trustees and directed trustees clearly intended by ERISA." *Id.*

> n93 Plaintiffs in *Tittle* have alleged that Northern Trust, like the trustee in *FirsTier*, is charged with the authority to "hold, care for and protect the assets" of the Savings Plan and the ESOP.

With respect to the JSC plan participants' second claim for co-fiduciary liability on the grounds that Commerce had breached its duty when it knew of but failed to remedy breaches of fiduciary duty by the Administrative Committee, the panel determined that it also involved action or inaction with respect to the JSC stock, for which Commerce had no fiduciary responsibility. The panel cited as the standard,

> Upon delegation of fiduciary duties, the fiduciary is not thereafter liable for the acts or omissions of the person carrying out fiduciary responsibility, except to the extent it participates knowingly in the breach, or fails to act reasonably in discharging it[s] own responsibilities and thereby enables the other fiduciary [*188] to commit the breach, or it has knowledge of a breach by such other fiduciary and makes no reasonable efforts under the circumstances to remedy the breach.

*Id.* at 268, *quoting Presley v. Blue Cross-Blue Shield of Alabama*, 744 F. Supp. 1051, 1058 (N.D. Ala. 1990) (*citing* 29 U.S.C. § 1105(a), (c)). The panel found that Plaintiffs/Appellants had not shown that Commerce participated in any breaches of fiduciary duty with the Committee nor that it knew of any breaches and failed to remedy them. *Id.*

In *Herman v. NationsBank Trust Co. (Georgia)*, 126 F.3d 1354, 1361, 1371 (8th Cir. 1997), *cert. denied*, 525 U.S. 816 (1998), the Eighth Circuit noted the divergent holdings of *FirsTier* and *Maniace* and made no attempt to reconcile or explain them; nevertheless the *Herman* panel followed *Maniace*, which it construed as holding that "insofar as a trustee acts at the direction of a named fiduciary in accordance with the terms of the plan and ERISA's requirements, he is not subject to the fiduciary requirement in § 1104(a) to act prudently," although the panel did require the [*189] directed trustee "to make sure the directing fiduciary's instructions 'were proper, in accordance with the terms of the plan, and not contrary to ERISA.'" *Id.* at 1361, 1371. The panel in *Trust*, using a relative, as opposed to an absolute, adjective, opined that when a plan falls within one of the three exceptions to exclusive trustee authority under § 1103(a) (provides an investment manager with the authority to control plan assets, gives plan participants control over their individual accounts, or makes the trustee subject to the direction of a named fiduciary that is not a trustee), "the responsibilities of the trustee are correspondingly *lessened* [emphasis added]"; yet in regard to each exception the panel concluded in absolute language that the trustee was "not liable" for the losses caused by the controlling person.

*Id.* at 1361. *See also Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998) ("First American is a *directed* trustee and is not a fiduciary to the extent it does not control the 'management or disposition" of the ESOP stock it holds in trust. . . . For these reasons we find that the District Court correctly [*190] determined that Plaintiffs' claim that the Bank breached a fiduciary duty to investigate was without merit."). *But see FirsTier*, 16 F.3d at 911 ("An ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties to conform to the prudent man standard of care, *see* 29 U.S.C. § 1104(a), to attempt to remedy known breaches of duty by other fiduciaries, *see* 29 U.S.C. § 1105(a) n94, and to avoid prohibited transactions, *see* 29 U.S.C. § 1106."); *Koch v. Dwyer*, No. 98 CIV. 5519 (RPP), 1999 WL 528181 (S.D.N.Y. July 22, 1999), *clarified on other grounds*, 2000 WL 174945 (S.D.N.Y. Feb. 15, 2000) ("If [the directed trustee] were aware that the direction to invest in JWP common stock was imprudent or that the fiduciaries' direction to make that investment was based on an inadequate investigation, then [the directed trustee] would not be immune from liability because it would have knowingly carried out a direction that was contrary to ERISA. What [the directed trustee] knew about the [*191] prudence of the investment in question, about the bases on which the fiduciaries directed [the trustee] to make that investment, and about the alleged fraud and conflicts of interest on the part of [JWP's officers] and others are factual questions inappropriate for resolution on a motion to dismiss."), *clarified on other grounds on denial of reconsideration*, No. 00-20030RMW, 2000 WL 31431588 (N.D. Cal. Sept. 30, 2002).

> n94 If a trustee is determined to be not acting as a fiduciary, as in *NationsBank*, the trustee could be liable under § 1105(3) as party in interest who knew of a breach of fiduciary duty by a fiduciary and made no reasonable effort to remedy the problem. *Mertens*, 508 U.S. 248. Nevertheless under such circumstances to be discussed *infra*, the "nonfiduciary" trustee would be liable only for equitable relief. *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241, 248 (2000).

At least where the facts alleged (and ultimately [*192] the evidence) provide reason for the directed trustee to have known or should have known of a breach of fiduciary duty, this Court finds that those cases which construe § 403(a)(1) to require something more than a duty to check superficial compliance, which in actuality would serve no purpose, effectuate ERISA's underlying policies and purposes far better.

For instance, in *Koch*, 1999 WL 528181, relied upon by the Secretary of Labor, participants in a defined contribution 401(k) plan, funded by a combination of employee contributions and employer matching contributions and earnings thereon, along with participants in an ESOP, sued the plans' fiduciaries for breach of fiduciary duties and co-fiduciary duties on the following grounds: that from 1991 until the company went into bankruptcy in December 1993 it was imprudent to retain the company's stock in the plan because the company was in a precarious financial situation; that the fiduciaries allegedly knew or should have known they were using inflated values for the employer stock because the company was on the verge of bankruptcy; that the stock was overvalued; that they continued to invest in the stock for the plans [*193] and failed to sell it; that they failed to obtain an independent determination whether the plans should continue to hold the employer's securities; and that the fiduciaries acted to conceal their breaches of their fiduciary duty by misstating and inflating the value of the stock and the contributions made on various forms. The directed trustee, AET, made the same argument as the Association does in *Tittle*, i.e., that it was required to follow the fiduciaries' directions to invest in the employer company's common stock "unless 'it is clear on their face' that those directions constitute a breach of fiduciary duty." The district court rejected the argument. It opined, "if AET were aware that the direction to invest in JWP common stock was imprudent or that the fiduciaries' direction to make the investment was based on an inadequate investigation, then AET would not be immune from liability because it would have knowingly carried out a direction that was contrary to ERISA." 1999 WL 528181 at *10.

The Association dismisses Koch's rejection of the Association's "clear on their face" standard by claiming that the district court failed to explain or analyze why, but simply [*194] stated that this standard was not used in the statute nor in case law that the court merely cited in passing, but did not discuss, and most of which dealt with discretionary trustees. This Court disagrees, has indicated that the "knows or should know" standard is rooted in the common law of trusts, and reemphasizes that the absence of that "clear on their face" standard in the statute is significant. Furthermore, in the alleged directed trustee situation, the *Koch* court found appropriate a fact-specific inquiry to determine what the directed trustee knew to determine whether he had any duty to inquire further: "What AET knew about the prudence of the investment in question, about the bases on which the fiduciaries directed AET to make that investment, and about the alleged fraud and conflicts of interest on the part of the 'individual fiduciaries' are factual questions inappropriate for resolution on a motion to dismiss." *Id.* at *10. Moreover, the

*Koch* court determined that the participants had alleged a continuing decline in the value of the company's stock over the three years and its documentation in Deloitte & Touche's accounting report in October 1992, which resulted [*195] in a 45% drop in the price of that stock, reflected that the directed trustee had knowledge that the directing fiduciaries breached their duty of prudence by not ordering the sale of the stock before it became worthless, and that their investment instructions to retain the stock were not "proper," but in fact in violation of ERISA.

In *In re McKesson HBOC, Inc. ERISA Litigation*, No. C00-2003RMW, 2002 WL 31431588, *11 (N.D. Cal. Sept. 30, 2002), relied upon by Defendants, the district court compared the allegations before it with those in *Koch*, 1999 WL 528181. The *McKesson* court found no facts alleged in the complaint before it to demonstrate knowledge by the directed trustee of an ESOP that the directing fiduciary's instructions violated ERISA and dismissed the complaint with leave to amend. The judge did note, however, "If plaintiffs can demonstrate that [directed trustee] Chase knew that the investment directions it received violated ERISA, then Chase is not necessarily relieved of ERISA liability merely because it followed those improper directions." *Id.* at *12 n.11.

In the only case to come before the Fifth Circuit, which made only a [*196] cursory examination of the statute, the Secretary of Labor sued a group of men on the board of directors and administrative committee (and thus fiduciaries) of Metropolitan Contract Services, Inc. for purchasing company stock from Defendant Cunningham, the company's CEO as well as a member of the administrative committee and board of directors, for more than the stock was worth. *Donovan v. Cunningham*, 541 F. Supp. 276 (S.D. Tex. 1982), *aff'd in part, vacated in part, reversed in part*, 716 F.2d 1455 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984). These fiduciary Defendants then filed a third-party complaint against the trustee, Allied Bank of Texas, for co-fiduciary liability, indemnity and contribution. The district court held that the committee members did not breach their fiduciary duties. Nevertheless, the district court seemed to recognize that a directed trustee had a varying legal duty, not clearly defined by the appellate court but less than that of a "primary" fiduciary, and suggested that a directed trustee's obligations would depend on the specific facts of the case and his actual exercise of control or authority: [*197]

> The statutory construction of ERISA makes clear that the responsibility of Allied as directed trustee is not equal to that of primary fiduciaries. Section 403(a)(1) of ERISA, 29 U.S.C. § 1103(a)[,] provides that a trustee such as Allied is to follow the "proper directions" of a named fiduciary which directions are made in accordance with the terms of the plan and which are not contrary to ERISA. This court, while acknowledging differentiation in standards of care implied by section 1103, carried Allied's motion for summary judgment through the trial because the reach of ERISA to entities performing services for the ESOP is quite long. Notwithstanding the limited role prescribed by section 1103, the trustee[']s actual exercise of authority or control could raise the fiduciary responsibility required of such trustee. Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). However it became apparent upon hearing the evidence at trial and upon a review of the depositions of the various principals, that Allied at all times remained within the limited role of directed trustee.

541 F. Supp. at 290. Thus despite potential [*198] liability, in view of the evidence, the district court found that the claim against Allied lacked merit and ordered Cunningham to pay Allied's litigation expenses because he was the only fiduciary financially able to do so. *Id.* On appeal the Fifth Circuit reversed the ruling as to the fiduciary committee members, found them liable, and concluded that the independent appraisal of the stock's value on which they relied was not adequate to satisfy their duty to prudently manage and protect plan assets, but affirmed the district court's determination as to Allied. 716 F.2d at 1475, 1476.

After extensive research, this Court concludes for the reasons discussed *supra* that even where the named fiduciary appears to have been granted full control, authority and/or discretion over that portion of activity of plan management and/or plan assets at issue in a suit and the plan trustee is directed to perform certain actions within that area, the directed trustee still retains a degree of discretion, authority, and responsibility that may expose him to liability, as reflected in the structure and language of provisions of ERISA. At least some fiduciary status and duties of a [*199] directed trustee are preserved, even though the scope of its "exclusive authority and discretion to manage and control the assets of the plan" has been substantially constricted by the directing named fiduciary's correspondingly broadened role, and breach of those duties may result in liability.

In any ERISA retirement plan, where the plaintiffs, as in *Tittle*, allege with factual support that the directed trustee knew or should have known from a number of significant waving red flags and/or regular reviews of the company's financial statements that the employer com-

pany was in financial danger and its stock greatly diminished in value, yet the named fiduciary, to which the plan allocated all control over investments by the plan, directed the trustee to continue purchasing the employer's stock, there is factual question whether the evidence is sufficient to give rise to a fiduciary duty by the directed trustee to investigate the advisability of purchasing the company stock to insure that the action is in compliance with ERISA as well as the plan.

Finally, even if the Court construed § 403(a) to require only that the trustee find that the directions he received from the named fiduciary [*200] are "proper" and facially in compliance with the terms of the plan and of ERISA, it finds that the Tittle Plaintiffs still state a claim: "Plaintiffs submit that any order to proceed with lockdowns on its face violated the duties of prudence and loyalty mandated by ERISA" because the alleged exigent circumstances, laid out in the complaint, made its timing highly suspect and clearly injurious to plan participants and beneficiaries. # 501 at 15 n.9.

### 4. Standing and Remedies under ERISA

Section 502(a), 29 U.S.C. § 1132(a), sets out the types of civil enforcement actions recognized under ERISA. The Supreme Court has pronounced, "The six carefully integrated civil enforcement provisions found in § 502 of the statute as finally enacted, . . . provide strong evidence that Congress did not intend to authorize other remedies . . ." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly [*201] for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."). Indeed, in addition to its preemption of state-law causes of action, to be discussed *infra*, "ERISA's interlocking, interrelated and interdependent scheme, which is in turn part of a 'comprehensive and reticulated statute,'" undermines any assertion that Congress inadvertently omitted other remedies. *Russell*, 473 U.S. at 146. Thus if a plaintiff cannot sue under one of the provisions for relief under § 502(a), he has no remedy under ERISA. *Bullock v. Equitable Life Ass. Soc. Of U.S.*, 259 F.3d 395, 400-01 (5th Cir. 2001) ("Because section 502(a) provides the exclusive enforcement mechanism for section 510 rights, it preempts any state cause of action seeking such relief, no matter how artfully pled. . . . 'The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.'")

(quoting *Pilot Life*, 481 U.S. at 54).

Among the types of civil [*202] actions a beneficiary may bring and the kind of relief available under § 502(a), three are relevant here.

First, § 502(a)(1)(B) provides a cause of action "to recover benefits due . . . under terms of [a] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits due . . . under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Second, § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant or beneficiary to bring a suit for breach of fiduciary duty to obtain "appropriate relief" under § 409, 29 U.S.C. § 1109(a). Section 409(a) of ERISA, 29 U.S.C. § 1109(a), which makes a fiduciary personally liable to the plan for a breach of fiduciary duty, provides,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of [*203] the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Thus § 409(a) provides for monetary and equitable relief for the plan, but no recovery by an individual participant or beneficiary. The Supreme Court has held that § 502(a)(2) authorizes relief only for the benefit of a plan, and relief may not flow directly to individual plan participants; individual plan participants may therefore sue under § 502(a)(2), 29 U.S.C. § 1332(a)(3), and 29 U.S.C. § 1109(a), only on behalf of the plan as a whole. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 & nn. 8-9 (1985) (plan fiduciary may not be held personally liable to individual plan participant or beneficiary for extracontractual, compensatory and/or punitive damages under § 502(a)), construing 29 U.S.C. § 1132(a)(2). *See also In re Occidental Petroleum Corp.*, 217 F.3d 293, 297 n.14 (5th Cir. 2000); *Matassarin v. Lynch*, 174 F.3d 549, 565-66 (5th Cir. 1999), cert. denied, 528 U.S. 1116 (2000); [*204] *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d at 992-93 (and cases cited therein).

Third, § 502(a)(3) allows a plan participant to bring a suit "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or . . . to obtain other such appropriate equitable relief . . . to redress such

Case 3:01-cv-01737-MRK   Document 52-32   Filed 10/16/2003   Page 15 of 15

Page 60
2003 U.S. Dist. LEXIS 17492, *204

violations or . . . to enforce any provisions of [ERISA] or the terms of the plan." Sections 502(a)(3), 29 U.S.C. § 1132(a)(3). It is now established that plan participants individually, as well as on behalf of the plan as a whole, may sue a fiduciary for a breach of fiduciary duty to recover "appropriate equitable relief" under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a). *Varity Corp.*, 516 U.S. at 496 (concluding that § 1132(a)(3), unlike § 1132(a)(2), does not require loss to the plan as a whole); *Matassarin*, 174 F.3d at 566.

The *Tittle* plaintiffs seek a judgment on behalf of the plans ordering that "each of the Enron ERISA Defendants, the Compensation Committee, Lay, Skilling [since dismissed], and Northern Trust, *are liable to the Savings Plan, the* [*205] *ESOP, and the Cash Balance Plan* for violating the duties and responsibilities and obligations imposed [*sic*] them as fiduciaries and co-fiduciaries by ERISA [under § 502(a)(2)] with respect [*sic*], and that [nonfiduciary] Andersen is liable in equity [under § 502(a)(3)] n95 for its knowing participation in the aforementioned violations of the ERISA fiduciaries [emphasis added]." Complaint, # 145 at page 295.

> n95 Only fiduciaries are liable under § 502(a)(2), which does not authorize suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. *Mertens*, 508 U.S. at 253. Plaintiffs do not allege that Andersen is a fiduciary.

The *Tittle* Plaintiffs have also asked the Court to "enjoin the Enron ERISA Defendants and the Cash Balance Plan as the successor to the Enron Corp. Retirement Plan, from computing the value of each component of the ESOP offset according to the market value of the Enron shares on each January 1st [*206] of the three-year period 1998-2000, to order those defendants to redress all damages flowing from prior Cash Balance payments made pursuant to the offset arrangement," and to "enjoin the Enron Defendants and the Compensation Committee from further violating the duties, responsibilities, and obligations imposed upon them as fiduciaries by ERISA and the Plan documents with respect to the Savings Plan, the ESOP and the Cash Balance Plan." # 145 at 295. Thus they seek "other appropriate equitable relief" under § 503(a)(3).

In *Varity Corp.*, 516 U.S. at 512, the Supreme Court stated that § 502(a)(3) acts as a "'catchall' remedial section" by providing "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy. The high court has since qualified and clarified that remark. The view of the nature of the equitable relief available under the provision has been substantially constricted. Moreover, relief under § 502(a)(3) must be "appropriate" as well as "equitable." A plaintiff cannot sue for a breach of fiduciary duty for denial of benefits under § 502(a)(3) if he has a remedy expressly provided for his cause [*207] of action under § 502(a)(1)(B). *See, e.g., Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 n.5 (5th Cir. 2003), citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (concluding that claim for equitable relief for breach of fiduciary duty was precluded because plaintiff had an adequate claim for benefits due under the plan under § 1132(a)(1)); *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088-89 (11th Cir. 1999); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

In *Mertens*, the Supreme Court rejected the argument that relief available under § 502(a)(3) would include all relief that a court of equity was empowered to grant, which would encompass legal remedies that would "render the modifier ['equitable'] superfluous." *Id.*, 534 U.S. at 257-58. The Supreme Court observed in dicta that remedies like injunction, mandamus, and restitution were typically available in equity, but that compensatory damages were not. *Id.* at 256. [*208] Up until recently, courts, including the Supreme Court, flexibly viewed restitution generally as an equitable remedy and allowed it to encompass all kinds of monetary recovery as long at the remedy was not termed "money damages." *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879 (1988) n96; *Griggs v. E.I. Dupont De Nemours & Co.*, 237 F.3d 371, 384 (4th Cir. 2001) (comparing equitable remedies of reinstatement and back pay under Title VII with ERISA); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000) (When restitution is sought as a remedy for a breach of fiduciary duty, it is properly viewed as an equitable remedy because the fiduciary concept is equitable).

> n96 In *Bowen*, a six-justice majority of the Supreme Court held that the State of Maryland's suit for injunctive relief, declaratory judgment, and reimbursement from the Department of Health and Human Services regarding disallowed benefits under Medicaid was an equitable claim for restitution, not money damages. The majority observed,
>
>> Our cases have long recognized the distinction between an action at law for damages-which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation, and an equitable action for specific relief-which may in-