UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN B. COAN, Individually and on behalf of the K.L.C. Inc 401(k) Profit Sharing Plan, | : : : | CIVIL ACTION NO. 3:01CV1737 (MJK) |
| Plaintiffs, | : : | |
| v. | : : | |
| ALAN H. KAUFMAN, ET AL., Defendants. | : : | DECEMBER 22, 2003 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Over three years ago, plaintiff Karen Coan ("Coan") accepted over $135,000 in vested, fully employer-funded retirement income from her former employer, K.L.C., Inc. ("KLC"), despite grousing at the time that her funds in the KLC's profit sharing plan (the "Plan") had, like the funds of virtually every other person in the United States, declined somewhat since the heyday of the stock market in 1999. Coan is no longer an employee of KLC; KLC no longer exists; and the KLC Plan on behalf of which Coan purports to bring this action has been terminated. Long before all of this transpired, moreover, Coan knew that the KLC Plan had suffered some losses; knew precisely how the KLC Plan's funds were invested (indeed, participated in administering those investments); and knew that the Plan was about to be terminated and its funds disbursed to participants.

As set forth in defendants' opening Memorandum in Support of their Motion for Summary Judgment, these facts are dispositive of Coan's purported action against her former employers, defendants Alan Kaufman ("Kaufman") and Edgar Lee ("Lee"), for their alleged

breach of fiduciary duty with respect to the KLC Plan of which they were trustees. She has no viable claim here, and she knows it. Instead of conceding that her vicious vendetta against Kaufman and Lee is destined to come to a close, though, Coan resorts to blatant mischaracterizations of both the relevant facts and the applicable law in a last-ditch, desperate attempt to salvage her case.

This Court should soundly reject her effort. As set forth in more detail below and in defendants' Memorandum in Support of their Motion for Summary Judgment, the Court should enter summary judgment in favor of Kaufman and Lee.

## ARGUMENT

Coan devotes the bulk of her 55-page opposition brief to arguing that there is a contested issue of fact as to whether Kaufman and Lee's exercise of their fiduciary duties was adequate. Of course, defendants conceded the existence of this dispute in their opening brief, rendering the vast bulk of Coan's Opposition completely superfluous. (See Defs'. Mem. at p. 11 n.6.) Attacking this straw man, however, allows Coan to engage in repeated, utterly specious assaults on Kaufman and Lee. To give just a few examples[1]:

- At page 4 of her Opposition, Coan asserts that "Kaufman and Lee engaged in no 'tremendous' effort to investigate potential investments before purchasing them for the Plan." She cites to Kaufman's deposition testimony in ostensible support of that proposition. (See Pl's. Opp. at 4.) In fact, the cited testimony supports precisely the opposite conclusion: that Kaufman and Lee did undertake "tremendous" efforts as trustees. (See Ex. 1 to Pl's. Opp.)

---

[1] Space constraints prevent defendants from responding to each and every inaccurate statement of fact or law in Coan's 55-page Opposition brief.

- Presented with the irrefutable fact that she actually reaped significant benefits through Kaufman's and Lee's management of the funds in the Plan, and that the historical returns on that Plan were above reproach, Coan accuses defendants of having played loose with the numbers by seeking "to throw into the equation the results obtained by [a] self-directed 401(k) fund, a fund they did not even manage." (Pl's. Opp. at p. 32.) This assertion is glaringly untrue. All of defendants' information on returns for the Plan, summarized in their Memorandum and attached exhibits, incorporates only those portions managed by Kaufman and Lee – not the self-directed 401(k) fund. The returns achieved by Kaufman and Lee were just as impressive as set forth in their opening Memorandum.

Allocating the vast majority of her brief to a red herring has the additional advantage of allowing Coan to avoid the real issue: the fact that she has no rights against defendants under ERISA. Coan's bluster, and her distortions of Second Circuit case law, cannot obscure that central fact.

## I.     Coan Lacks "Participant" Standing Under ERISA § 502(a).

In her opposition brief, Coan claims that the Second Circuit has rejected the standing limitation set forth in cases such as Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986), and Waller v. Blue Cross of Calif., 32 F.3d 1337, 1339 (9th Cir. 1994). Both of these cases held that former participants in a terminated plan have no standing to sue for damages once the Plan was terminated and Plan liabilities were satisfied. Instead, Coan asserts, the Second Circuit has established a more expansive test for standing. (See Pl's. Opp. at pp. 35-42.)

Coan's claim that the Second Circuit decision in Mullins v. Pfizer, 23 F.3d 663 (2d Cir. 1994), rejected the Kuntz and Waller standing limitation is – to put it plainly – inexplicable. In Mullins, the Second Circuit addressed a situation where the plaintiff allegedly had relied on his former employer's affirmative misrepresentations in deciding to take early retirement, thus missing out on a new benefits plan that went into effect shortly thereafter. Id. at 666. The Court found the plaintiff had standing under ERISA, despite the fact that he was no longer an employee, because defendant's alleged malfeasance had caused him to retire and lose active participant status. Id. at 668. In other words, "but for" defendant's own actions, the plaintiff would have had no trouble asserting his right to the disputed benefits. Id.

Obviously, such is not the case here, where there has been – and cannot be – any allegation that any action by Kaufman or Lee caused Coan to lose her participant status prior to filing a claim under ERISA. Indeed, Coan herself claims that she observed Kaufman and Lee's allegedly inadequate performance as Plan trustees, and avers that she repeatedly "complained" about Kaufman and Lee's management of the Plan, both while she was still an active participant. (See Ex. 3 to Pl's. Opp.) Moreover, she has acknowledged that she was intimately involved in the administration of the Plan and knew precisely how its assets were invested:

> I was the documentary person. I would carry out their instructions as to what needed to be done to make the various investments, whether it be an application to Fidelity, whether it be a transfer and cutting a check, regardless of what that might be . . .

(See Ex. 2 to Pl's. Opp. at pp. 70-72.)

Clearly, Coan was not prevented from bringing a putative ERISA claim while still a plan participant by any alleged malfeasance on the part of Kaufman or Lee, or indeed by anything beyond the fact that she had no such valid claim in the first place.

In light of the fact that the Second Circuit in <u>Mullins</u> was dealing with a completely different set of circumstances from those at issue here and in the well-reasoned opinions in <u>Kuntz</u> and <u>Waller</u>, it is not surprising that – contrary to Coan's assertions – the <u>Mullins</u> court never even mentioned <u>Kuntz</u>, let alone rejected its reasoning.[2] Indeed, more recent decisions from the Second Circuit have continued to clarify that the Court will only accord standing to a claimant who can "demonstrate that she would have been a participant in her employer's benefit plan 'but for' her employer's misrepresentations." <u>Partsinevelos v. Tropical Machs., Inc.</u>, No. 03-7211, 2003 U.S. App. LEXIS 22281 (2d Cir. 2003) (interpreting <u>Mullins</u>) (copy attached hereto as Exhibit 1). As to other putative claimants, since its narrow (and irrelevant) holding in <u>Mullins</u>, the Second Circuit has continued to recognize that § 502(a) strictly limits the universe

---

[2] The other cases Coan relies on similarly concern the propriety of standing for such "but for" participants. <u>See, e.g.</u>, <u>Christopher v. Mobil Oil Corp.</u>, 950 F.2d 1209, 1221 (5th Cir. 1992) (stating that "but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits," and holding that an employer "should not be able through its own malfeasance to defeat the employee's standing"); <u>Vartanian v. Monsanto Corp.</u>, 14 F.3d 696, 701 (1st Cir. 1991) (specifically relying on "the fact that Vartanian did not know Monsanto had made misrepresentations to him and therefore, he could not have alleged a breach of fiduciary duty by Monsanto until after he had received payment under the 1986 Plan" as a precondition for finding standing); <u>Stang v. American Express</u>, No. 93 Civ. 6615 (JFK), 1995 U.S. Dist. LEXIS 15540 (S.D.N.Y. 1995) (adopting "but for" test of <u>Mullins</u>) (all cited in Pl's. Opp. at pp. 37-41). Even the case adopting the most expansive reading of <u>Mullins</u> only went so far as to hold that "wherever, as here, a defendant's wrongful conduct prevents a claimant from learning of [a] breach until after he has received payment, it would defeat the purposes of ERISA to deny standing." <u>Gray v. Briggs</u>, 97 Civ. 6252 (DLC), 1998 U.S. Dist. LEXIS 10057 (S.D.N.Y. 1998). In this case, of course, Lee and Kaufman took no steps to prevent Coan from learning precisely how they had invested Plan assets – indeed, according to her own allegations, they relied on her to effectuate their investment instructions. (<u>See</u> Ex. 2 to Pl's. Opp. at pp. 70-72.)

Importantly, Coan has not cited to a single case, from any jurisdiction, in which a court found a plaintiff had standing to bring a claim where (i) she already had received all the benefits to which she was entitled, and (ii) she had all the information necessary to bring such a claim prior to accepting those benefits, and nonetheless knowingly allowed her "participant" status to be extinguished. Indeed, the remainder of the cases she purports to rely on do not even address the issue at bar: the lack of standing for a former participant of a terminated plan whose benefits all have been properly distributed. (<u>See</u> Pl's. Opp. at pp. 38-41 and cases cited therein.)

of plaintiffs who may bring civil actions. <u>Connecticut v. Physicians Health Servs.</u>, 278 F.3d 110, 121 (2d Cir. 2002). That universe does not include Karen Coan.

**II.     Coan's Purportedly "Derivative" Claim Under § 502(a)(2) Is Defective.**

Kaufman and Lee pointed out in their opening brief that, despite purporting to bring this action on behalf of the Plan, Coan has neither sought class certification nor taken any steps to join other parties. (<u>See</u> Def's. Mem. at pp. 17-18.) Coan's only response is to assert that her suit should be viewed as a derivative action. (<u>See</u> Pl's. Opp. at pp. 43-44.) However, Coan can point this Court to not a single case in which a plaintiff actually has been allowed to proceed on a purportedly derivative basis on behalf of an ERISA plan, without fulfilling any of the procedural requirements usually imposed on litigants in derivative suits (<u>see</u> Fed. R. Civ. P. 23.1, 23.2) and without even attempting to join the other participants in that plan. Every one of the cases on which she purportedly relies actually involved a suit that proceeded as a class action, not a "derivative" suit. (<u>See</u> Pl's. Opp. at pp. 43-44 and cases cited therein.)

Moreover, Coan can point to no authority suggesting that she has or could have any derivative rights on behalf of a Plan that concededly was terminated three years ago and no longer exists. While she baldly claims that "the termination of the plan is not an obstacle to relief" (<u>see</u> Pl's. Opp. at 45 n.13), Coan has no explanation as to how, or why, that should be so. Indeed, the lone case she cites in support of this argument offers her no solace whatsoever: in it, the court merely held that *"[w]here a breach of fiduciary duties has caused a plan's termination*, there is precedent for an equitable remedy under ERISA to protect beneficiaries of a plan which was terminated as a result of misuse and mismanagement of plan assets by plan fiduciaries." <u>Jackson v. Truck Drivers' Union Loc. 42 Health & Welfare Fund</u>, 933 F. Supp. 1124, 1137 (D. Mass. 1996) (emphasis added) (cited in Pl's. Opp. at p. 45 n.13). The case has nothing to say

about a plan terminated through no arguable fault of the fiduciaries, and provides Coan with no way of getting around the fundamental fact that, whether she styled it as a class action or as a derivative suit, she never took any steps to bring this case appropriately before the courts. Accordingly, Coan is precluded now from proceeding with her claim.

### III.     Coan's Attempt To Recover "Make-Whole" Monetary Relief Bars Her Claim.

In her original complaint in this action, Coan sought "[r]estitution to the 401k Plan and/or the participants and beneficiaries of the 401k Plan including Coan pursuant to . . . ERISA § 502(a)(3)." See Compl. Prayer for Relief.  She now grudgingly concedes that this claim is doomed in light of the Supreme Court's recent decision in Great-West Life Ins. Co. v. Knudson, 534 U.S. 204 (2002).  (See Pl's. Opp. at p. 45 n.14.)  However, Coan continues to maintain that "a traditional equitable remedy can be fashioned under Section 502(a)(3) to provide her with relief."  (See id. at pp. 45-51.)

Coan's argument raises semantic sleights of hand to new heights of folly.  Apart from restitution – the disgorging of a sum of money from the defendants to her – there is no conceivable remedy that would address the purported wrong in this case.  She suggests that "an injunction ordering plan reinstatement and the payment of additional benefits lost through a breach of fiduciary duty" would be an apt resolution (see Pl's. Opp. at p. 46), but conveniently ignores the fact that the only way such "additional benefits" could be paid would be by ordering the defendants to take their personal funds, monies not alleged to have been generated by any wrongdoing, in their possession and give those funds to her – precisely the result forbidden by the Supreme Court in Great-West.  See 534 U.S. 204, 214 (2002) (where the claim is "not that respondents hold particular funds that, in good conscience, belong to petitioners," no action for restitution can lie under ERISA).

Indeed, Coan ignores much that is inconvenient to her argument, including the wealth of case law from the Second Circuit and elsewhere holding that "make-whole" monetary relief is, as a matter of law, not available under ERISA.  See, e.g., Bona v. Barasch, No. 01 Civ. 2289 (MBM), 2003 U.S. Dist. LEXIS 4186, at *37 (S.D.N.Y. March 20, 2003) (where plaintiffs' claim is "nothing more than a claim for money damages as compensation for losses," they are barred from proceeding under § 502(a)(3)); De Pace v. Matsushita Elec. Corp. of Am., 257 F. Supp. 2d 543, 561 (E.D.N.Y. 2003) (noting that "the Supreme Court's recent decision [in Great-West]…has severely curtailed the type of remedies available under [§ 502(a)(3)]," and that "a claim for restitution which seeks to impose 'personal liability' on a defendant is not authorized by [§ 502(a)(3)]"); In re Enron Corp. Sec., 284 F. Supp. 2d 511, __, 2003 U.S. Dist. LEXIS 17492, at *230 (S.D. Tex. 2003) (holding that "[n]o matter how artfully pled, 'make-whole' relief for a claim of breach of fiduciary duty by a trustee cannot cloak a claim for compensatory damages").  Although defendants cited and discussed all of these authorities in their opening Memorandum (see Defs'. Mem. at pp. 19-21), the Court will search in vain for any discussion of these cases in Coan's lengthy Opposition brief.

None of the cases cited by Coan in her Opposition alter the conclusion that, no matter how she styles it, Coan's claim is clearly one for compensatory damages and is foreclosed by the Supreme Court's decision in Great-West and its progeny.  In Varity Corp. v. Howe, 516 U.S. 489 (1996) (cited in Pl's. Opp. at p. 46), the Supreme Court upheld equitable relief crafted by an Eighth Circuit court that essentially reinstated plaintiffs in an existing benefit program – a situation that clearly has no factual parallels here.  In Dobson v. Hartford Fin. Servs., 196 F. Supp. 2d 152 (D. Conn. 2002) (cited in Pl's. Opp. at p. 49), the Court allowed a claim that sought the imposition of a constructive trust over "identifiable property rightfully belonging to plaintiff"

– again, a situation completely at odds with the case here, where there has never been and can never be any allegation that Kaufman or Lee have retained property that rightfully belongs to Coan.   And in <u>Mathews v. Chevron</u>, No. C 00-04824, 2002 U.S. Dist. LEXIS 7738 (April 23, 2002) (appeal pending) (cited in Pl's. Opp. at pp. 49-50) and <u>Beach v. Commonwealth Edison</u>, No. 00 C 3357, 2003 U.S. Dist. LEXIS 17675 (Oct. 3, 2003), the courts merely reaffirmed that equitable relief (in both cases, essentially reinstating plaintiffs into existing plans) is appropriate under ERISA § 502(a)(3).  Given that Coan has not and cannot suggest any equitable remedy for her purported claim, none of these cases can somehow transform her action for compensatory damages into one cognizable under ERISA.

## **CONCLUSION**

For the reasons set forth above, defendants Alan Kaufman and Edgar Lee respectfully request that this Court enter an order (1) granting summary judgment in their favor on plaintiff's complaint and (2) granting such other and further relief as the Court deems just and proper.

```
                                    DEFENDANTS,
                                    ALAN H. KAUFMAN and EDGAR W. LEE



                                    By_____
                                         Glenn W. Dowd (ct# 12847)
                                         Daniel A. Schwartz (ct# 15823)
                                         Kristin Thomas (ct#24578)
                                         Day, Berry & Howard LLP
                                         CityPlace I, 185 Asylum Street
                                         Hartford, CT  06103-3499
                                         (860) 275-0100
                                         (860) 275-0343 (fax)
                                         email:  gwdowd@dbh.com
                                                 daschwartz@dbh.com
                                                 kthomas@dbh.com
```

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing has been sent this date via first-class mail, postage prepaid, to:

| | |
|---|---|
| Thomas G. Moukawsher | Ian O. Smith |
| Moukawsher & Walsh LLC | Moukawsher & Walsh LLC |
| 328 Mitchell Street | 21 Oak Street, Suite 100 |
| P. O. Box 966 | Hartford, CT 06106 |
| Groton, CT 06340 | |

_____

Glenn W. Dowd