1    to those actions in which the right claimed by the shareholder is
2    one the corporation could itself have enforced in court."
3    Relying in part on this general "understanding . . . of the term
4    'derivative action,'" id. at 528, the Daily Income Fund Court
5    concluded that the demand requirement of Rule 23.1 did not apply
6    to a shareholder suit brought under section 36(b) of the
7    Investment Company Act of 1940 (ICA), 15 U.S.C. § 80a-35(b),
8    because the ICA did not grant a cause of action to the
9    corporation, see Daily Income Fund, 464 U.S. at 542.

10           The Court thus explained in Daily Income Fund that
11    because corporations could not bring suit in their own right
12    under the ICA, individual shareholders' suits were not
13    derivative.  That reasoning applies with equal force here.
14    Because ERISA plans cannot bring suit against fiduciaries on the
15    plans' own behalf under section 502, the lawsuits of individual
16    participants are not derivative either.  See Pressroom
17    Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.,
18    700 F.2d 889, 893 (2d Cir.) ("In light of the frequent references
19    in [ERISA] and its legislative history to 'participants,
20    beneficiaries and fiduciaries,' [the] conclusion [that funds also
21    have standing to bring suit] is untenable.") (citations omitted),
22    cert. denied, 464 U.S. 845 (1983).  Section 502(a)(2), like the
23    law considered by Supreme Court in Daily Income Fund, creates an
24    "unusual cause of action . . . [that] differs significantly from

-16-

1    those traditionally asserted in shareholder derivative suits."

2    Daily Income Fund, 464 U.S. at 535.  We therefore doubt that

3    section 502(a)(2) actions can, in any meaningful sense, be

4    governed by the "same general principles" of procedure that

5    control derivative actions.  Coan II, 349 F. Supp. 2d at 275

6    (internal quotation marks and citation omitted).

7    C.  Bringing Suit in a "Representative Capacity"

8         Irrespective of the applicability of Rule 23.1 or the

9    principles of derivative actions, however, we agree with the

10   district court that Coan's section 502(a)(2) claim fails because

11   it was not "brought in a representative capacity on behalf of the

12   plan."  Russell, 473 U.S. at 142 n.9.

13        1.  Procedural Requirements of Section 502(a)2).  In

14   Russell, the Supreme Court considered whether an individual

15   participant in an ERISA plan could recover damages under section

16   502(a)(2) for alleged misfeasance -- in that case, delay in

17   awarding disability benefits -- that harmed only the plaintiff.

18   The Court noted that section 409 of ERISA, 29 U.S.C. § 1109, on

19   which the section 502(a)(2) right of action is based,[4] requires

20   plan fiduciaries "'to make good to such plan any losses to the

21   plan'" resulting from a breach of fiduciary duty.  Russell, 473

---

[4]    See ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (providing
right of action "for appropriate relief under section 1109 of
this title").

-17-

1    U.S. at 140 (quoting ERISA § 409(a), 29 U.S.C. § 1109(a))

2    (emphasis added by Russell).  According to the Court, "[a] fair

3    contextual reading of the statute makes it abundantly clear that

4    its draftsmen were primarily concerned with the possible misuse

5    of plan assets, and with remedies that would protect the entire

6    plan, rather than with the rights of an individual beneficiary."

7    Id. at 142.

8         The central holding of Russell is that sections 409 and

9    502(a)(2) of ERISA do not provide for the recovery of extra-

10   contractual damages for breaches of fiduciary duty that affect

11   only an individual plaintiff.  See id. at 136-37 (interruption in

12   provision of plan benefits to the plaintiff); Lee, 991 F.2d at

13   1006-07 (health benefits denied to two persons upon bankruptcy of

14   plan sponsor); cf. Matassarin v. Lynch, 174 F.3d 549, 566 (5th

15   Cir. 1999) (alleged breaches of fiduciary duty affected only the

16   individual retirement accounts of the plaintiff and few others),

17   cert. denied, 528 U.S. 1116 (2000).  Unlike the plaintiffs in

18   those cases, Coan complains of an alleged breach of fiduciary

19   duty -- failure to diversify plan assets -- that would have

20   harmed all the participants in the KLC 401(k) plan.  And she asks

21   for, among other things, "[d]amages and/or restoration of losses

22   to the 401k Plan."  Compl. at 5.

23         But, like the district court, we do not see how an

24   action can be brought in a "representative capacity on behalf of

-18-

1   the plan" if the plaintiff does not take any steps to become a

2   bona fide representative of other interested parties. <u>Russell</u>,

3   473 U.S. at 142 n.9.  It seems to us that the representative

4   nature of the section 502(a)(2) right of action implies that plan

5   participants must employ procedures to protect effectively the

6   interests they purport to represent.

7        Although ERISA does not specify the procedures that a

8   plan participant must follow in order to bring suit on behalf of

9   a benefit plan, its drafters considered the issue.  As early as

10  1970, four years before ERISA was enacted, a Senate version of

11  the bill would have required participants and beneficiaries

12  bringing suit for breach of fiduciary duty to bring class

13  actions.  <u>See</u> S. 3589, 91st Cong., § 9(e)(2) (1970) <u>as reprinted</u>

14  <u>in</u> <u>Arnold & Porter Legislative History: Employee Retirement</u>

15  <u>Income Security Act of 1974</u> ("<u>ERISA-LH</u>") 16, at *23.[5]  In their

16  final versions, the House and Senate ERISA bills contained

17  contrasting class-action requirements:  The House bill provided

18  that participants and beneficiaries <u>must</u> in most circumstances

19  bring class actions in order to bring suit on behalf of a plan

20  for breach of fiduciary duty, while the Senate bill provided that

21  they <u>may</u>.  <u>See</u> Summary of Differences Between the Senate Version

22  and the House Version of H.R.2 to Provide for Pension Reform § 10

---

[5] Available in Westlaw, database identifier "ERISA-LH."

-19-

1    (Comm. Print 1974), <u>as reprinted in</u> ERISA-LH 85-C, at *26.[6]

2         The fact that Congress, having considered mandatory and

3    permissive provisions relating to class actions, ultimately

4    remained silent on the issue suggests to us that it deliberately

5    declined to adopt any general rule as to whether class actions

6    are mandatory or permissive.  <u>See</u> 29 U.S.C. § 1132(a)(2).[7]  But

7    it does not mean that Congress intended to allow individual

---

[6]   The conference staff's comparison of the two class-action provisions reads:

> 10. Jurisdiction of Courts, etc.
>
> House bill.-
> . . . .
> (2) Where participants or beneficiaries bring actions with respect to breach of fiduciary responsibility or to enjoin an act or practice violating the Act, the action <u>must</u> be brought as a class action if the jurisdiction allows it and the requirements for a class action are not unduly burdensome in the circumstances.
>
> Senate amendment.-
> . . . .
> (2) Suits for breach of fiduciary duty, to enjoin acts or practices violating the Act, and for benefits <u>may</u> be brought as class actions.

ERISA-LH 85-C, at *26 (emphasis added by conference staff).

[7]   <u>Cf. Hamdan v. Rumsfeld</u>, --- U.S. ---, --- S. Ct. --- (2006), 2006 WL 1764793, *14 n.10 (concluding, "[i]n light of [Congress's] extensive discussion of the [Detainee Treatment Act of 2005, Pub. L. 109-148, 119 Stat. 2739]'s effect on pending cases," that its removal of a provision that would have expressly made statute applicable to pending cases meant that it did not intend the statute to apply to pending cases).

-20-

1    participants and beneficiaries to bring suit on behalf of an

2    employee benefit plan without observing <u>any</u> procedural safeguards

3    for other interested parties.  It seems to us, rather, that

4    Congress was content to leave the procedures necessary to protect

5    absent parties, and to prevent redundant suits, to be worked out

6    by parties and judges according to the circumstances on a case by

7    case basis.

8          This is the approach of the common law of trusts, which

9    "offers a starting point for analysis of ERISA unless it is

10    inconsistent with the language of the statute, its structure, or

11    its purposes."  <u>Harris Trust and Sav. Bank v. Salomon Smith</u>

12    <u>Barney, Inc.</u>, 530 U.S. 238, 250 (2000) (internal quotation marks

13    and citation omitted; alterations incorporated).  Ordinarily,

14    when a beneficiary brings suit against a trustee on behalf of the

15    trust, other beneficiaries "should be joined as parties, either

16    as plaintiffs or as defendants, if their interests would be

17    affected by the decree."  <u>See</u> 3 Austin W. Scott et al., <u>The Law</u>

18    <u>of Trusts</u> § 214 (4th ed. 2001).  But, as a case decided shortly

19    before the enactment of ERISA noted:

20          "[There] are two well-established exceptions
21          to the general rule that the <u>cestuis que</u>
22          <u>trustent</u> are necessary parties in actions by
23          or against a trustee relating to the trust or
24          its property.  The first is where the absent
25          parties are properly represented. . . .  The
26          second exception to the general rule arises
27          where the beneficiaries are very numerous, so
28          that the delay and expense of bringing them
29          in becomes oppressive and burdensome.  In

-21-

1               such case they will not be deemed necessary
2               parties where the trustee representing them
3               is made a party."

4   Hebbard v. Colgrove, 28 Cal. App. 3d 1017, 1027, 105 Cal. Rptr.

5   172, 178 (1972) (quoting Anderson v. Elliott, 117 N.E.2d 876,

6   879, 1 Ill. App. 2d 448 (1954)) (alterations in Hebbard; emphasis

7   omitted).  In the latter situation, a class action is the

8   appropriate procedural device.  See id.; see also Ortiz v.

9   Fibreboard Corp., 527 U.S. 815, 833-34 (1999) (noting that

10  "actions charging 'a breach of trust by an indenture trustee or

11  other fiduciary similarly affecting the members of a large class'

12  of beneficiaries, requiring an accounting or similar procedure

13  'to restore the subject of the trust,'" are among the "[c]lassic

14  examples" of Rule 23(b)(1)(B) class actions (quoting Advisory

15  Committee's Notes on Fed. R. Civ. P. 23)).

16       We think it neither necessary nor helpful to delineate

17  minimum procedural safeguards that section 502(a)(2) requires in

18  all cases.  But in our view, although plan participants need not

19  always comply with Rule 23 to act as a representative of other

20  plan participants or beneficiaries,[8] those who do will likely be

21  proceeding in a "representative capacity" properly for purposes

22  of section 502(a)(2).  Similarly, a plan participant who joins or

---

      [8]  We note that even the rejected provision in the House
bill that would have made class actions mandatory in most
circumstances would have required them only "if the jurisdiction
allow[ed them] and the requirements for a class action [were] not
unduly burdensome in the circumstances."  ERISA-LH 85-C, at *26.

-22-

1    makes a good-faith effort to join other participants as parties

2    pursuant to Rule 19 would seem to have discharged his or her duty

3    to proceed on behalf of the plan.  Ultimately, however, the

4    requirement is only that the plaintiff take adequate steps under

5    the circumstances properly to act in a "representative capacity

6    on behalf of the plan."  Russell, 473 U.S. at 142 n.9.

7         2.  Application to Coan's Lawsuit.  Here, the district

8    court concluded that Coan's "failure to do anything to

9    demonstrate that her action actually was intended to benefit

10   former plan participants other than Karen Coan . . . rendered

11   specious [her] claim to be acting on behalf of others."  Coan II,

12   349 F. Supp. 2d at 277 (internal quotation marks and ellipsis

13   omitted; emphasis in original).  We agree.  Allowing Coan to

14   bring this action without notifying or otherwise involving other

15   plan participants would, it seems to us, create significant

16   practical difficulties and opportunities for abuse.  Because Coan

17   does not proceed under Rule 23, for example, we see nothing to

18   prevent her from reaching a settlement with the defendants that

19   would disproportionately, or even exclusively, benefit her.  Cf.

20   Fed. R. Civ. P. 23(e)(1)(A) (requiring courts to approve class

21   action settlements and to direct notice to absent class members);

22   accord Fed. R. Civ. P. 23.1 (requiring court approval and notice

23   to shareholders prior to dismissal or compromise of a shareholder

24   derivative suit).

-23-

1          If, on the other hand, Coan were to prevail, the

2     district court would face a difficult task in ensuring that

3     recovery "inures to the benefit of the plan as a whole."

4     <u>Russell</u>, 473 U.S. at 140.  The court would likely be required to

5     issue an order mandating that the now defunct KLC 401(k) plan be

6     temporarily resuscitated, funds restored to it, its participants

7     located, their entitlements calculated, and distributions

8     disbursed to them.  Without the benefit of a procedural mechanism

9     for the protection of interested parties, it is unclear how the

10    court could satisfy itself that their interests were in fact

11    being taken into consideration without a great deal of

12    improvisation, effort, and expense.  <u>See</u> <u>Coan I</u>, 333 F. Supp. 2d

13    at 24 ("[T]here is no guarantee, aside from Ms. Coan's personal

14    assurances, that the former participants will benefit from any

15    possible recovery.").

16         Permitting Coan to proceed would, moreover, complicate

17    any subsequent litigation.  If a participant in the KLC 401(k)

18    plan who is not included in this action were to bring a

19    subsequent lawsuit against the defendants regarding the same

20    alleged breach of fiduciary duty, the issue of collateral

21    estoppel (issue preclusion) would likely arise.  The question

22    would be whether the second participant is in "privity" with Coan

23    such that he or she would be bound by the earlier judgment.  <u>See,</u>

24    <u>e.g.</u>, <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 90-

-24-

1    91 (2d Cir. 2005) (discussing the privity requirement).  If

2    privity and therefore preclusion were found, the second

3    participant would be bound by a judgment that was reached without

4    his or her involvement or reliable safeguards for his or her

5    interests.  But see Richards v. Jefferson County, Ala., 517 U.S.

6    793, 801-02 (1996) (issue preclusion without prior notice raises

7    due process concerns).

8         If, on the other hand, the issue were not deemed

9    precluded, multiple further lawsuits might ensue, the ultimate

10   result of which might well be an unsatisfactory resolution of the

11   dispute as a whole.  See Thornton v. Evans, 692 F.2d 1064, 1079-

12   80 (7th Cir. 1982) (concluding that plan beneficiaries bringing

13   suit on behalf of employee benefit plan "must sue either as

14   representatives of the Fund in a derivative action or as

15   representatives of the beneficiaries in a class action" in order

16   to "avoid multiple litigation").

17        Because Coan has not taken any steps to permit the

18   court to safeguard the interests of others or the court's

19   proceedings under these circumstances, we agree with the district

20   court that she has failed to represent adequately the interests

21   of other plan participants and has therefore not properly

22   proceeded in a representative capacity as required by section

23   502(a)(2).  We further agree that it is "far too late in the day"

24   for Coan to cure the procedural defects in her lawsuit.  Coan II,

-25-

1    349 F.Supp. 2d at 276 n.9.  We therefore conclude that the court

2    properly granted summary judgment to the defendants on Coan's

3    section 502(a)(2) claim.

4         IV.  Section 502(a)(3)

5         Coan also seeks relief under section 502(a)(3) of

6    ERISA, 29 U.S.C. § 1132(a)(3), which the Supreme Court has

7    described as a "catchall" remedial section "offering appropriate

8    equitable relief for injuries caused by violations that § 502

9    does not elsewhere adequately remedy."  Varity Corp. v. Howe, 516

10   U.S. 489, 512 (1996) (internal quotation marks omitted).  Unlike

11   section 502(a)(2), section 502(a)(3) permits ERISA plan

12   participants to bring suit for individual remedies; but relief

13   under section 502(a)(3) must be "equitable."  29 U.S.C.

14   § 1132(a)(3).  The district court denied Coan's section 502(a)(3)

15   claim based on its conclusion that the "remedy Ms. Coan seeks in

16   this case is not equitable in form or substance."  Coan I, 333 F.

17   Supp. 2d at 27.

18        The district court's conclusion is strongly supported

19   by recent Supreme Court decisions interpreting the scope of

20   section 502(a)(3).  In Mertens v. Hewitt Assocs., 508 U.S. 248

21   (1993), former employees of a steel company brought a section

22   502(a)(3) action against a non-fiduciary actuary of their pension

23   plan, seeking monetary relief for the actuary's alleged

24   participation in the breach of fiduciary duties by the plan's

-26-

1  fiduciaries.  The Supreme Court, noting that "what petitioners in

2  fact seek is nothing other than compensatory damages -- monetary

3  relief for all losses their plan sustained as a result of the

4  alleged breach of fiduciary duties," id. at 255 (emphasis

5  omitted), held that such monetary damages did not constitute

6  "appropriate equitable relief" under section 502(a)(3), id.

7  (internal quotation marks omitted; emphasis in original).

8          In Great-West Life & Annuity Ins. Co. v. Knudson, 534

9  U.S. 204 (2002), the Court again addressed an attempt to pursue

10  money damages under section 502(a)(3).  The petitioner, an

11  insurance company, sought to use section 502(a)(3) to obtain

12  reimbursement from a policyholder who had received compensation

13  for her medical expenses pursuant to a settlement of a tort

14  claim.  As in Mertens, the Supreme Court held that the relief

15  sought was not equitable, rejecting the petitioner's argument

16  that it was merely seeking an equitable injunction to require

17  payment, see id. at 210-12, and concluding that the petitioner

18  was not seeking the equitable remedy of restitution because it

19  had not identified "particular funds or property in the

20  defendant's possession," id. at 214.

21          After briefing and oral argument in this case, the

22  Supreme Court decided Sereboff v. Mid Atlantic Medical Services,

23  Inc., --- U.S. ---, 126 S.Ct. 1869 (2006), which "involved facts

24  similar to those" in Knudson.  Id. at 1873-74.  The Court

-27-

1    concluded that the relief sought by the insurance company was

2    equitable because the company "sought its recovery through a

3    constructive trust or equitable lien on a specifically identified

4    fund, not from the [petitioner's] assets generally." Id. at

5    1874.  But the Court reaffirmed the holding of Knudson that money

6    damages are unavailable under section 502(a)(3) when the

7    plaintiff does "not seek to recover a particular fund from the

8    defendant." Id.

9         Coan seeks monetary relief; she does not attempt to

10   recover a specifically identified fund from the defendants.  She

11   contends that the relief she wants is nevertheless equitable for

12   purposes of ERISA.  Relying on our decision in Strom v. Goldman,

13   Sachs & Co., 202 F.3d 138 (2d Cir. 1999), Coan points out that

14   neither Mertens nor Knudson involved suits against plan

15   fiduciaries, against whom, she argues, section 502(a)(3) provides

16   for broader remedies than against non-fiduciaries.  Strom, which

17   was decided after Mertens but before Knudson, did indeed

18   distinguish between fiduciaries and non-fiduciaries, noting that

19   suits against fiduciaries for breach of trust were traditionally

20   in the exclusive jurisdiction of courts of equity.  Strom, 202

21   F.3d at 145.  Similarly, Justice Ginsburg, concurring in Aetna

22   Health Inc. v. Davila, 542 U.S. 200 (2004), suggested that

23   monetary relief under section 502(a)(3) may be more broadly

24   available in suits against ERISA fiduciaries than against non-

-28-

1  fiduciaries:

> Recognizing that "this Court has construed
> Section 502(a)(3) not to authorize an award
> of money damages against a non-fiduciary,"
> the Government suggests that the Act, as
> currently written and interpreted, may
> "allo[w] at least some forms of 'make-whole'
> relief against a breaching fiduciary in light
> of the general availability of such relief in
> equity at the time of the divided bench."
> Brief for United States as Amicus Curiae
> 27-28, n. 13 (emphases added). . . .  [T]he
> Government's suggestion may indicate an
> effective remedy others similarly
> circumstanced might fruitfully pursue.

Id. at 223-24 (Ginsburg, J., concurring).

But whether sought from a fiduciary or not, the type of relief a plaintiff requests must still be "equitable."  As we noted in Strom, Mertens precludes the conclusion that relief sought from fiduciaries is "equitable" under ERISA section 502(a)(3) solely because it was generally available in equity at the time of the divided bench.  See Strom, 202 F.3d at 145.  The Mertens Court said:

> Since all relief available for breach of
> trust could be obtained from a court of
> equity, limiting the sort of relief
> obtainable under § 502(a)(3) to "equitable
> relief" in the sense of "whatever relief a
> common-law court of equity could provide in
> such a case" would limit the relief not at
> all.  We will not read the statute to render
> the modifier ["equitable"] superfluous.

Mertens, 508 U.S. at 257-58 (footnote omitted; emphases in original)).  And in Sereboff, the Court made clear that section 502(a)(3) requires both that the "basis for [the] claim" and the

-29-

1    "nature of the recovery" sought be equitable.  See Sereboff, 126

2    S.Ct. at 1874.  Even if breach of fiduciary duty is an equitable

3    claim, therefore, remedies for breach of that fiduciary duty do

4    not constitute "equitable relief" under section 502(a)(3) unless

5    the plaintiff seeks a "categor[y] of relief that [was] typically

6    available in equity."  Mertens, 508 U.S. at 256 (emphasis

7    omitted).

8            We recently recognized that the Supreme Court's

9    reasoning in Knudson "cuts across the grain of Strom."  Pereira

10    v. Farace, 413 F.3d 330, 340 (2d Cir. 2005), cert. denied, --- S.

11    Ct. --- , 20006 WL 1374513, 2006 U.S. LEXIS 3965 (May 22, 2006).

12    We concluded in that case that restitutionary monetary relief was

13    not "equitable" under section 502(a)(3) when, as here, the

14    defendants "never possessed the funds in question and thus were

15    not unjustly enriched."  Id. at 339.

16            We agree with the district court, moreover, that the

17    alternative relief Coan seeks under section 502(a)(3), an

18    injunction requiring the defendants to restore funds to the

19    defunct 401(k) plan to be distributed to former participants,

20    "does not transform what is effectively a money damages request

21    into equitable relief."  Coan I, 333 F. Supp. 2d at 26.

22            Coan's attempt to cast this action as one for

23    "equitable relief" therefore fails.  We conclude that the

24    individual remedies Coan seeks are unavailable under ERISA

-30-

1    section 502(a)(3).

2                              **CONCLUSION**

3              Based on the foregoing analysis, we conclude that the

4    district court correctly granted summary judgment to the

5    defendants.   The court's decision is therefore affirmed.